**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                      :
JTH TAX, LLC d/b/a LIBERTY TAX SERVICE, :
    1716 Corporate Landing Parkway                 :
    Virginia Beach, Virginia 23454; and             :
                                                                      :
SiempreTax+ LLC d/b/a SiempreTax+                                     :
    2387 Liberty Way, Virginia Beach, VA,           :
    23456                                           :
                                                                      :
                                                                      :
                Plaintiffs, :
    v.                                              :  Case No:
                                                                      :
Maribel Gorosave,                                                     :  **PLAINTIFFS' VERIFIED**
    Serve: 937 Lee Ave, Calexico, CA 92231          :  **COMPLAINT FOR INJUNCTIVE**
                                                                      :  **RELIEF AND DAMAGES**
And                                                                   :
                                                                      :
Nora Garcia,                                                          :
    Serve: 1943 Annandale Way, Pomona, CA           :
91767                                                                 :
                                                                      :
And                                                                   :
                                                                      :
Maribel Gorosave d/b/a Brightworks Business                          :
Services                                                              :
    Serve: 440 South 4th Street, El Centro, CA      :
                                                                      :
                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

      Plaintiffs JTH Tax, LLC d/b/a Liberty Tax Service ("Liberty") and SiempreTax+ LLC

(SiempreTax), by counsel, allege for their Verified Complaint against Defendants Maribel

Gorosave ("Gorosave"), Nora Garcia ("Garcia"), and Maribel Gorosave d/b/a Brightworks

Business Services ("Brightworks" and collectively "Defendants"), and state as follows:

## INTRODUCTION

1. Defendants have collectively conspired to operate a competing tax preparation business under the name Brightworks Business Services ("Brightworks") in an effort to circumvent and avoid the non-competition, post-termination, and non-solicitation provisions set forth in their Liberty Tax Service® ("Liberty") and SiempreTax+ LLC ("SiempreTax") Franchise Agreements with Liberty. **[See Exhibit A Liberty Tax Franchise Agreement for CA 375, Exhibit B SiempreTax Franchise Agreement for CA375, and Exhibit C Liberty Tax Franchise Agreement for CA376]** Defendants Gorosave and Garcia previously operated a total of three Liberty and SiempreTax+ franchises in El Centro, California (known as Area CA375) and in Brawley, California (known as Area CA376) under franchise agreements with Plaintiffs. Defendants operated a Liberty franchise at 251 W Main St. Brawley, CA ("the Brawley location") under the agreement for CA376 and a Liberty franchise at 440 4th Street, El Centro, CA ("the 4th Street Location") under the CA375 Agreement. Defendants also operated a SiempreTax franchise at 350 Ross Ave. Ste. E, El Centro, CA ("the Ross Ave. location") under the agreement for CA375.

2. On January 8, 2019 the parties mutually terminated the Liberty Franchise Agreement for the Brawley location and the SiempreTax Franchise Agreement for the Ross Ave. location. [**Exhibit D**].

3. On July 11, 2019, Defendants elected not to renew the Liberty Franchise Agreement for the 4th Street Location. [**Exhibit E**].

4. In June 2021, during a routine audit of Plaintiffs' electronic filing identification numbers ("EFINs"), Plaintiffs learned that Defendants were continuing to file tax returns while operating Brightworks out of the 4th Street Location, and, upon information and belief, were using Plaintiffs' customer lists.

5.      Defendants are using Plaintiffs' trade secrets, customer lists, customer email addresses, and other confidential information to call upon and solicit Plainttfs' customers in the operation of Defendants' competing tax preparation business in violation of the Franchise Agreements and federal law.

6.      Plaintiffs seek (1) an immediate injunction preventing Defendants from continuing to violate the Defend Trade Secrets Act and/or the Virginia Uniform Trade Secrets Act by misappropriating Liberty's trade secrets, (2) an immediate injunction prohibiting Defendants from operating a competing business in violation of their non-competition and non-solicitation covenants, and (3) an immediate injunction requiring Gorosave and Garcia to comply with the post-termination obligations under the Franchise Agreements.

## PARTIES

7.      Liberty is a Delaware corporation with its principal place of business at 1716 Corporate Landing Parkway, Virginia Beach, Virginia 23454. Liberty maintains franchises and company-owned income tax preparation offices throughout the United States, including the State of California.

8.      SiempreTax is a Virginia limited liability company with its principal place of business at 2387 Liberty Way, Virginia Beach, VA 23456

9.      Defendant Gorosave is a citizen of the State of California, with a last known address of 937 Lee Ave, Calexico, CA 92231.

10.     Defendant Garcia is a citizen of the State of California, with a last known address of 1943 Annandale Way, Pomona, CA 91767.

11.     Upon information and belief, Brightworks Business Services is trade name used by Gorsosave for her tax preparation business located at 440 South 4th Street, El Centro, CA.

## JURISDICTION AND VENUE

12.     This Court has personal jurisdiction over Gorosave and Garcia because they entered into valid and enforceable franchise agreements for the ownership and/or operation of three Liberty franchise locations (the "Franchise Agreements," attached hereto as **Exhibit A, B, & C**). The Franchise Agreements contain a mandatory choice of law provision requiring that "Virginia law governs all claims that in any way relate to or arise out of any dispute whatsoever regarding the Agreements or any of the dealings of the parties hereto." *See* Ex. A § 17(a). The Franchise Agreements also contain a mandatory forum selection clause requiring that any lawsuit regarding the Franchise Agreement or "any of the dealings of the parties hereto . . . shall be proper only in the . . . U.S. District Court in Norfolk, Virginia." *See* Ex. A § 17(b).

13.     This Court has personal jurisdiction over Brightworks because it is nothing more than a trade name for Gorosave, who was a party to the Franchise Agreements and Gorosave consented to the venue and jurisdiction of this Court through the Franchise Agreements.

14.     This Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1836 under the Defend Trade Secrets Act.

15.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between Plaintiffs (Virginia) and Defendants (California) and the amount in controversy exceeds the sum of $75,000, including the valuation of Liberty's equitable claims, which are measured by the value of the object of the litigation, exclusive of interest and costs.

16.     This Court has supplemental jurisdiction over this action pursuant to 28 U.S.C. § 1367 because the claims form part of the same case or controversy that give rise to this Court's jurisdiction over the violation of Defend Trade Secrets Act.

17. This action is properly venued in the Eastern District of Virginia pursuant to 28 U.S.C. §§ 1391(a)(1) and (2) because a substantial part of the events or omissions giving rise to the claims occurred within the Eastern District of Virginia, Norfolk Division.

## FACTUAL BACKGROUND

**Plaintiffs**

18. Liberty is a franchisor of Liberty Tax Service® income tax preparation service centers located throughout the United States, including the State of California.

19. Liberty owns the federally-registered Liberty Tax Service® trademarks (trademark serial number 76066158), service marks, logos and derivations thereof (the " Liberty Marks"), as well as the distinctive and well-known Liberty Tax Service® system, which sells income tax preparation and filing services and products to the public under the Marks.

20. SiempreTax is a franchisor of SimepreTax+® income tax preparation service centerslocated throughout the United States, including the State of California.

21. SiempreTax owns the federally-registered SimepreTax+® trademarks (serial number 86386202), service marks, logos and derivations thereof (the "SiempreTax Marks")

22. Plaintiffs advertise and promote the Liberty Marks and SiempreTax Marks (collectively, "the Marks")  throughout the United States, and have spent substantial time and money to maintain and improve their franchise systems, including, *inter alia*: (1) maintaining and developing service and product quality; (2) developing uniform designs and markings for their services; (3) licensing trademarks and other proprietary information to, and (4) training franchisees.

23. Plaintiffs  grants licenses to franchisees to use the Marks and participate in their confidential and proprietary business system pursuant to written franchise agreements, which are

reasonably and carefully tailored to protect Plaintiffs' valuable trade secrets, reputation, goodwill, and other legitimate business interests.

24.     Plaintiffs disclose certain confidential information, including methods of operation of franchise, customer information, and marketing information, to franchisees through their Operations Manual, training manuals, training programs, and in providing guidance and assistance to its franchisees pursuant to a franchise agreement. Plaintiffs require that their franchisees agree, that upon expiration, termination, or nonrenewal of a franchise agreement, they will never use, disclose, or permit the use or disclosure of Plaintiffs' confidential information in any manner whatsoever. Plaintiffs require that upon termination, expiration, or nonrenewal of a franchise agreement, the former franchisee will stop using all literature and forms received by Plaintiffs, deliver to Plaintiffs all customer information, and deliver to Liberty all copies of its Operations Manual and any updates thereto.

25.     As a result of these efforts and expenditures, the Marks have become associated in the minds of consumers with uniform goods and services of consistently high quality, provided only by persons following Plaintiffs' approved sales, operating methods and procedures.

26.     Plaintiffs have used the Marks, along with the efforts of its hardworking employees, to grow from five offices in 1998 to over 3,000 today.

27.     Plaintiffs have grown to be some of the largest tax preparation franchises in the U.S.A.

28.     Plaintiffs play an important role in the local Virginia Beach economy, as well as nation-wide, with a network of over 21,000 tax preparers.

29.     January to April is Plaintiffs' busiest time of year, during which time Plaintiffs generate approximately 90% of their annual revenue.

**Obligations Under the Franchise Agreements**

30.     On or about March 15, 2013, Gorosave and Garcia entered into the Franchise Agreement with Liberty for the 4th Street Location. **[Ex. A]**. The term of the Franchise Agreement was five years with specific terms for renewal. *Id.* § 2(a), (b).

31.     On or about November 13, 2014, Gorosave and Garcia entered into the Franchise Agreement with SiempreTax for the Ross Ave Location. **[Ex. B]**. The term of the Franchise Agreement was five years with specific terms for renewal. *Id.* § 2(a), (b).

32.     On or about December 19, 2013, Gorosave and Garcia entered into the Franchise Agreement with Liberty for the Brawley Location. **[Ex. C]**. The term of the Franchise Agreement was five years with specific terms for renewal. *Id.* § 2(a), (b).

33.     Pursuant to the Franchise Agreements, Plaintiffs provided Gorosave and Garcia with training in franchise operation, marketing, advertising, sales, and business systems. Gorosave and Garcia also received a copy of Plaintiffs' confidential operating, marketing, and advertising materials, which are not available to the public or to anyone who is not part of Plaintiffs' business system.

34.     Between July and September of 2016, Defendants and Plaintiffs amended the Franchise Agreements. [**Exhibit F**].

35.     Pursuant to Section 3 of the Franchise Agreements, Gorsave, Garcia and Plaintiffs agreed that Gorosave and Garcia "may operate as many tax return preparation offices in the Territor[ies] as [they] determine[d] to be appropriate." *See* **Exhibit A**. The Franchise Agreements described the boundaries of the Territories, which it identified as "CA375" and "CA376". *See* Exhibit. A p.A-1; [**Exhibit C p.A-1**].

36.     Under the Franchise Agreements, Gorosave and Garcia operated a Liberty franchise

at the 4th Street Location, using the business phone number (760) 352-7642.

37.     Under the Franchise Agreements, Gorosave and Garcia operated a SiempreTax franchise at the Ross Ave Location, using the business phone number (760) 679-9677

38.     Under the Franchise Agreements, Gorosave and Garcia operated a Liberty franchise at the Brawley Location, using the business phone number (760) 790-4011.

39.     In exchange for Plaintiffs'' grants of franchises allowing them to "operate a tax return preparation business using Liberty's system and Liberty's Marks within the Territory," and specifically at the Franchise Locations, Gorosave and Garcia agreed to certain obligations while operating under the Franchise Agreements as well as post-termination.

**Obligations While Operating Franchise**

40.     Under the Franchise Agreements, Gorosave and Garcia agreed to pay Plaintiffs Royalties, *see* **Ex. A** § 4(d), and an Advertising Fee, *see id.* § 4(f), which are calculated as a percentage of the franchisees' monthly Gross Receipts. Gorosave and Garcia agreed to pay Plaintiffs the royalty and advertising fees by the fifth of each month. *See id.* § 4(g).

41.     Gorosave and Garcia agreed to pay interest on amounts due under the Franchise Agreements at a rate of 12% compounded daily on any amounts that are fifteen days past due. *Id.* § 4(h).

42.     Plaintiffs record as accounts receivable ("A/R") the amounts due from a franchisee under the Franchise Agreements, e.g., Royalties and Advertising Fee.

43.     On December 19, 2013, Gorosave and Garcia entered into a promissory note in favor of Liberty in the principal amount of $32,000 (the "Note"). *See* **Exhibit C to Exhibit C**.

44.     The Note provides that interest shall accrue commencing on February 28, 2014 at a rate of 12% per annum. *Id.* p.1.

45.     In the Note, Gorosave and Garcia agreed "to pay all attorneys' fees and other costs and expenses that Liberty may incur in connection with the collection or enforcement of [the Note]." *Id*. p.1.

46.      Under the Note, cessation of the obligors' ownership rights to the business, such as through the expiration of the Franchise Agreements, constitutes an event of default, whereupon "the entire unpaid balance … and all accrued interest shall become immediately due and payable." *Id*. p.2.

47.     Gorosave and Garcia each personally guaranteed the Note. *Id*. p.3.

48.     Section 23 of the Franchise Agreements contains a personal guaranty whereby Gorosave and Garcia agreed to abide by the terms therein including, specifically, those pertaining to governing law and forum selection, to make all payments specified in the Franchise Agreement, and to pay any promissory notes and debt owed to Plaintiffs.

### Obligations After Termination of Franchise Agreement

49.     Pursuant to Section 9 of the Franchise Agreements, Gorosave and Garcia agreed to certain post-termination obligations, which include, *inter alia*, the obligation to:

A.     Never hold themselves out as a former franchisee of Plaintiffs, **Ex. A** § 9(b);

B.     Pay to Plaintiffs all amounts owing to Plaintiffs, *id.* § 9(d);

C.     Transfer to Plaintiffs all telephone numbers, listings, and advertisements used in relation to the Franchised Business, *id.* § 9(e);

D.     Deliver to Plaintiffs all original and all copies of documents containing the contact information of customers who patronized the Franchised Business, *id.* § 9(g);

E.     Deliver to Plaintiffs all original and copies of customer tax returns, files, and records, *id.* § 9(h);

F.     Deliver to Plaintiffs the copy of the Operations Manual and any updates, *id.* § 9(i);

G.      Adhere to the provisions of the post-term covenants, including the covenants not to compete and not to solicit, *id.* § 9(k).

50.      Pursuant to Section 10(b) of the Franchise Agreements, Gorosave and Garcia agreed to a post-termination covenant not to compete ("Non-Compete") "[f]or a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchised Business . . . you agree not to directly or indirectly, for a fee or charge, prepare or electronically file income tax returns . . . within the Territory or within a twenty-five miles of the boundaries of the Territory."

51.      Pursuant to Section 10(d) of the Franchise Agreements, Gorosave and Garcia agreed to a post-termination covenant not to solicit ("Non-Solicit") "for a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchised Business…you will not within the Territory or within twenty-five (25) miles of the boundaries of the Territory, directly or indirectly, solicit the patronage of any person or entity served by any of your prior Liberty offices in the last twelve (12) months that you were a Liberty franchisee…for the purpose of offering such person or entity for a fee or charge, income tax preparation, electronic filing of tax returns, or Financial Products."

52.      The Non-Compete and Non-Solicit covenants contained in Section 10 of the Franchise Agreements are necessary to protect Plaintiffs' legitimate, protectable interests in its franchise businesses, including but not limited to:

A.      Maintaining and protecting Plaintiffs' goodwill and customer loyalty;

B.      Retaining customer relationships;

C.      Plaintiffs' customer lists, customer identification, tax returns, and other confidential and trade secret information; and

D.      Preserving Plaintiffs' ability to facilitate the operation of Plaintiff franchises where the Franchise Location is currently located.

53.      Pursuant to Section 10(h) of the Franchise Agreements, Gorosave and Garcia

agreed "that the provisions of Section 10 are reasonable, valid and not contrary to the public interest." To that end, Gorosave and Garcia agreed to "waive all defenses to the strict enforcement of Section 10," and further agreed that "[Plaintiffs are] entitled to a temporary restraining order, preliminary and/or permanent injunction for any breach of duties under any of the non-monetary obligations of Sections 9 and 10."

54. Pursuant to Section 12 of the Franchise Agreements, Gorosave and Garcia acknowledged that information provided by Plaintiffs to them regarding, among other things, Plaintiffs' Marks, methods, techniques, formats, specifications, procedures, information, systems, and customer and marketing information was confidential, and was to be used only in connection with the operation of the Franchise Locations.

55. Pursuant to Sections 12(a) of the Franchise Agreements, Gorosave and Garcia agreed that "[u]pon the expiration, termination or nonrenewal of this Agreement, you agree that you will never use or disclose, and will not permit any of your representatives to use or disclose, Plaintiffs' Confidential Information in any manner whatsoever, including, without limitation, in the design, development or operation of any business substantially similar to the Franchised Business."

56. Pursuant to Section 12(c) of the Franchise Agreements, Gorosave and Garcia agreed that they would "(a) not use the Confidential Information for any purpose other than the operation of the Franchised Business pursuant to this Agreement; (b) maintain absolute confidentiality of the Confidential Information during and after the term of this Agreement; (c) not make unauthorized copies of any portion of the Confidential Information disclosed in written form; and (d) adopt and implement all reasonable procedures, including, but not limited to, those Plaintiffs prescribe form time to time, to prevent unauthorized use of or disclosure of the

Confidential Information."

57.     Pursuant to Section 17(a) of each of the Franchise Agreements, Gorosave and Garcia agreed and acknowledged that Virginia law governs "all claims that in any way relate to or arise out of" the Franchise Agreement and/or the dealings between the parties to the Franchise Agreement.

58.     Pursuant to Section 17(b) of the Franchise Agreements, Gorosave and Garcia consented to venue and personal jurisdiction in the U.S. District Court for the Eastern District of Virginia, Norfolk Division.

**Breach of the Franchise Agreement**

59.     The parties mutually terminated the Franchise Agreements for the Ross Ave. and Brawley Locations on January 8, 2019. **[Ex. D].** Later that year, on July 11, 2019, Defendants notified Plaintiffs that they did not wish to renew their franchise agreement for the 4th Street Location. **[Ex. E].**

60.     Following the termination an non-renewal, Gorosave created a competing tax preparation business, Brightworks, which would operate out of the same location as the 4th Street Location; use the same phone number as the 4th Street location (760-352-7642); use Plaintiffs' trade secrets, including, but not limited to, business know-how and customer lists; and use the good will acquired from Plaintiffs' Marks as well as developed by the former 4th Street Location to compete directly with Plaintiffs and solicit Plaintiffs' customers in breach of Defendants' post-termination restrictive covenants.

61.     Upon information and belief, since 2019, Gorosave has been operating a tax preparation business to compete with Plaintiffs by rebranding her operations as "Brightworks Business Services"  She would thereby incur economic gain by using Plaintiffs' trade secrets,

customer information, and good will. Upon information and believe Gorosave created Brightworks prior to or immediately following the termination of the Franchise Agreements.

62.     Gorosave has misappropriated customer information obtained while operating the former Franchised Businesses, used a business advertisement website that demonstrated and garnered good will while the franchisees operated under the Marks, used the telephone number and address used by the former Franchise Location in order to unlawfully solicit Plaintiffs' clients and potential clients and unlawfully compete with Plaintiffs via her new business, Brightworks.

63.     Gorosave and Garcia failed to deliver to Plaintiffs all customer contact information.

64.     Gorosave and Garcia failed to deliver to Plaintiffs all customer files, including, but not limited all original and copies of customer tax returns and records.

65.     As of July 2021, Defendants owe Plaintffs Royalties in the amount of approximately $70,699 for tax returns prepared in violation of the non-compete and non-solicitation clauses of the Franchise Agreements.

66.     Defendants failed to transfer to Plaintiffs the telephone numbers associated with the former Franchised Businesses. In order to compete with Plaintiffs, trade on Plaintiffs' good will, and solicit Plaintiffs' customers, Defendants continue to use the telephone number of the former Franchised Business as reflected in Brightworks' website.

67.     Gorosave established Brightworks within two years of the expiration of the Franchise Agreements and operates it to offer and provide tax preparation services from the Franchise Location using the telephone number associated with the former Franchised Business.

68.     Defendants have prepared, are preparing, and will continue to prepare tax returns for cstomers of Plaintiffs for whom Defendants prepared tax returns while operating their former Franchise Locations, despite the termination of the Franchise Agreements.

69.     Defendants, individually, jointly, and in concert with each other have used, divulged, and/or communicated Plaintiffs' trade secrets and confidential information to establish and operate Brightworks without the consent of Plaintiffs.

## COUNT I
### Breach of Franchise Agreement Against Gorosave and Garcia
### (Equitable Claim)

70.     Plaintiffs incorporate herein by reference the preceding Paragraphs as if set forth herein verbatim.

71.     The Franchise Agreements are valid and enforceable.

72.     Plaintiffs have performed every obligation and condition required of them under the Franchise Agreements.

73.     Defendants are personally and individually liable for all obligations in the Franchise Agreement, including post-termination obligations and covenants.

74.     The Franchise Agreements were terminated on January 8, 2019 or expired on July 11, 2019.

75.     Defendants agreed to the post-termination obligations set forth in Section 9 of the Franchise Agreements.

76.     Defendants committed the following acts and omissions following the expiration of the Franchise Agreement in violation of Section 9 of the Franchise Agreement:

   A.     Operating their competing business, Brightworks, in a former Franchise Location using a former Franchise telephone number;

   B.     Failing to pay to Plaintiffs royalties due and owing;

   C.     Failing to transfer to Plaintiffs the telephone number used by the Franchised Business upon expiration of the Franchise Agreement;

   D.     Failing to provide to Plaintiffs the original and all copies of files and records, including customer lists, related to the operation of the Franchised Business upon expiration of the Franchise Agreement;

14

E.      Failing to return Plaintiffs' confidential operations manual;

F.      Preparing and electronically filing income tax returns and providing Financial Products from the former Franchise Location, which is within the Territory, during the two-year period following the expiration of the Franchise Agreement; and

G.      Soliciting the patronage of persons and entities that were served by the former Franchised Businesses between November 13, 2014 and July 11, 2019 for the purpose of offering such person or entity income tax preparation, electronic filing of tax returns, or Financial Products during the two-year period following the expiration of the Franchise Agreement.

77.     Gorosave and Garcia agreed to the post-termination Non-Compete and Non-Solicit covenants set forth in Section 10 of the Franchise Agreements.

78.     Defendants committed the following acts and omissions following the expiration of the Franchise Agreement in violation of Section 10 of the Franchise Agreement:

A.      Preparing and electronically filing income tax returns and providing Financial Products from the Franchise Location, which is within the Territory, during the two-year period following the expiration of the Franchise Agreement; and

B.      Soliciting the patronage of persons and entities that were served by the Franchised Businesses between November 13, 2014 and July 11, 2019 for the purpose of offering such person or entity income tax preparation, electronic filing of tax returns, or Financial Products during the two-year period following the expiration of the Franchise Agreement.

79.     Gorosave and Garcia agreed not to disclose or use Plaintiffs' Confidential Information except as authorized in Section 12 of the Franchise Agreement.

80.     Gorosave and Garcia committed the following acts and omissions following the expiration of the Franchise Agreement in violation of Section 12 of the Franchise Agreement:

A.      Disclosing Plaintiffs' Confidential Information, including methods of operations, customer information, and marketing information, to other persons and entities, including Brightworks, without the consent or authorization of Plaintiffs.

B.      Using Plaintiffs' Confidential Information for purposes other than the

operation of the Franchised Business, including for the purpose of operating Brightworks Plus and soliciting Plaintiffs' customers.

81.    Each and every one of the breaches set forth in Paragraphs 70, 72, and 74 constitutes a material breach of the Franchise Agreements.

82.    As a direct and proximate result of these breaches, Plaintiffs have incurred, and will continue to incur substantial losses, fees, and expenses for which Defendants are jointly and severally liable.

83.    As a result of Defendants' past, present, and potential breaches, Plaintiffs have suffered and will continue to suffer actual, substantial, and irreparable damage, including, but not limited to:

A.    Loss of customer goodwill and loyalty;

B.    Loss of business opportunities and relationships to provide tax preparation services and related services;

C.    Loss of customers;

D.    Loss of profits;

E.    Loss of franchisee stability;

F.    Loss of ability to sell other franchises;

G.    Loss of value in confidential business information;

H.    Loss of competitive advantage in the CA375 and CA376 Territories;

I.    Attorneys' fees; and

J.    Cost of this action.

84.    Plaintiffs have been and will be irreparably harmed by Defendants' actions, and monetary damages are an insufficient remedy in that they can only potentially quantify a limited loss of customers, but cannot take into account the continuing irreparable damage to the value of

Plaintiffs' trade secrets and confidential information, goodwill, customer loyalty, and its ability to sell franchises, all of which are caused by Gorosave and Garcia's ongoing violations.

85.     Upon information and belief, Defendants will continue to breach the Franchise Agreements by failing to transfer the telephone number and advertisement of the former Franchised Businesses and failing to deliver to Plaintiffs all original and copies of Plaintiffs' confidential information and customer information and records.

86.     Upon information and belief, Defendants will continue to breach post-termination obligations of continuing to use the telephone number of the former Franchised Business; continuing to disclose and use Plaintiffs' confidential information and trade secrets, including, but not limited to business know-how and customer lists; and continuing to breach the Non-Compete and Non-Solicit covenants unless their wrongful conduct is enjoined.

## COUNT II
### Breach of Franchise Agreement Section 9(d) Against Gorosave and Garcia
### (Monetary Claim)

87.     Plaintiffs incorporate herein by reference the preceding Paragraphs as if set forth herein verbatim.

88.     The Franchise Agreements are valid and enforceable.

89.     Plaintiffs have performed every obligation and condition required of it under the Franchise Agreements.

90.     Defendants agreed to perform all obligations set forth in the Franchise Agreement, including the post-termination obligations set forth in Section 9.

91.     The Franchise Agreement for the 4th Street Location expired on July 11, 2019.

92.     The Franchise Agreement for the Ross Ave and Brawley Locations expired on January 8, 2019.

93.     Section 9(d) of the Franchise Agreement required that Gorosave and Garcia pay Plaintiffs all amounts due and owing to Plaintiffs.

94.     As of the date of this Verified Complaint, Gorosave and Garcia have not paid Plaintiffs the outstanding A/R in the amount of $4,661.50.

95.     Pursuant to Section 23 of the Franchise Agreement, Gorosave and Garcia are personally liable for all amounts due and owing under the outstanding A/R.

96.     As a direct and proximate result of Gorosave and Garcia's breaches of the Franchise Agreements, Plaintiffs have incurred, and will continue to incur substantial losses, fees, and expenses for which Gorosave and Garcia are jointly and severally liable.

## COUNT III
### Breach of Franchise Agreement Sections 9(k), 10(b), (d) Against Gorosave and Garcia
### (Monetary Claim)

97.     Plaintiffs incorporate all previous paragraphs as though fully set forth herein verbatim.

98.     Gorosave and Garcia agreed to the post-termination obligation set forth in Section 9(k) of the Franchise Agreements that they would adhere to the provisions of the Non-Compete and Non-Solicit covenants.

99.     Gorosave and Garcia agreed to the Non-Compete covenant set forth in Section 10(b) of the Franchise Agreement that, "[f]or a period of two (2) years following the…expiration…of the Franchised Business…you agree not to directly or indirectly, for a fee or charge, prepare or electronically file income tax returns, or offer Financial Products, within the Territory or within twenty-five (25) miles of the boundaries of the Territory."

100.    Gorosave and Garcia agreed to the Non-Solicit covenant set forth in Section 10(d) of the Franchise Agreement that, "for a period of two (2) years following the…expiration…of the Franchised Business…you will not within the Territory or within twenty-five (25) miles of the

boundaries of the Territory, directly or indirectly, solicit the patronage of any person or entity served by any of your prior Liberty offices in the last twelve (12) months that you were a Liberty franchisee…for the purpose of offering such person or entity, for a fee or charge, income tax preparation, electronic filing of tax returns, or Financial Products."

101.    Within the two years following the expiration of the Franchise Agreements, Defendants have misappropriated customer information obtained while operating the former Franchised Business, and used a telephone number and address used by the former Franchise Business, in order to unlawfully solicit Liberty's clients and potential clients and unlawfully compete with Plaintiffs via their new business Brightworks.

102.    Defendants have and will continue to use Plaintiffs' goodwill in order to legitimize their new business and for the purpose of competing with Plaintiffs.

103.    Defendants have and will continue to utilize the telephone number of the former Franchised Business, which they failed to transfer to Plaintiffs in violation of Section 9(e) of the Franchise Agreement, and address of the former Franchise Location to legitimize Brightworks as the successor business of the former Franchised Business in order to solicit Plaintiffs' customers and compete with Plaintiffs. Defendants have advertised their telephone number and address through Brightworks' website.

104.    Defendants have and will continue to solicit Plaintiffs' clients using the confidential client contact information and records that they failed to deliver to Plaintiffs in violation of Section 9(g) and (h) of the Franchise Agreements.

105.    As a direct and proximate result of Defendants' breaches of Sections 9(k), 10(b), and 10(d) of the Franchise Agreement, Plaintiffs have suffered and will continue to suffer damages in an amount to be proven at trial, for which Defendants are jointly and severally liable, including,

but not limited to, compensatory damages, consequential damages, and disgorgement of Defendants' profits.

106.    Defendants intentionally and maliciously planned to violate the Non-Compete and Non-Solicit covenants by creating a new business entity (Brightworks) for the purposes of providing tax preparation services prior to or immediately following the expiration of the Franchise Agreements; failing to transfer to Plaintiffs the telephone number of the former Franchised Business in violation of the Franchise Agreement in order to legitimize Brightworks' business; failing to deliver to Plaintiffs all original and copies of customer information and records in violation of the Franchise Agreements in order to wrongfully solicit Plaintiffs' customers and wrongfully compete with Plaintiffs within two years of allowing the Franchise Agreements to expire; and soliciting Plaintiffs' customers and competing with Plaintiffs in violation of the Franchise Agreement post-termination covenants.

107.    Because Defendants intentionally and maliciously violated the Non-Compete and Non-Solicit covenants of the Franchise Agreement, Plaintiffs are entitled to punitive damages.

### COUNT IV
### *Conversion Against Gorosave*

108.    Plaintiffs incorporates all previous paragraphs as though fully set forth herein verbatim.

109.    Plaintiffs own and have the right to possess the following property by virtue of the Franchise Agreement:

      A.    The telephone number of the former Franchised Business;

      B.    Any original and all copies, including electronic copies and media, of lists and other sources of information containing the names, addresses, e-mail addresses, or phone numbers of customers who patronized the Franchised Business;

      C.      Any original and all copies, including electronic copies and media, containing customer tax returns, files, and records; and

      D.      The copy of the Operations Manual and any updates.

110.    Gorosave and Garcia were authorized to use and possess the property while operating the former Franchised Businesses under the Franchise Agreements.

111.    Pursuant to Section 9 of the Franchise Agreement, upon expiration of the Franchise Agreement, Gorosave and Garcia were required to transfer and deliver all of the aforementioned property to Plaintiffs.

112.    Following the expiration of the Franchise Agreements, Defendants have retained Plaintiffs' property without authority, thereby intentionally interfering with Plaintiffs' use and enjoyment of its property. Upon information and belief, Brightworks uses the same telephone number as the former 4th Street Location.

113.    Defendants have converted Plaintiffs' property for their financial gain through the solicitation of Plaintiffs' customers and in order to directly compete with Plaintiffs for tax preparation services.

114.    Defendants' interference with Plaintiffs' property by virtue of not transferring or delivering it to Plaintiffs has deprived Plaintiffs of its possession and use of the aforementioned property.

115.    As a direct and proximate result of Defendants' conversion of Plaintiffs' property, Liberty has suffered damages and will continue to suffer damages until the aforementioned property is delivered and returned to Plaitniffs.

## COUNT V
### *Violation of Defend Trade Secrets Act Against all Defendants*

116.    Plaintiffs incorporate all previous paragraphs as though fully set forth herein verbatim.

117.    The Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*, provides a private civil action for the misappropriation of a trade secret that is related to a product or service used in, or intended for use in, interstate or foreign commerce.

118.    Plaintiffs own numerous trade secrets, including but not limited to, its Operations Manual, training manuals, training programs, marketing strategies, marketing programs, and customer lists. Each of Plaintiffs' trade secrets derives independent economic value from not being generally known to and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information. Plaintiffs' trade secrets are not readily ascertainable by the public as they are disclosed only to franchisees in the operation of a franchised business pursuant to a franchise agreement.

119.    During the operation of the Franchised Businesses, Plaintiffs' trade secrets were disclosed to Gorosave and Garcia for the sole purpose of operating the Franchised Businesses pursuant to the Franchise Agreements.

120.    Plaintiffs have taken extensive measures to preserve and protect these trade secrets for the purpose of maintaining its competitive advantage in the marketplace. The Franchise Agreements explicitly provide for the protection of such trade secrets, including requiring the delivery of all originals and copies of such information to Plaintiffs upon expiration, termination, or nonrenewal of the Franchise Agreements, requiring former franchisees and their representatives to maintain the confidentiality of the information, and requiring former franchisees and their representatives to never use the information for any purpose other than operating a Franchised

22

Business pursuant to the Franchise Agreements.

121.    Plaintiffs required and Gorosave and Garcia agreed that upon expiration, termination, or nonrenewal of the Franchise Agreements, they would never use, disclose, or permit the use or disclosure of Plaintiffs' trade secrets in any manner whatsoever.

122.    Plaintiffs required that upon termination, expiration, or nonrenewal of the Franchise Agreements, Gorosave and Garcia would stop using all literature and forms received by Plaintiffs, deliver to Plaintiffs all customer information, and deliver to Plaintiffs  all copies of its Operations Manual and any updates thereto.

123.    In 2019, Gorosave began a business called Brightworks, which performs tax preparation services at the former Franchise Location to customers Gorosave and Garcia previously served while they were franchisees.

124.    Without authority or consent from Defendants used the business know-how, customer lists, and customer contact information that Gorosave and Garcia obtained while operating the former Franchised Business to obtain business for themselves and/or Brightworks after the expiration of the Franchise Agreements, thereby misappropriating Plaintiffs' trade secrets.

125.    Upon information and belief, Defendants are utilizing Plaintiffs' confidential system and materials after the expiration of the Franchise Agreements and Plaintiffs have not and would not consent to or authorize such use.

126.    Defendants intentionally and without Plaintiffs' permission or authorization misappropriated and/or disclosed Plaintiffs' trade secrets for their own economic benefit and with the intention and knowledge that their conduct would injure Plaintiffs by, for example, causing Plaintiffs to lose any customers successfully solicited by Defendants.

127.     As a direct and proximate result of Gorosave and Garcia's willful, improper, and unlawful disclosure and Defendants' willful, improper, and unlawful use of Plaintiffs' trade secrets, Plaintiffs have suffered and will continue to suffer irreparable injury.  Pursuant to 18 U.S.C. § 1836(b)(3)(A), Defendants' actual and threatened use and misappropriation of Plaintiffs' trade secrets should be enjoined from further disclosure or use of Plaintiffs' trade secrets.

128.     Pursuant to 18 U.S.C. 1836(b)(3)(B), Plaintiffs are entitled to recover damages for its actual losses; and/or is entitled to recover for the unjust enrichment caused by Defendants' misappropriation of Plaintiffs' trade secrets in an amount to be proven at trial.

129.     Defendants' conduct in misappropriating Plaintiffs' trade secrets was and continues to be willful and malicious - warranting an award of exemplary damages in accordance with 18 U.S.C. § 1836(b)(3)(C); and an award of reasonable attorneys' fees in accordance with 18 U.S.C. § 1836(b)(3)(D).

## COUNT VI
### *Violation of Virginia Uniform Trade Secrets Act Against all Defendants*

130.     Plaintiffs incorporate all previous Paragraphs as though fully set forth herein verbatim.

131.     Plaintiffs own numerous trade secrets, including but not limited to, its Operations Manual, training manuals, training programs, marketing strategies, marketing programs, and customer lists. Each of Plaintiffs' trade secrets derives independent economic value from not being generally known to and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information. Plaintiffs' trade secrets are not readily ascertainable by the public as they are disclosed only to franchisees in the operation of a franchised business pursuant to a franchise agreement.

132.     During the operation of the Franchised Businesses, Plaintiffs' trade secrets were

disclosed to Gorosave and Garcia for the sole purpose of operating the Franchised Businesses pursuant to the Franchise Agreements.

133.    Plaintiffs have taken extensive measures to preserve and protect these trade secrets for the purpose of maintaining its competitive advantage in the marketplace. The Franchise Agreements explicitly provide for the protection of such trade secrets, including requiring the delivery of all originals and copies of such information to Plaintiffs upon expiration, termination, or nonrenewal of the Franchise Agreements, requiring former franchisees and their representatives to maintain the confidentiality of the information, and requiring former franchisees and their representatives to never use the information for any purpose other than operating a Franchised Business pursuant to the Franchise Agreements.

134.    Plaintiffs required and Gorosave and Garcia agreed that upon expiration, termination, or nonrenewal of the Franchise Agreements, they would never use, disclose, or permit the use or disclosure of Plaintiffs' trade secrets in any manner whatsoever.

135.    Plaintiffs required that upon termination, expiration, or nonrenewal of the Franchise Agreements, Gorosave and Garcia would stop using all literature and forms received by Plaintiffs, deliver to Plaintiffs all customer information, and deliver to Plaintiffs all copies of its Operations Manual and any updates thereto.

136.    In 2019, Gorosave began a business called Brightworks, which performs tax preparation services at the former 4th Street Location to customers Gorosave and Garcia previously served while they were franchisees.

137.    Without authority or consent from Plaintiffs, Defendants used Liberty's business know-how, customer lists, and customer contact information in order to obtain business for

themselves after the expiration of the Franchise Agreements, thereby misappropriating Plaintiffs' trade secrets.

138.    Upon information and belief, Defendants are utilizing Plaintiffs' confidential system and materials after the expiration of the Franchise Agreements and Plaintiffs have not and would not consent to or authorize such use.

139.    Defendants intentionally and without Plaintiffs' permission or authorization misappropriated and/or disclosed Plaintiffs' trade secrets for their own economic benefit and with the intention and knowledge that their conduct would injure Plaintiffs by, for example, causing Plaintiffs to lose any customers successfully solicited by Defendants.

140.    As a direct and proximate result of Defendants' willful, improper, and unlawful disclosure and Defendants' willful, improper, and unlawful use of Plaintiffs' trade secrets, Plaintiffs have suffered and will continue to suffer irreparable injury.  Pursuant to Va. Code § 59.1-337, Defendants' actual and threatened use and misappropriation of Plaintiffs' trade secrets should be enjoined from further disclosure and use of Plaintiffs' trade secrets.

141.    Pursuant to Va. Code § 59.1-338(A), Plaintiffs are entitled to recover damages for its actual losses; and/or is entitled to recover the unjust enrichment caused by Defendants' misappropriation of Plaintiffs' trade secrets in an amount to be proven at trial.

142.    Defendants' conduct in misappropriating Plaintiffs' trade secrets was and continues to be willful and malicious - warranting an award of punitive damages in accordance with Va. Code § 59.1-338(B); and an award of reasonable attorneys' fees in accordance with Va. Code § 59.1-338.1.

**COUNT VII**
*Tortious Interference with Contract Against Brightworks*

143.     Plaintiffs incorporate all previous Paragraphs as though fully set forth herein verbatim.

144.     The Franchise Agreements are valid and enforceable.

145.     Brightworks, by and through Gorosave, knew of the existence of the Franchise Agreements.

146.     Brightworks engaged in the intentional and improper conduct described herein, which induced Gorosave, to breach various provisions of the Franchise Agreements, including, but not limited to the following:

  A.     Failing to transfer to Plaintiffs the telephone number used by the Franchised Business upon expiration of the Franchise Agreement;

  B.     Preparing and electronically filing income tax returns and providing Financial Products from the Franchise Location, which is within the Territory, during the two-year period following the expiration of the Franchise Agreement; and

  C.     Soliciting the patronage of persons and entities that were served by the Franchised Businesses between November 13, 2014 and July 11, 2019 for the purpose of offering such person or entity income tax preparation, electronic filing of tax returns, or Financial Products during the two-year period following the expiration of the Franchise Agreements.

  D.     Disclosing Plaintiffs' Confidential Information, including methods of operations, customer information, and marketing information, to other persons and entities, including Brightworks, without the consent or authorization of Plaintiffs.

  E.     Using Plaintiffs' Confidential Information for purposes other than the operation of the Franchised Business, including for the purpose of operating Brightworks and soliciting Plaintiffs' customers.

147.     As a result of Brightworks' tortious conduct, Gorosave and Garcia breached the Franchise Agreements with Plaintiffs.

148.    Brightworks' tortious interference has caused Plaintiffs to suffer irreparable injury and Plaintiffs will continue to suffer irreparable injury unless Brightworks is enjoined from further tortious interference with Gorosave and Garcia's compliance with the terms of the Franchise Agreements.

149.    As a direct and proximate result of Brightworks' tortious interference, Plaintiffs have suffered and will continue to suffer damages in an amount to be proven at trial, including, but not limited to, compensatory damages, consequential damages, and disgorgement of Brightworks' profits.

150.    Brightworks intentionally and maliciously caused Gorosave and Garcia to violate the non-competition and non-solicitation covenants by creating a new business entity (Brightworks) for the purposes of providing tax preparation services prior to or immediately after the Franchise Agreements expired; failing to transfer to Plaintiffs the telephone number of the former Franchised Business in violation of the Franchise Agreements and in order to legitimize Brightworks' business; failing to deliver to Plaintiffs all original and copies of customer information and records in violation of the Franchise Agreements in order to wrongfully solicit Plaintiffs' customers and wrongfully compete with Plaintiffs within two years of allowing the Franchise Agreements to expire; and soliciting Plaintiffs' customers and competing with Plaintiffs in violation of the Franchise Agreements' post-termination covenants.

151.    Because Brightworks intentionally and maliciously interfered with Gorosave and Garcia's compliance with the Franchise Agreements, Plaintiffs are entitled to punitive damages.

## COUNT VIII
### *Request for Preliminary Injunction Against Defendants*

152.    Plaintiffs incorporate herein by reference the preceding Paragraphs as if set forth herein verbatim.

153.    Plaintiffs' application for injunctive relief is authorized by Fed. R. Civ. P. 65.

154.    Pursuant to Section 10(h) of the Franchise Agreements, Gorosave and Garcia acknowledged and agreed that "[plaintiffs are] entitled to a temporary restraining order, temporary and/or permanent injunction" for breach of any of the post-termination obligations of the Franchise Agreement.

155.    By providing tax preparation services to former franchisee customers out of the Franchise Location, using the same telephone number as the Franchised Business; disclosing and using Plaintiffs' confidential information; and misappropriating Plaintiffs' trade secrets, Defendants are engaging and will continue to engage in tax preparation services that are in clear violation of the express terms of the Franchise Agreement.

156.    As a result of Defendants' unauthorized and unlawful acts, Plaintiffs have been irreparably harmed and will continue to suffer irreparable harm.

157.    For the foregoing reasons, Plaintiffs respectfully request that the Court grant the following injunctive relief:

A.    Enjoin Defendants from continuing to operate a tax preparation business out of the Franchise Location;

B.    Enjoin Defendants from using the telephone number of the former Franchised Business.

C.    Enjoin Gorosave and Garcia from preparing or electronically filing income tax returns and offering Financial Products within the Territory or within twenty-five miles of the Territory set forth in the Franchise Agreements;

D.    Enjoin Defendants from providing tax preparation services to any customers served by the former Franchised Businesses between November 13, 2014 and July 11, 2019;

E.    Enjoin Defendants from referring to themselves as a former franchisee of Plaintiffs or former franchisee of a national tax preparation service; and

F.    Enjoin Defendants from using any confidential information from manuals or system provided by Plaintiffs.

29

158.    Plaintiffs have a high likelihood of success on the merits on their claims, and it is probable that it will recover from Defendants, as Defendants, each and collectively, are openly and actively, materially breaching the express terms of the valid and enforceable Franchise Agreements and as Brightworks is openly and actively, tortiously interfering with Gorosave and Garcia's compliance with the Franchise Agreements and is in possession of and using Plaintiffs' trade secrets.

159.    Irreparable harm will result if a preliminary injunction is not issued because Gorosave and Garcia continue to materially breach the express terms of the valid enforceable Franchise Agreement, which will cause irreparable and irreversible harm to the goodwill and reputation that Liberty has spent significant time and money establishing.

160.    Plaintiffs have no adequate remedy at law because each Defendant refuses to cease their material breaches of express terms in the Franchise Agreements and other tortious conduct.

161.    Gorosave and Garcia waived any requirement that Plaintiffs post bond in Section 10(h) of the Franchise Agreements.

162.    The injury to Plaintiffs outweighs any injury that would be sustained by Defendants collectively, and each of them, as a result of the requested injunctive relief.

163.    Injunctive relief will not adversely affect the public interest.

164.    Defendants have been or are being served with notice of this application for injunctive relief.

### COUNT IX
*Request for Permanent Injunction Against Defendants*

165.    Plaintiffs incorporate herein by reference the preceding Paragraphs as if set forth herein verbatim.

166. After a trial on the merits or a final judgment, Plaintiffs ask the Court to convert any preliminary injunction as specified above into a permanent injunction.

167. Plaintiffs have joined all indispensable parties pursuant to Fed. R. Civ. 19.

### PRAYER FOR RELIEF

WHEREFORE, Liberty prays for judgment against Defendants as follows:

1. For the following injunctive relief:

    A. Enjoin Defendants from continuing to operate a tax preparation business out of the Franchise Location;

    B. Enjoin Defendants from using the telephone number of the former Franchised Business.

    C. Enjoin Gorosave and Garcia from preparing or electronically filing income tax returns and offering Financial Products within the Territory or within twenty-five miles of the Territory set forth in the Franchise Agreement;

    D. Enjoin Gorosave and Garcia from providing tax preparation services to any customers served by the former Franchised Business between November 13, 2014 and July 11, 2019;

    E. Enjoin Defendants from using any confidential information from manuals or system provided by Plaintiffs;

    F. Order Defendants to remove any reference to being a former franchisee of Plaintiffs and any links to Plaintiffs or the former franchisee;

    G. Order Gorosave and Garcia to return to Plaintiffs, at their own expense, all printed materials provided by Plaintiffs to Gorosave and Garcia, including, without limitation, all manuals, customer lists, advertising material, stationery and printed forms and all other matters relating to the operation of the Franchises and/or bearing the Marks;

    H. Order Gorosave and Garcia to deliver to Plaintiffs, at their own expense, any original and all copies, including electronic copies and media, of lists and other sources of information containing the names, addresses, e-mail addresses, or phone numbers of customers who patronized the Franchised Business, and any original and all copies, including electronic copies and media, containing customer tax returns, files, and records; and

    I. Order Gorosave and Garcia to transfer the telephone number for the former Franchised Business to Plaintiffs.

31

2.      For a monetary award against Defendants in excess of $75,000 to be proven at trial, including, but not limited to, compensatory damages, expectancy damages, punitive damages, and disgorgement of profits;

3.      For a monetary award against Defendants for Plaintffs' attorneys' fees and costs, in an amount to be proven at trial;

4.      For pre- and post-judgment interest; and

5.      For such other relief as the Court deems just and appropriate.

Dated: November 15, 2021                          Respectfully submitted,

**GORDON REES SCULLY MANSUKHANI, LLP**

By:  /s/ Allison J. Becker
Allison J. Becker (VSB #81993)
Julia K. Whitelock, Esq. (VSB #79329)
421 Fayetteville Street, Suite 300
Raleigh, NC 27601
abecker@grsm.com
jwhitelock@grsm.com

*Attorneys for JTH Tax, LLC d/b/a Liberty Tax Service*

# EXHIBIT A



**FRANCHISE AGREEMENT**

**EXHIBIT B**

# TABLE OF CONTENTS

<u>Section</u>                                                                                                    <u>Page</u>

1.  Grant Of Franchise ...................................................................................................4

2.  Term, Renewal And Buyback .....................................................................................4

3.  Territory ..................................................................................................................4

4.  Fees And Payments ...................................................................................................5

5.  Obligations Of Franchisor .........................................................................................7

6.  Obligations Of Franchisee.........................................................................................9

7.  Reports And Review ................................................................................................12

8.  Termination ...........................................................................................................13

9.  Post-Termination Obligations ..................................................................................15

10. Additional In-Term And Post-Term Covenants ..........................................................15

11. Option To Purchase Assets ......................................................................................17

12. Confidential Information ..........................................................................................17

13. Independent Contractor ...........................................................................................18

14. Death Or Incapacity ................................................................................................18

15. Assignability ..........................................................................................................18

16. Non-Waiver Of Breach ............................................................................................20

17. Governing Law.......................................................................................................20

18. Modification ..........................................................................................................21

19. Release Of Prior Claims ..........................................................................................21

20. Notices ..................................................................................................................21

21. Full Understanding ..................................................................................................21

22. Acknowledgments ..................................................................................................21

23. Guaranty ................................................................................................................22

24. Counterparts ..........................................................................................................22

    Signature Page.......................................................................................................23

    Schedule A – Territory............................................................................................A-1

Schedules B-1 to B-5 – Special Stipulations……………………………….................B-1-B-5

## 1. GRANT OF FRANCHISE

Liberty Tax Service ("Liberty," "Liberty Tax") has developed a system for the operation of tax return preparation offices. The Liberty system utilizes special marketing techniques and operating procedures to facilitate the provision of tax return preparation and related services.

You, meaning the Franchisee and all Signators identified on the signature page to this Agreement, in your personal capacity, have applied for a franchise that utilizes Liberty's system and Liberty's trade names, service marks, and trademarks (collectively, the "Marks") ("Franchised Business" or "Franchise"). Subject to the terms of this franchise agreement ("Agreement"), Liberty grants to you a Liberty Tax Service franchise. This Agreement will allow you to operate a tax return preparation business using Liberty's system and Liberty's Marks within the Territory described on Schedule A. You agree to abide by the terms of this Agreement.

You recognize and agree that the nature of the tax return preparation business is such that complete uniformity is not always practical or desirable and that Liberty, in Liberty's sole discretion, may vary the terms of this Agreement and the standards of operation of the Franchised Business to accommodate the peculiarities of a particular situation and/or Territory. You have no recourse against Liberty if other franchisees are granted allowances which you are not granted.

## 2. TERM, RENEWAL AND BUYBACK

**a. Term.** This Agreement will be effective for a five-year term beginning on the Effective Date specified in this Agreement.

**b. Renewal.** You may renew for another five-year term by signing Liberty's then current franchise agreement if you have met the Target Volume specified in paragraph 6.f. and are otherwise in compliance with this Agreement. You may also renew future franchise agreements if you are in compliance with the agreements and meet the other conditions therein for renewal by signing Liberty's then current franchise agreement. To renew, you must exercise a general release of all claims that you might have against Liberty. Liberty may not raise royalties or advertising fees that you pay to Liberty upon any future renewal, nor impose a renewal fee, or change the boundaries of your Territory or the level and type of territorial exclusivity and territorial rights you have. Other terms and conditions may vary. If you wish to renew, you must notify Liberty in writing at least 180 days before the expiration of this Agreement.

**c. Buyback.** Any year between May 1 and August 31, Liberty has the right, in Liberty's sole discretion, to purchase your Franchised Business for the greater of $150,000 or 200% of Gross Receipts of the Territory for the previous twelve months, or such shorter time as an office in the Territory may have been in operation. You understand that this is a premium price above fair value and does not vest any rights in you. The term **"Gross Receipts"** as used in this Agreement means all revenue from all services and products offered by the Franchised Business (including, but not limited to, revenue from individual, corporate, estate and partnership tax returns), excluding only customer discounts, any Transmitter, Software or Electronic Filing Fee (as described in paragraph 4.e. below), and sales tax, but not service fees for credit card transactions.

## 3. TERRITORY

Your Territory is described in Schedule A of this Agreement ("Territory"). You may operate as many tax return preparation offices in the Territory as you determine to be appropriate.

You may not operate outside your Territory. Liberty may grant franchises for areas outside your Territory or operate company offices in such areas. Except as described below, Liberty may not establish franchised or company owned outlets or other channels of distribution of similar products or services in your Territory. Liberty may grant franchises in your Territory which operate a different line of business. Liberty may distribute Liberty tax return preparation products and services by means other than retail or storefront locations in your Territory, including the sale of gift cards for this service. No other franchisee using the Marks granted hereunder may operate a tax return preparation office in your Territory. Liberty may advertise in your Territory. You may not advertise in areas outside your Territory, or in media which extend outside your Territory, without Liberty's expressed written approval.

If you locate an office outside your Territory as a result of incorrect address information from a landlord or otherwise, even if Liberty approved such site location, you agree upon discovery of such error to promptly abandon such office and refrain from any further targeted solicitation (e.g., direct mail, telephone call, etc.) of customers residing in the territory containing the misplaced office. Likewise, if Liberty learns that Liberty or another franchisee has erroneously located an office in your Territory, you agree to accept the abandonment of such office and that franchisee's refrainment of further targeted solicitation of customers located in your Territory, in full satisfaction of any claim against Liberty, Liberty's past and present employees, and Liberty's past and present franchisees, in relation to the misplaced office. Liberty has a reasonable time to correct any such error after Liberty learns of it. No person or entity is a third-party beneficiary of this paragraph.

Liberty may negotiate agreements with national or regional retail businesses. If there is an outlet of such a national or regional business in your Territory that is subject to such an agreement, you may choose to operate a tax return preparation service office in that outlet by communicating that decision to Liberty by December 1 before a given Tax Season, or such earlier date provided by Liberty in order to meet the requirements of that business. If you choose not to operate in an outlet which exists in your Territory, Liberty may operate in that outlet in your Territory. If Liberty does so, all associated revenue and expenses are Liberty's, along with the future right to service the customers associated with that outlet.

## 4. FEES AND PAYMENTS

    **a. Initial and Resale Franchise Fee.** The initial franchise fee and resale franchise fees are $40,000. The resale franchise fee applies to a territory that has been previously sold. If a territory includes existing operations, the total cost will vary depending upon the Gross Receipts of the Territory and other pertinent market and economic factors.

    **b. Down Payment and Approval.** You must submit a minimum of 20% of the initial or resale franchise fee as a deposit after you have held the Liberty Franchise Disclosure Document for at least fourteen (14) calendar days. Liberty will refund this deposit to you upon your request at any time before you attend Effective Operations Training ("EOT"). Except as to any portion which is financed, you must submit to Liberty the balance due before attending EOT. Liberty will refund to you the initial or resale franchise fee (including deposit) if Liberty does not approve your application or if you do not pass Liberty's EOT in accordance with Liberty's current passing standards for EOT, provided that you return to Liberty all materials which Liberty distributed to you during EOT. Otherwise, the initial and resale franchise fee is fully earned and nonrefundable when both you and Liberty execute this Agreement.

**c. Reverse Royalty.** To the extent that Liberty receives tax preparation fees from individuals located in your Territory during such time as you have a Liberty Tax Service office open in your Territory, from the use of Liberty's online tax preparation services, Liberty agrees to use commercially reasonable means to track and identify those revenues and pay or credit to you 14% of those tax preparation fees. Liberty has up to 60 days after the end of each Tax Season to pay or credit, at Liberty's discretion, monies to you.

**d. Royalties.**

    (i)     You must pay a royalty of 14% of Gross Receipts subject to the following minimums:

        (a)  For the period ending April 30 following the Effective Date of this Agreement ("Year One"), if you operated or were required to have operated an office in the Territory for any part of Tax Season ending in that April, minimum royalty is $5,000 per Territory.

        (b)  For the period beginning May 1 following the Effective Date of this Agreement through the following April 30 ("Year Two"), minimum royalty is $8,000 per Territory.

        (c)  Thereafter ("Year Three" and beyond), minimum royalty is $11,000 per Territory, for each successive period beginning May 1 through the following April 30.

    (ii)    For a developed Territory, meaning one that contains or that had in the most recent Tax Season, an existing company, franchisee or other Liberty tax preparation office, you must pay royalties as set forth above depending upon how long any office has been operated in the Territory. For example, if an office has been operated in the Territory through one Tax Season, then that Territory would be subject to Year Two royalties for the year during which you first operate in the Territory. The term "**Tax Season**" means the time period January 2 – April 30. An office includes, but is not limited to, locations such as kiosks or temporary locations where tax return preparation services are provided.

    (iii)   If you are in or become part of an area covered by an Area Developer, Liberty may pay to the Area Developer a portion of the initial franchisee fee and royalties that you pay to Liberty.

**e. Advertising Fee.** You must pay an advertising fee of 5% of the Gross Receipts each month.

**f. Payment Period.** You must pay the royalty owed by the 5th of each month based on Gross Receipts for the preceding month, and any balance owed to achieve Minimum Royalty on May 5 for each fiscal year ending April 30. You must pay advertising fees by the 5th of each month based on Gross Receipts for the preceding month. Liberty reserves the right to modify this payment schedule in Liberty's Operations Manual.

**g. Interest.** You must pay interest of 18% (compounded daily) per year, or the maximum permitted by law, if less, on any amounts owed to Liberty that are more than fifteen (15) days past due.

**h. Transfer Fee.** If you transfer your Franchised Business, or a majority ownership interest in it, you must pay Liberty a transfer fee of $5,000 at the time of transfer. This fee is subject to increase or decrease in future franchise agreements by the amount of change in the Consumer Price Index – All Urban Consumers, published by the U.S. Department of Labor, or a reasonably similar successor index, from the index as of the Effective Date.

**i. Customer Refunds, Penalty and Interest, Send a Friend**. If you do not resolve a customer service complaint or pay penalty and interest on an erroneous return prepared in your office, or misdeliver a customer check, or fail to pay a Send a Friend or E-Send a Friend referral, and the customer contacts Liberty, if Liberty believes a reasonable basis for the complaint, payment of penalty and interest, or payment of the Send a Friend referral exists, Liberty may issue a refund of fees paid by the customer, pay to the customer the penalty and interest or amount of misdelivered check, or pay the Send a Friend referral, and bill you. You agree to pay the charges. Your obligation to pay penalty and interest for tax return preparation errors made by you continues after the expiration or termination of this Agreement or sale of the Franchised Business.

**j. Automatic payment transfer**. All of the tax preparation, transmitter, software, and electronic filing fees, and any rebates that you receive from Financial Products or customers who purchase Financial Products, shall initially be paid to Libety. From these fees and any rebates, Liberty will deduct monies that you owe to Liberty and deduct and hold monies to apply to upcoming amounts due to Liberty, and remit the balance to you.

**k. Sales or Gross Receipts Tax.** If required by the state or locality in which your Territory is located, the initial franchise fee, royalties, and advertising fees will be subject to sales or gross receipts tax, which you must pay to Liberty at the same time and in the same manner as you pay these royalties and fees to Liberty.

**l. Transmitter, Software, or Electronic Filing Fee.** Liberty reserves the right to impose a fee charged to you or customers related to transmission of Financial Products, the provision of software, or the electronic filing of tax returns and, if charged to customers, may rebate a portion of the fee to you. Liberty may vary the dollar amount of the fee and may change its name. Any such fee is not included in your Gross Receipts.

**m. Call Center.** If you elect to use Liberty's Call Center to handle customer appointments, customer follow up, Tax School calls, or other calls, you must pay to Liberty a fee for each such call pursuant to Liberty's schedule of Call Center charges which Liberty adopts from time to time.

**n. Cash in a Flash Financing Set up Fee.** If you elect to apply for Cash in a Flash financing through Liberty, you must pay to Liberty any set up fee that Liberty imposes pursuant to Liberty's schedule of fees which Liberty adopts from time to time.

**o. Assessment Related to Understatement of Revenues.** Pursuant to the Reports and Review rights and obligations specified in section 7 of this Agreement, if Liberty determines that you are underreporting Gross Receipts, you must pay to Liberty the additional royalties on the undisclosed amount, and if the excess so disclosed following a review is more than two percent (2%) of the Gross Receipts for the period in question, you must also pay the costs of the review, as determined by Liberty. If such a review is the result of your failure to maintain and/or provide records as required in section 7, you must pay all costs of the review, regardless of the result of such review. Liberty's acceptance of payments of royalties or Gross Receipts reports shall be without prejudice and shall in no case constitute a waiver of Liberty's rights to claim any delinquent royalties, or to require a review of your books of accounts and records, as provided for herein.

## 5. OBLIGATIONS OF FRANCHISOR

**a. Training.** Liberty provides for new franchisees a required five (5) day or longer EOT and a required one (1) day Hands on Training ("HOT") taught by an existing franchisee at their Liberty Tax

office. Liberty does not charge for EOT or HOT but you are responsible for all expenses you incur as a result of training, such as travel, lodging and meals.

**b. Operations Manual.** Liberty will loan you a copy of Liberty's Operations Manual ("Manual") to offer guidance in the operation of your Franchised Business.

**c. Site Selection.** Liberty provides guidance and advice to you regarding the selection of the location of your office(s). You may not sign a lease or locate an office until Liberty approves the location of your office. Liberty's approval of the location of a site is not a guarantee of success in that location or a warranty or assurance as to any aspect of the office or its location.

**d. Advertising and Marketing.** Liberty raises fees related to marketing through the advertising fees paid under Liberty's franchise agreements. Liberty will contribute advertising fees from company offices. Liberty disburses advertising fees to develop, produce, distribute and/or conduct advertising programs, marketing programs, public relations, and marketing research. Liberty spends advertising fees on a national, regional or local basis for television, electronic, radio and print advertising as Liberty determines to be appropriate. Liberty may produce advertising in-house and/or through an advertising agency. Liberty pays all costs of such activities, including a share of corporate overhead related to advertising and marketing, with advertising fees. You may also use your own advertising material, provided that Liberty first approves it for compliance with Liberty's specifications for advertising and use of Liberty's Marks.

**e. Software.** Liberty provides tax return preparation software.

**f. Tax and Technical Support.** Liberty provides reasonable telephone and/or internet support for your questions regarding federal and state individual income tax return preparation, electronic filing, and the use of software specified by Liberty. However, Liberty will not provide support on any equipment which does not meet Liberty's then current specifications or which relates to the operating system of a computer.

**g. Electronic Filing.** Liberty provides the ability to file individual federal and some state tax returns, electronically, provided that such method of filing is reasonably available from the respective taxing authority. You must have a valid Electronic Filing Identification Number ("EFIN") to take advantage of electronic filing.

**h. Financial Products.** If reasonably available and feasible (in Liberty's sole determination), Liberty will offer a refund-based loan program and/or a means for customers to obtain a quicker refund using electronic filing (collectively "Financial Products"). Your participation in Financial Products, if Liberty offers them, is subject to a mutual agreement being reached between you, Liberty and the Financial Products Provider.

**i. Operational Support.** Liberty advises you in the budgeting for and operation of your Franchised Business.

**j. Advanced and Update Training and Conference Calls.** Liberty provides and may require your attendance at Advanced Training for experienced franchisees, and provide and do require attendance by all franchisees at Update Training. Liberty may offer Advanced and Update Training at various sites which Liberty selects across the country, or Liberty may offer such training on the web or electronically. The agenda for Advanced Training varies but often focuses on improving business management skills in order to increase profitability. Liberty does not charge for Advanced or Update Training, but you are responsible for all expenses that you incur as a result of attending training, such

as travel, lodging and meals. Liberty may also require that you attend a reasonable number of toll free conference calls held from time to time to learn the latest operational and marketing tips. Such calls may either be attended live or by way of an online replay.

**k. Supply Source.** Liberty will offer for sale or locate a source for purchasing supplies, forms and equipment, from time to time, that may be necessary to conduct the Franchised Business, as reasonably determined by Liberty.

**l. Leasing.** Liberty may make arrangements to refer you to a company which offers leasing of furniture, fixtures, signs, equipment, and possibly franchise fees and working capital. The leasing program, if offered, will be financed and administered by a third party. Liberty cannot guarantee that you will be offered leasing, as the leasing company will make individual determinations.

**m. Financing.** Liberty may, in Liberty's sole discretion, provide financing for a portion of the initial franchise fee or other costs associated with the Franchised Business. The terms of such financing are subject to change. You must be in compliance with this Agreement to qualify for any such financing. Further, if Liberty provides financing to you, you agree to submit monthly financial information to Liberty, such as an income statement, balance sheet, and supporting documents, as Liberty specifies from time to time and in the formats Liberty provides.

**n. Group Discounts.** From time to time Liberty may provide you with the opportunity to participate in group purchasing programs which offer group discounts. The discounts and terms for any such opportunities will vary.

**o. Area Developers.** In those areas where Liberty presently or in the future uses an Area Developer, Liberty reserves the right to delegate some portion of the responsibility for the following duties to the Area Developer: site selection assistance, limited marketing assistance, and operating assistance. However, Area Developers do not have any authority to approve advertising or marketing material of any kind.

## 6. OBLIGATIONS OF FRANCHISEE

**a. Training.** You must attend and successfully complete Liberty's EOT and HOT before you may operate a Liberty office. Liberty may allow or require a general manager to attend on your behalf.

**b. Use of Liberty Marks.**

(i) **Liberty allows you to use Liberty's Marks**. Liberty allows you to use Liberty's Marks under which to hold out your Liberty Tax Service business to the public. You agree to exclusively use Liberty's Marks as Liberty develops them for this purpose only.

(ii) **You must obtain prior advertising approval**. You must either use pre-approved advertising templates which Liberty or Liberty's approved vendors provide, or you must obtain Liberty's prior written consent before using the Marks in any way and before using any marketing or promotional material, including internet advertising.

(iii) **No private website allowed.** You may not have a website for your Franchised Business without Liberty's prior written approval.

(iv)   **Marketing to National Companies**.  You must obtain written permission from Liberty before marketing on the premises (building and parking lot) of any national company.  National companies include, by way of example, Wal-Mart, Kmart, and Sears.

(v)   **No use of "Liberty" within a company name.**  You may not use the word "Liberty" or "Libtax" as any part of the name of a corporation, LLC or other entity.  However, "Liberty Tax Service" followed by your entity number shall be your "doing business as" name for an entity which owns this franchise, sometimes also called your "assumed name," "trading as" name, or "fictitious name."

(vi)   **No confusingly similar marks**.  You agree not to use any marks which could be confused with the Marks.

(vii)   **Liberty may update or change Liberty's Marks**.  Liberty may replace, modify or add to the Marks.  If Liberty replaces, modifies or adds additional marks, you agree to update or replace your signs, supplies, etc., to reflect the new marks, at your expense, in the time frame Liberty provides at the time of such an update.  Liberty will not change exterior signage requirements, although Liberty may change options or recommendations, more than once every four (4) years, at the most, absent a legal requirement to do so.

c.  **Signs.**  You must display an exterior lighted sign as approved by Liberty at each of your offices.  Liberty must approve all your signs before you order or display them.

d.  **Starting Date.**  For an undeveloped Territory, meaning one that has not contained or had in the most recent Tax Season, an existing company, franchisee or other Liberty tax preparation office, you agree to begin operation and be open for business no later than the January 8 following the Effective Date of this Agreement and agree to be open for business no later than the January 2 for each year thereafter.  For a developed Territory, meaning one that contains or that had in the most recent Tax Season, an existing company, franchisee or other Liberty tax preparation office, you agree to begin operations and be open for business no later than the January 2 following the Effective Date of this Agreement and for every year thereafter.

e.  **Operating Hours.**  You agree to exercise your best efforts to promote the Franchised Business and agree, at a minimum, to be open for business during the hours that Liberty specifies from time to time in the Operations Manual.

f.  **Target Volume.**  You must use your best efforts to promote the Franchised Business. Beginning in your fifth (5th) Tax Season and during each Tax Season after your fifth (5th) Tax Season, you must prepare at least 1000 federal income tax returns in your Territory (the "Target Volume").

g.  **Software.**  You must use the software that Liberty provides.  You may not use or have installed on computers used in the Franchised Business any other federal or state personal income tax return preparation or electronic filing software without Liberty's prior written consent.

h.  **Telephone Number and Email Account.**  You must obtain and maintain a Liberty Tax Service telephone number, used solely to transact the Franchised Business, and must maintain a white and yellow page telephone number listing, and may be required to purchase a yellow page advertisement and/or contribute to a group listing or advertisement per Liberty's recommendations. You must provide for and maintain an email account sufficient for communications between you and Liberty.

**i.  Equipment.** You must obtain and use a computer system which meets Liberty's then current specifications. All work stations, including tax return preparation and processing computers, must be purchased from Liberty's approved vendor and must also meet Liberty's then current specifications. Liberty may update the specifications. When the specifications are updated, you must update or upgrade the computer system, at your sole cost, to meet Liberty's then-current standards and specifications. Specifications will not be updated during a Tax Season except upon an emergency, as reasonably determined by Liberty.

**j.  Insurance.** During the term of this Agreement, you must procure and maintain an insurance policy or policies with at least the following coverage, or such other coverage as may be specified in the Operations Manual:

| | |
|---|---|
| Comprehensive General Liability | $1 million per office |
| Worker's Compensation | as required by your state law |

You must name Liberty as an additional insured on these policies.

**k.  Electronic Filing.** If Liberty provides or recommends a source for electronically filing tax returns, you are required to offer Electronic Filing and to use this source exclusively for all electronic filing.

**l.  Financial Products.** In the event that Liberty negotiates an agreement with a third party Provider to allow you to offer Financial Products, you are required to exclusively use such Providers as Liberty designates and to offer Financial Products to your customers.

**m. Operations Manual.** You acknowledge the importance of consistency of quality, service and operation among all Liberty Tax franchised offices and, therefore, agree to operate the Franchised Business in conformity with all standards to be maintained, techniques and operating procedures as Liberty may from time to time prescribe in Liberty's manuals or otherwise in writing, and to refrain from deviating therefrom without Liberty's prior written consent. Liberty will loan you a copy of the Manual and provide you with other relevant manuals. Liberty may modify the Manual or any other manual, in order to adjust for competitive changes, technological advancements, legal requirements and attempts to improve in the marketplace. You agree to operate the Franchised Business according to the then current manuals including, but not limited to, the Operating Manual, as may be updated or supplemented by memoranda, bulletin, email or other similar mechanism that together with the Operating Manual, contain the mandatory and suggested procedures and specifications that are prescribed for the Franchised Business.

**n.  Participation.** You agree that the services of the Franchised Business will be provided under your direct supervision and control and/or under the direct supervision and control of a full-time general manager who has been approved by, and not later disapproved by Liberty. Liberty will not approve a general manager prior to their successful completion of EOT.

**o.  Return Check.** You must prepare each income tax return accurately and in accordance with federal, state and local laws. You must check each return thoroughly.

**p.  Tax School.**

(i) If you complete EOT before September 1 of the year of the Effective Date of this Agreement, and in any event during every year after your first (1st)Tax Season, you must conduct an

intensive 6 to 10 week tax course in the period of September through December in accordance with the specifications in the Manual.

(ii) You must also conduct a one-week tax course during every January, including the January of your first (1st) Tax Season, in accordance with the specifications in the Manual.

**q.  Employee Training.**  You shall conduct and require each of your employees to attend an employee policy and procedure training course as specified by Liberty.  You are solely responsible for hiring, firing, compensating, paying applicable payroll taxes and day to day supervision and control over your employees.

**r.  Customer Service.**  You shall employ and train sufficient personnel to accommodate all customers without undue delay.  You shall provide all services and abide by all customer service policies described in the Manual, including, but not limited to, the money back guarantee.  You must operate in a manner that protects the goodwill, reputation and Marks of the Franchised Business.

**s.  Office Condition.**  You shall maintain offices that are neat and professional in appearance. Further, you may not offer products or services through your Liberty offices other than the franchise services authorized here (i.e., tax preparation, electronic filing, and Financial Products, all processed and reported through Liberty's systems) without Liberty's prior written approval.

**t.  Supplies and Furniture.**  You agree that in order to establish a standard and consistent delivery of Liberty Tax services, certain items must be used in the operation of the Franchised Business.  You must use the items set forth as required in the Manual (e.g., client envelopes and folders, interview worksheets, interior sign sets).  You are responsible for the cost of all supplies, furniture, equipment, leasing and real estate costs, and other items needed to conduct the Franchised Business.

**u. Laws and Regulations.**  You agree to comply with all federal, state and local laws and regulations. You will secure all necessary permits, certificates, licenses and consents to operate your business.

**v.  IRS Audit.**  If the IRS audits your Liberty Tax operations, or investigates or otherwise requires the provision to the IRS of documents related to the Franchised Business, you agree to notify Liberty promptly upon receiving notice of the audit or investigation or request for documents, and share the IRS findings with Liberty.

**w.  EFIN.**  You must obtain by January 2 of your first Tax Season and maintain throughout the entire term of this Agreement, an EFIN from the IRS.  You hereby authorize the IRS and any state tax authority to disclose to Liberty the reasons for any EFIN denial or suspension and to provide Liberty with copies of all EFIN application materials, suspension and denial notices.

## 7. REPORTS AND REVIEW

**a.  Gross Receipt Report.**  You must send Liberty a Gross Receipt report in the manner and form and at the times Liberty specifies.  Presently, you must report your Gross Receipts on the 5th of the month for Gross Receipts received during the prior month.

**b.  Profit and Loss.**  By May 30 of each year, you must send Liberty an unaudited profit and loss statement of the Franchised Business, in the manner and form Liberty specifies, for the twelve (12) month period ending April 30.

**c.  Review.**  You agree to permit Liberty and/or Liberty's agents the right to enter your Liberty Tax offices during normal business hours, without prior notice, and inspect your operations and inspect and copy all of your paper and electronic business records related to the Franchised Business and any other operations taking place at your Franchised Business.  This includes, but is not limited to, the right to inspect and copy all tax returns and bank statements which may be indicative of revenues from the Franchised Business.  Liberty also has the right to require that you implement a plan to resolve issues that Liberty discerns from any review Liberty conducts.

**d.  Mail Reviews.**  If Liberty requests a copy of your customer receipts (paper and/or electronic) or any other business records, including, but not limited to customer taxpayer records related to the Franchised Business, you must send Liberty, at your expense, these records within five (5) days of receiving Liberty's request.

**e.  Electronic Review.**  Liberty may cause programs to run on your computer systems that may send information to Liberty.  Liberty agrees that the use of such programs will not unreasonably interfere with your operation of the Franchised Business and you agree to allow such programs to run without interference by you.  You hereby grant Liberty the right to access the computer systems in your office and authorize Liberty to obtain any and all information related to the Franchised Business. You acknowledge that Liberty will use information obtained from your computer system to make business decisions.

**f.  Background Information.**  You authorize Liberty to obtain background information relating to your employment, credit and financial history and criminal and driving records during the term of this Agreement.

## 8. TERMINATION

**a.**  You may terminate this Agreement by not renewing; that is by not notifying Liberty in writing of your desire to renew at least one hundred eighty (180) days prior to the expiration of this Agreement.  If you terminate pursuant to this paragraph, you must still comply with all of the post termination provisions of this Agreement.

**b.**  Liberty may terminate this Agreement without notice and the opportunity to cure for any of the following reasons:

(i)  If you become insolvent, are unable to pay debts as they come due or take any steps to seek protection from creditors, or if a receiver (permanent or temporary) is appointed by a creditor or a court of competent authority or if you make a general assignment for the benefit of creditors;

(ii)  If a final judgment of record against you or your Franchised Business remains unsatisfied for thirty (30) days or longer;

(iii)  If you commit a financial crime, a crime of moral turpitude, a crime that is injurious to the Franchise, or a violation of any law, ordinance, rule or regulation of a governmental agency or department reasonably associated with the operation of the Franchised Business that Liberty deems to be material, or if you commit any act, whether or not associated with the Franchised Business, that in Liberty's opinion, may injure the goodwill, reputation and/or Marks of the Franchise;

(iv)   If you abandon the Franchised Business or discontinue the active operation of the Franchised Business for three (3) business days during any Tax Season or seven (7) business days otherwise, except this ground for termination may not be invoked when active operation is not reasonably possible, such as when severe weather is present;

(v)    If you fail to open for business in the Territory by January 2 or January 8, as specified pursuant to paragraph 6.d., of any year;

(vi)   If you operate any offices or advertise outside the Territory without Liberty's permission;

(vii)  If you fail to meet the Target Volume specified in paragraph 6.f. above in the Territory during your fifth (5th) Tax Season or in any Tax Season thereafter;

(viii) If you fail to use the software, electronic filing services or Financial Products Liberty provides or recommends;

(ix)   If you do not obtain an EFIN from the IRS for each office in the Territory by January 2 of your first Tax Season or if any of such EFINs are suspended for any reason at any time thereafter;

(x)    If you include a materially false representation or omission of fact in your Confidential Franchise Application to Liberty or if you under-report Gross Receipts, falsify financial data, make a false submission with regard to any required reports or otherwise commit an act of fraud with respect to your acquisition or operation of the Franchised Business or your rights or obligations under this Agreement;

(xi)   If you commit three (3) or more breaches of this Agreement, the Operations Manual, or any other agreement (including promissory notes) with Liberty, in any twelve (12) month period regardless of whether such breaches were cured after notice; or

(xii)  If you fail to notify Liberty of your desire to renew within the time and manner provided for in section 2 of this Agreement.

c.   No fewer than seven (7) days after Liberty has sent you notice of your opportunity to cure, Liberty may terminate this Agreement if:

(i)    You violate any other term or condition of this Agreement, the Operations Manual, or any other agreement with Liberty;

(ii)   Any amount owing to Liberty, whether related to the Territory or not, is more than thirty (30) days past due;

(iii)  You fail to comply with IRS standards applicable to e-file providers as stated in IRS Publication 1345 or another or successor IRS publication applicable to e-file providers; or

(iv)   You are more than sixty (60) days in default of any loan, lease or sublease agreement with a third party, affecting the Franchised Business.

## 9. POST-TERMINATION OBLIGATIONS

If this Agreement expires, is not renewed or is terminated for any reason by any party, including a sale of the Franchised Business, you must immediately:

**a.** Sell to Liberty (if Liberty elects pursuant to section 11) any or all equipment, signs, trade fixtures, and furnishings used in the Franchised Business, or if Liberty does not so elect, remove all Marks or other distinguishing indicia from all of your offices and other premises; and

**b.** Stop identifying yourself as a Liberty Tax franchisee, never hold out as a former Liberty Tax franchisee and cease, and not thereafter commence, use of any of the Marks or any marks which are likely to be confused with the Marks; and

**c.** Stop using all literature and forms received from Liberty and other items bearing the Marks; and

**d.** Pay to Liberty all amounts owing to Liberty, whether related to the Territory or not; and

**e.** Transfer to Liberty all telephone numbers, listings and advertisements used in relation to the Franchised Business and deliver to Liberty copies of such documents of transfer; and

**f.** Assign to Liberty (if Liberty elects), and upon lessor's consent, any interest that you have in any lease, sublease or any other agreement related to the Franchised Business; and

**g.** Deliver to Liberty any original and all copies, including electronic copies and media, of lists and other sources of information containing the names, addresses, e-mail addresses, or phone numbers of customers who patronized the Franchised Business; and

**h.** Deliver to Liberty any original and all copies, including electronic copies and media, containing customer tax returns, files, and records; and

**i.** Deliver to Liberty the copy of the Operations Manual and any updates which Liberty loaned to you; and

**j.** Cancel all fictitious name listings which you have filed that utilize any of the Marks; and

**k.** Adhere to the provisions of the post-term covenants not to compete and not to solicit and any other covenant herein that requires performance by you after you are no longer a franchisee.

## 10. ADDITIONAL IN-TERM AND POST-TERM COVENANTS

**a. In-Term Covenant Not to Compete.** During the term of this Agreement, you agree not to directly or indirectly, for a fee or charge, in the United States or Canada, prepare or electronically file income tax returns, or offer Financial Products, except in your capacity as a Liberty Tax Service franchisee using the Liberty Tax Service system to offer such products and services.

**b. Post-Term Covenant Not to Compete.** For a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchised Business, or your removal as a Signator to this Agreement, you agree not to directly or indirectly, for a fee or charge, prepare or electronically file income tax returns, or offer Financial Products, within the Territory or within twenty-five (25) miles of the boundaries of the Territory.

**c. Liquidated Monetary Damages.** If you fail to comply with either of the above covenants not to compete, you agree to pay Liberty, with respect to each Territory for which you are in breach, as partial liquidated monetary damages, royalties and advertising fees as set forth in paragraph 4 of this Agreement against the greater of (1) your Gross Receipts in each Territory in which you are in breach during your last fiscal year (May 1- April 30) of operation as a Liberty franchisee in that Territory; or (2) your revenue received in breach of a covenant not to compete.  In either event, you agree that this dollar figure shall be multiplied by two (2) to give consideration to lost, repeat, and referral business to Liberty. The parties further acknowledge that the full measure of damages to Liberty is greater, as such a breach causes Liberty damage to the integrity of Liberty's franchised system, loss of franchisee and customer goodwill and irreparable harm.

**d. Covenant Not to Solicit.** You agree that for a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchised Business, or your removal as a Signator to this Agreement, you will not within the Territory or within twenty-five (25) miles of the boundaries of the Territory, directly or indirectly, solicit the patronage of any person or entity served by any of your prior Liberty offices in the last twelve (12) months that you were a Liberty franchisee, or such shorter time as you were a Liberty franchisee, for the purpose of offering such person or entity, for a fee or charge, income tax preparation, electronic filing of tax returns, or Financial Products. You further agree for a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchised Business, or your removal as a Signator to this Agreement, not to employ or solicit for employment any of Liberty's employees or those of any other of Liberty's franchisees, or induce any such employee to leave his or her employ, without Liberty's prior written consent.

**e. Covenant Not to Lease.** You agree that during the term of this Agreement, you will not lease, sub-lease, assign or guaranty a lease in the Territory to or for a person or entity who will offer income tax preparation at such an office.  You also agree that upon the termination or expiration of this Agreement, if Liberty or a duly authorized Liberty franchisee desires to use any of your former Liberty office locations in the Territory ("Leases"), you will use reasonable good faith efforts to help Liberty secure possession of the Leases through a lease assignment or otherwise.  Otherwise, you agree to use reasonable, good faith efforts to ensure that, for a twenty-four (24) month period after non-renewal or termination of this Agreement, no person or entity will offer income tax preparation at the properties where your former Liberty offices were located.  Such "good faith efforts" include a duty not to sub-lease or assign the Leases to a person or entity who will offer income tax preparation at such Leases.

**f.** You agree not to disparage Liberty or its current and former employees or directors.  During the term of this Agreement, you also agree not to do any act harmful, prejudicial or injurious to Liberty.

**g.** You hereby acknowledge that the qualifications to be a Liberty franchisee are special, unique and extraordinary, and that this Agreement would not be entered into by Liberty except upon condition that the covenants contained in this section 10 be embodied herein.

**h.** You acknowledge and agree that the provisions of this section 10 are reasonable, valid and not contrary to the public interest and you waive all defenses to the strict enforcement thereof.  You further agree that Liberty is entitled to a temporary restraining order, preliminary and permanent injunction for any breach of duties under any of the non-monetary obligations of paragraph 9 above or of this Paragraph 10 and that such an order or injunctions shall issue without the posting of any bond by Liberty.

**i.** All of the covenants contained in this section 10 shall survive any termination or expiration of this Agreement.

**j.** If any covenant or provision within this section 10 is determined to be void or unenforceable, in whole or in part, it shall be deemed severed and removed from this Agreement and shall not affect or impair the validity of any other covenant or provision of this Agreement. Further, these obligations are considered independent of any other provision in this Agreement, and the existence of any claim or cause of action by either party to this Agreement against the other, whether based upon this Agreement or otherwise, shall not constitute a defense to the enforcement of these obligations.

## 11.  OPTION TO PURCHASE ASSETS

Upon termination or expiration of this Agreement, you hereby grant Liberty or its assignee the option, exercisable by transmitting notice thereof within thirty (30) days from the effective date of expiration or termination, to purchase from you some or all of the assets (including supplies, equipment, signs, furnishings and fixtures) of the Franchised Business. The purchase price for the assets of the Franchised Business, if Liberty elects to purchase them, will be the "adjusted book value" as determined below provided, however, that Liberty will have the right to set off against and reduce the purchase price by any and all amounts owed by you to Liberty or any of Liberty's affiliates:  The "adjusted book value" consists of the book value of the assets of the Franchised Business as disclosed by the balance sheet in the financial statements of the Franchised Business as of the date of the termination or expiration; provided, however, that there shall be no allocation for goodwill or any similar adjustment.

## 12.  CONFIDENTIAL INFORMATION

**a.  Disclosure.**    Liberty possesses confidential information consisting of methods of operation, service and other methods, techniques, formats, specifications, procedures, information, systems, knowledge of and experience in operating and franchising offices, customer information and marketing information (the "Confidential Information").  Liberty will disclose some or all of the Confidential Information to you and your representatives in the Operations Manual and other training manuals Liberty provides, in Liberty's training programs, and in providing guidance and assistance pursuant to this Agreement. During the term of this Agreement and following the expiration or termination of this Agreement, you covenant not to communicate, directly or indirectly, or to divulge to or use for its benefit or the benefit of any other person or legal entity, any Confidential Information, except as Liberty permits in writing.  Upon the expiration, termination or nonrenewal of this Agreement, you agree that you will never use or disclose, and will not permit any of your representatives to use or disclose, Liberty's Confidential Information in any manner whatsoever, including, without limitation, in the design, development or operation of any business substantially similar to the Franchised Business.  Notwithstanding the foregoing, the obligations in this paragraph will not apply to information: (a) that at the time of disclosure is readily available to the public; (b) that after disclosure becomes readily available to the trade or public other than through breach of this Agreement; (c) that is subsequently lawfully and in good faith obtained by you from an independent third party without breach of this Agreement; (d) that was in your possession prior to the date of disclosure; or (e) which is disclosed to others in accordance with the terms of a prior written authorization between us.  The protections granted hereunder shall be in addition to and not in lieu of all other protections for such Confidential Information that may otherwise be afforded by law or in equity.

**b.  Interest.**  You will acquire no interest in the Confidential Information other than the right to use it in developing and operating the Franchised Business pursuant to this Agreement.  You acknowledge that it would be an unfair method of competition to use or duplicate any Confidential Information other than in connection with the operation of the Franchised Business.  No part of the Liberty Tax franchise system nor any document or exhibit forming any part thereof shall be

distributed, utilized or reproduced in any form or by any means, without Liberty's prior written consent.

    **c. Use.** You agree that you will (a) not use the Confidential Information for any purpose other than the operation of the Franchised Business pursuant to this Agreement; (b) maintain absolute confidentiality of the Confidential Information during and after the term of this Agreement; (c) not make unauthorized copies of any portion of the Confidential Information disclosed in written form; and (d) adopt and implement all reasonable procedures, including, but not limited to, those Liberty prescribes from time to time, to prevent unauthorized use of or disclosure of the Confidential Information, including, without limitation, restrictions on disclosure to your employees and the use of nondisclosure and non-competition clauses in employment agreements with employees who have access to the Confidential Information.

## 13. INDEPENDENT CONTRACTOR

You and Liberty are independent contractors to each other. Neither you nor Liberty are an agent, fiduciary, partner, employee, or a participant in a joint venture and neither you nor Liberty have the authority to hold out as such to third parties. You do not have any authority to bind or obligate Liberty. Liberty is not and will not be liable for any act, omission, debt, or other obligation of yours.

You are responsible for all loss or damage and for all contractual liability to third parties originating in or in connection with the operation of the Franchised Business and for all claims or demands for damage directly or indirectly related thereto. You agree to defend, indemnify and hold harmless Liberty and its employees of and from and with respect to any such claim, loss or damage.

## 14. DEATH OR INCAPACITY

In the event of the death or incapacity of Franchisee, Liberty is entitled, but not required, to render whatever assistance is required to maintain smooth and continued operation of the Franchised Business. Liberty shall be entitled to reimbursement from Franchisee or Franchisee's estate for any reasonable expenditure thus incurred. Death or incapacity shall not of itself be grounds for termination of this Agreement unless either:

    **a.** Franchisee or his/her legal representative fails for a period of one hundred eighty (180) days after such death or incapacity to commence action to assign this Agreement according to controlling state law regarding the affairs of a deceased or incapacitated person and the terms of this Agreement; or,

    **b.** Such assignment is not completed within one (1) year after death or incapacity.

If such action or assignment is not timely taken or made as aforesaid, Liberty shall have the right to terminate this Agreement. Further, the terms and conditions of section 15 below apply to a transfer upon death or incapacity.

## 15. ASSIGNABILITY

Liberty may assign this Agreement to an assignee who agrees to remain bound by its terms. Liberty does not permit a sub-license of the Franchise. Your interest under this Agreement or your ownership in the Franchise may be transferred or assigned only if you comply with the following provisions. No interest may be transferred unless and until you are in full compliance with this Agreement and current in all monies owed to Liberty. Pursuant to Liberty's request, any transfer of an ownership interest in

this Agreement must be joined in by all signatories to this Agreement, except any person who is deceased or under a legal disability.

**a.** If you have received and desire to accept a signed, bona fide offer to purchase or otherwise transfer the Franchise or any interest in the Franchisee, you shall grant Liberty the option (the "Right of First Refusal") to purchase such Franchise or interest as hereinafter provided.

**b.** A transfer to a "Controlled Entity" shall not trigger the Right of First Refusal. A "Controlled Entity" is an entity in which Franchisee is the beneficial owner of 100% of each class of voting ownership interest. At the time of the desired transfer of interest to a Controlled Entity, you must notify Liberty in writing of the name of the Controlled Entity and the name and address of each officer, director, shareholder, member, partner, or similar person and their respective ownership interest. Each such person of the Controlled Entity shall sign the then current amendment and release forms and/or franchise agreement as required by Liberty. Liberty does not charge a transfer fee for this change.

**c.** A transfer of interest within a Franchisee which is an entity shall not trigger the Right of First Refusal provided that only the percentage ownership, rather than the identity of the owners, is changing. At the time of the desired transfer of interest within an entity, you must notify Liberty in writing of the name and address of each officer, director, shareholder, member, partner or similar person and their respective ownership interest. Each such person of the Controlled Entity shall sign the then current amendment and release forms and/or franchise agreement as required by Liberty. Further, if the transfer of interest results in a majority ownership change, you must pay to Liberty the transfer fee set forth in paragraph 4.h. above.

**d.** You shall offer the Right of First Refusal to Liberty by notice in writing, including a copy of the signed offer to purchase which you received ("Notice"). Liberty shall have the right to purchase the Franchise or interest in the Franchise at and for the price and upon the terms set out in the Notice, except that Liberty may substitute cash for any non-cash form of payment proposed and Liberty shall have sixty (60) days after the exercise of Liberty's Right of First Refusal to close the purchase. Should Liberty wish to exercise Liberty's Right of First Refusal, Liberty will notify you in writing within fifteen (15) days from its receipt of the Notice. Upon the giving of such notice by Liberty, there shall immediately arise between Liberty and Franchisee, or its owners, a binding contract of purchase and sale at the price and upon the terms contained in the Notice.

**e.** If Liberty does not exercise Liberty's Right of First Refusal, you may transfer the Franchise or ownership interest therein according to the terms set forth in the Notice, provided that you satisfy the conditions of paragraph 15.f. through (i) below and complete the sale within ninety (90) days from the day on which Liberty received the Notice. If you do not conclude the proposed sale transaction within the ninety (90) day period, the Right of First Refusal granted to Liberty hereunder shall continue in full force and effect.

**f.** The proposed transferee(s) must complete Liberty's then current Liberty franchise application and pass Liberty's application screening using Liberty's then current qualifications.

**g.** The proposed transferee(s) must sign the then current Liberty amendment forms and/or franchise agreement, as required by Liberty, and must personally assume and be bound by all of the terms, covenants and conditions therein.

**h.** The proposed transferee(s) must attend and successfully complete EOT and HOT.

**i.** You shall sign Liberty's then current transfer and release forms and pay to Liberty the transfer fee described in paragraph 4.h. above.

**j.** Except as to approved transfers within the Liberty system as described above, you may not give, transfer or sell all or substantially all of the assets of your Franchised Business during the term of this Agreement, or for a two (2) year period after its expiration or termination, to a person or entity who might be reasonably expected to use any such assets to offer income tax preparation in the Territory or within ten (10) miles of the boundaries of the Territory.

## 16. NON-WAIVER OF BREACH

The failure of either party hereto to enforce any one or more of the terms or conditions of this Agreement shall not be deemed a waiver of such terms or conditions or of either party's rights thereafter to enforce each and every term and condition of this Agreement.

## 17. GOVERNING LAW

**a. Virginia Law.** This Agreement is effective upon its acceptance in Virginia by Liberty's authorized officer. Virginia law governs all claims which in any way relate to or arise out of this Agreement or any of the dealings of the parties hereto. However, the Virginia Retail Franchising Act does not apply to any claims by or on your behalf if the Territory shown on Schedule A below is outside Virginia.

**b. Jurisdiction and Venue.** In any suit brought by Liberty, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, you consent to venue and personal jurisdiction in the state and federal court of the city or county of Liberty's National Office, presently Virginia Beach state courts and the United States District Court in Norfolk, Virginia. In any suit brought against Liberty, including Liberty's present or former employees or agents, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, venue shall be proper only in the federal court district and division located nearest Liberty's National Office (presently the U.S. District Court in Norfolk, Virginia), or if neither federal subject matter nor diversity jurisdiction exists, in the city or county state court located where Liberty's National Office is (presently the City of Virginia Beach, Virginia).

**c. Jury Waiver.** In any trial between any of the parties hereto, including present or former employees or agents of Liberty's, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, you and Liberty agree to waive the rights to a jury trial and instead have such action tried by a judge.

**d. Class Action Waiver.** You agree that any claim you may have against Liberty, including Liberty's past or present employees or agents, shall be brought individually and you shall not join such claim with claims of any other person or entity or bring, join or participate in a class action against Liberty.

**e. Compensatory Damages.** In any lawsuit, dispute or claim between or against any of the parties hereto, including present or former agents or employees of Liberty's, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, you and Liberty agree to waive the rights, if any, to seek or recover punitive damages.

**f. Area Developers.** If your Territory is or becomes located in an Area Developer area, you agree not to bring any claim, including a lawsuit, against the Area Developer, or its owners, employees or

independent contractors, except as to a claim unrelated to the Liberty franchise, such as an automobile accident.  Area Developers are a third party beneficiary of this clause.  Further, you agree that if you breach this clause, you will pay to Liberty and/or the Area Developer all attorney fees and other costs that Liberty and the Area Developer incur to defend the Area Developer in such an action, regardless of who prevails.

    **g. Survival.**  Any provisions of this Agreement which, by their nature, extend beyond the expiration or termination of this Agreement, shall survive termination or expiration and be fully binding and enforceable as though such termination or expiration had not occurred.

## 18. MODIFICATION

No modifications to this Agreement will have any effect unless such modification is in writing and signed by you and by Liberty's authorized officer.  However, Liberty may modify the provisions of the Manual or manuals, without your consent, as discussed in paragraph 6.m. above.

## 19. RELEASE OF PRIOR CLAIMS

By executing this Agreement, the undersigned entity, if any, and individuals, on behalf of yourselves and your heirs, legal representatives, successors and assigns, and each assignee of this Agreement, hereby forever release and discharge Liberty, its past and present employees, agents, area developers, officers and directors, including Liberty's parent, subsidiary and affiliated corporations, their respective past and present employees, agents, officers and directors, from any and all claims relating to or arising out of any franchise agreement between the parties executed prior to the date of this Agreement, and all other claims relating to any dealings between any of the parties.  However, this release does not apply to Liberty's renewal obligations the same or similar to those in paragraph 2.b. above, as contained in any prior or other franchise agreement.

## 20. NOTICES

You shall give any notice or request hereunder by mail or courier, postage fully prepaid, delivered personally, or by facsimile, to Liberty's CEO, at Liberty's National Office, presently 1716 Corporate Landing Parkway, Virginia Beach, VA  23454.  Telephone:  (757) 493-8855 Fax:  (800) 880-6432.  Liberty may also give any such notice to you in the same manner at the address indicated below the Franchisee's signature on this Agreement, or such other more current address as Liberty may have for you.  Liberty may also give notice to you by e-mail.

## 21. FULL UNDERSTANDING

This Agreement is the entire agreement between you and Liberty. This Agreement supersedes all other prior oral and written agreements and understandings between you and Liberty with respect to the subject matter herein.  Nothing in this or in any related agreement, however, is intended to disclaim the representations Liberty made in the franchise disclosure document Liberty furnished to you.

## 22. ACKNOWLEDGMENTS

You acknowledge that you have read Liberty's franchise disclosure document and this Agreement and that you are familiar with their contents.  You acknowledge that you have independently investigated the business offered hereunder and base your decision to purchase solely on such investigation.  Except as may be stated in Item 19 of Liberty's Franchise Disclosure Document, you acknowledge that no person is authorized to make and no person has made any representations to you as to the actual,

projected or potential sales, volumes, revenues, profits or success of any Liberty Tax franchise.  You further acknowledge and agree that you are not a third party beneficiary to any agreement between Liberty and any other franchisee.

## 23.  GUARANTY

The Franchisee named at the top of the following page agrees to abide by the terms of this Agreement.  The signature of an individual or individuals constitutes their personal agreement to such terms.  The signature of an individual or individuals on behalf of an entity constitutes the entity's agreement to such terms.

In addition, the signatures of all individuals on the following page, in any capacity, also constitute their personal joint and several agreement to perform all the obligations in and relating to this Agreement, including, but not limited to, the obligations stated in **section 17 above concerning Governing Law, including but not limited to, the application of Virginia Law, the Jurisdiction and Venue clause, the Jury Waiver, the Class Action Waiver, and the limitation to Compensatory Damages only,** the obligation to make payments specified herein, pay any other promissory notes and other debts due to Liberty, and pay for products later ordered from Liberty.  All Signators on the following page waive any right to presentment, demand or notice of non-performance and the right to require Liberty to proceed against the other Signators.

## 24.  COUNTERPARTS

This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, but such counterparts shall constitute one and the same instrument.

**Franchisee: <u>Nora Garcia & Maribel Gorosave</u>**          **Entity Number: <u>5205</u>**

**SIGNATORS:**

By: _Nora Garcia_ 
    (Signature)

By: _Maribel Gorosave_ 
    (Signature)

_____Nora Garcia_____ 
    (Printed Name)

_____Maribel Gorosave_____ 
    (Printed Name)

Title:_____

Title:_____

Address: 1943 Annandale Way 
Pomona CA 91767

Address: 937 Lee Ave 
Calexico, CA 92231

Ownership Percentage: 1 %

Ownership Percentage: 99 %

By:_____ 
    (Signature)

By:_____ 
    (Signature)

_____ 
    (Printed Name)

_____ 
    (Printed Name)

Title:_____

Title:_____

Address:_____

Address:_____

_____

_____

Ownership Percentage:_____%

Ownership Percentage:_____%

**JTH TAX, INC. d/b/a 
LIBERTY TAX SERVICE**

By:_____ 
John Hewitt, CEO or Rufe Vanderpool, COO

Effective Date:_____5/1/13_____

## SCHEDULE "A" TO THE FRANCHISE AGREEMENT

### Territory

The Franchise Territory* is as follows:

CA375

NORTH of and including I-8 from SR-111 to Forrester Rd.
EAST of and including Forrester Rd from I-8 to W Keystone Rd
SOUTH of and excluding W Keystone Rd continuing onto SOUTH of and excluding
E Keystone Rd from Forrester Rd to SR-111.
WEST of and excluding SR-111 from E Keystone Rd to I-8.



*Note: When a Territory description includes a road, avenue, street, parkway, highway, route or similar roadway, the Territory includes the U.S. Postal addresses assigned to either side of the roadway.  When a Territory description excludes a road, avenue, street, parkway, highway, route or similar roadway, the Territory excludes the U.S. Postal addresses assigned to either side of such roadway.  If a map of the Territory is attached, the map approximates the Territory, but the above legal description controls as to the Territory's precise boundaries.

## CALIFORNIA RENEWAL AND SPECIFIC RELEASE

**Franchisee Name: <u>Nora Garcia & Maribel Gorosave</u>**          **Entity No.: <u>5205</u>**

1. <u>Release</u>- Franchisee and all of Franchisee's guarantors, members, employees, agents, successors, assigns and affiliates fully and finally release and forever discharge JTH Tax, Inc. d/b/a Liberty Tax Service, its past and present agents, employees, officers, directors, area developers, successors, assigns and affiliates (collectively "Liberty Released Parties") from any and all claims, actions, causes of action, contractual rights, demands, damages, costs, loss of services, expenses and compensation which Franchisee could assert against the Liberty Released Parties or any of them up through and including the date of this Renewal and Release.

2. <u>Unknown or Unsuspected Consequences</u>- The parties understand and acknowledge that Sections 1 of this Renewal and Specific Release apply to and included all unknown or unsuspected consequences or results arising from or relating to the transactions, occurrences, or agreements referred to in those Sections.  You represent and warrant that you have read the contents of California Civil Code §1542, which provides as follows:

   "A general release does not extent to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

   YOU EXPRESSLY WAIVE ANY AND ALL RIGHTS AND BENEFITS UNDER CALIFORNIA CIVIL CODE §1542

3. <u>Nature of Release</u>-  Each party acknowledges that it has read this Renewal and Specific Release, that it fully understands the contents of this Renewal and Specific Release, and that THIS IS A SPECIFIC RELEASE GIVING UP ALL RIGHTS WITH RESPECT TO THE TRANSACTIONS OR OCCURRENCES THAT ARE BEING RELEASED UNDER THIS AGREEMENT.

4. The above Release shall not apply to any liabilities arising under the California Franchise Investment Law or the California Franchise Relations Act.

5. <u>Royalty and Advertising Fee Guarantee</u>-  In the event that any franchise agreement which we enter into with you to continue your rights to a franchise territory contain higher royalty or advertising fees than in your original franchise agreement with us for that territory, the royalty and advertising fees in your original franchise agreement shall control.

### SIGNATURES ON THE FOLLOWING PAGE

**Franchisee:   Nora Garcia &
Maribel Gorosave**

By: _Nora Garcia_____

Printed Name:_Nora Garcia_____

Title:_____

By:_ Maribel Gorosave_____

Printed Name:_Maribel Gorosave_____

Title:_____

**JTH Tax, Inc. d/b/a Liberty Tax Service**

By:_____
John Hewitt, CEO or Rufe Vanderpool, COO

Date:_____5/1/13_____

**EXHIBIT K**
**RECEIPT**

This disclosure document summarizes certain provisions of the franchise agreement and other information in plain language. Read this disclosure document and all agreements carefully.

If JTH Tax, Inc. d/b/a Liberty Tax Service offers you a franchise, we must provide this disclosure document to you at least 14 days before you sign a binding agreement or make a payment to us in connection with the proposed franchise sale or grant.

Rhode Island requires that we give you this Disclosure Document at the earlier of the first personal meeting or 10 business days before the execution of the franchise or other agreement or the payment of any consideration that relates to the franchise relationship.

Michigan and Washington require that we give you this Disclosure Document at least 10 business days before the execution of any binding franchise or other agreement or the payment of any consideration, whichever occurs first.

If we do not deliver this disclosure document on time or if it contains a false or misleading statement, or a material omission, a violation of federal law and State law may have occurred and should be reported to the Federal Trade Commission, Washington, D.C. 20580 and the state agency listed on Exhibit F.

Date of Issuance: February 15, 2013

See Exhibit F for our registered agents authorized to receive service of process.

If a Franchise Broker was involved in this sale, the name, principal business address and telephone number of the Broker follows:

Name of Broker:_____

Broker Telephone Number:_____

Broker Principal Business Address:_____

I have received a disclosure document dated 2-13 that included the following Exhibits:

A.  State Disclosure Document Addenda (CA, HI, IL, IN, MD, MI, MN, NY, ND, SD, VA)
B.  Franchise Agreement and State Franchise Agreement Addenda (IL, IN, MD, MN, ND, RI, SD, VA, WA, WI)
C.  Promissory Notes
D-1. JTH Financial, LLC Program Services Agreement and SBBT Financial Services Agreements
D-2. Libtax Software License Agreement
D-3. Walmart Kiosk  Stipulation and Agreement, K-Mart, Ace, and Sears Management Commitment Forms
D-4. Renewal & Release forms
D-5. Confidentiality Agreement
D-6. Franchisee Card Program Agreement
E.  Purchase and Sale Agreements
F.  List of State Administrators and Registered Agents

G. List of Current Franchisees and List of Franchisees Who Had an Outlet Terminated, Cancelled, Not Renewed or Otherwise Ceased to Do Business
H.  Financial Statements and Guarantee of Performance
I.   Table of Contents of Operations Manual and Confidentiality Agreement
J.   Franchisee Organizations We Have Created, Sponsored or Endorsed
K.  Receipt

March 15, 2013
_____
Date you received this Disclosure Document

**PROSPECTIVE FRANCHISEE:**

**If an individual:**

**If a business entity:**

_____
**Name of Business Entity**

By: Nora Darcia
_____
Signature

_____
**Signature**

Nora Garcia       Nora Garcia
_____
Printed Name

_____
**Printed Name/Title**

1943 Annandale Way
_____
Address

Pomona, CA. 91767

_____
**Address**

(626) 674-6480
_____
(Telephone number)

_____
(Telephone number)

By: Maribel Gorosave
_____
Signature

_____
**Signature**

Maribel Gorosave
_____
Printed Name

_____
**Printed Name/Title**

937 Lee Ave
_____
Address

Calexico  CA  92231

_____
**Address**

626-482-9168
_____
(Telephone number)

_____
(Telephone number)

## 🏢 Operations

Operations > Franchise Agreement Renewal > (no title) > Edit Item

# Franchise Agreement Renewal: (no title)

| 📎 Attach File | ✖ Delete Item | ✓ Spelling... | * indicates a required field |

| | |
|---|---|
| **Ops Contact \*** | Liza Malinis · |
| | Name of the person initiating request |
| **Entity \*** | 5205 |
| | Enter Enity ID |
| **Franchisee Name \*** | Nora Garcia & Maribel Gorosave |
| | Enter First and Last Name |
| **Territory ID \*** | CA375 |
| | Enter Territory ID |
| **FA Expiration Date** | 4/30/2013  📅 |
| **Date Sent to Mapping** | 9/18/2012  📅 |
| **Ops Notes to Mapping** | A A B I U ≣ ≣ ≣ ≔ ≔ ⊞ ⊞ 🖼 A 🕮 ¶ ¶ |

Caroline Decesare 🌐 (2/22/2013 4:36 PM):
Gabriel Malinis 🌐 (11/5/2012 12:45 PM):
Liza Malinis 🌐 (9/18/2012 1:03 PM): Please verify the territory. Thank you

| | |
|---|---|
| **Mapping Contact** | Gabriel Malinis · |
| **Approved By Mapping** | 11/5/2012  📅 |
| | Date mapping approved territory description |
| **Ammendment Date** | 📅 |
| **Mapping Notes** | A A B I U ≣ ≣ ≣ ≔ ≔ ⊞ ⊞ 🖼 A 🕮 ¶ ¶ |

Caroline Decesare ● (2/22/2013 4:36 PM):
Gabriel Malinis ● (11/5/2012 12:45 PM):
Liza Malinis ● (9/18/2012 1:03 PM):

**Docs Sent to Zee Date**

**Tracking Number**

**Notes From Legal**

**Ops Legal Follow up Notes**

| | |
|---|---|
| **Legal Received Docs Date** | [ ] 📅 |
| **Legal Closed Date** | [ ] 📅 |
| **Closed Docs to Zee Date** | [ ] 📅 |
| **Misc** | [ ] |
| **Assigned to Dept: *** | [ Legal · ]<br>Enter the Currently Assigned Dept. |
| **Status: *** | [ Legal Doc Request · ]<br>Enter Current Status of Workflow |
| **Renewal *** | [ Renewal · ] |

Version: 3.0
Created at 9/18/2012 1:03 PM  by Liza Malinis ⊖
Last modified at 2/22/2013 4:36 PM  by Caroline Decesare 🌐

# EXHIBIT B

CA375 (ElCentroCA-1)

# SiempreTax LLC
# Franchise Agreement



**Exhibit B**

# TABLE OF CONTENTS

**Section**                                                                                          **Page**

1. GRANT OF FRANCHISE ........................................................................................................... 1
2. TERM, RENEWAL AND BUYBACK ............................................................................................ 1
3. TERRITORY ............................................................................................................................... 2
4. FEES AND PAYMENTS ............................................................................................................... 3
5. OBLIGATIONS OF FRANCHISOR .............................................................................................. 5
6. OBLIGATIONS OF FRANCHISEE .............................................................................................. 7
7. REPORTS AND REVIEW .......................................................................................................... 11
8. TERMINATION ......................................................................................................................... 12
9. POST-TERMINATION OBLIGATIONS ..................................................................................... 13
10. ADDITIONAL IN-TERM AND POST-TERM COVENANTS ..................................................... 14
11. OPTION TO PURCHASE ASSETS ............................................................................................ 16
12. CONFIDENTIAL INFORMATION ............................................................................................. 16
13. INDEPENDENT CONTRACTOR ............................................................................................... 17
14. DEATH OR INCAPACITY ........................................................................................................ 17
15. ASSIGNABILITY AND FIRST RIGHT OF REFUSAL ................................................................ 18
16. NON-WAIVER OF BREACH ..................................................................................................... 19
17. GOVERNING LAW ................................................................................................................... 19
18. MODIFICATION ....................................................................................................................... 21
19. RELEASE OF PRIOR CLAIMS .................................................................................................. 21
20. NOTICES .................................................................................................................................. 21
21. FULL UNDERSTANDING .......................................................................................................... 21
22. ACKNOWLEDGMENTS ............................................................................................................ 21
23. SEVERABILITY ........................................................................................................................ 22
24. COUNTERPARTS AND ELECTRONIC SIGNATURE ................................................................ 22
25. HEADINGS ............................................................................................................................... 22
26. GUARANTY .............................................................................................................................. 22

Signature Page ........................................................................................................................ 23
Schedule A – Territory ........................................................................................................... A-1
Schedules B-1 to B-5 – Special Stipulations .................................................................... B-1-B-5

## 1. GRANT OF FRANCHISE

SiempreTax LLC ("SiempreTax") has developed a system for the operation of tax return preparation offices. The SiempreTax system utilizes special marketing techniques and operating procedures to facilitate the provision of tax return preparation and related services.

You, meaning the franchisee and all signators identified on the signature page to this franchise agreement ("Agreement" or "Franchise Agreement"), in your personal capacity, have applied for a franchise that utilizes the SiempreTax system, trade names, service marks, and trademarks (collectively, the "Marks") ("Franchised Business" or "Franchise"). Subject to the terms of this Agreement, SiempreTax grants to you a SiempreTax franchise. This Agreement will allow you to operate a tax return preparation business using SiempreTax's system and SiempreTax's Marks within the territory described on Schedule A ("Territory"). This agreement shall only grant you a SiempreTax franchise and grants no rights to you associated with any other brand or concept owned and/or operated by JTH Tax, Inc. d/b/a Liberty Tax Service ("Liberty"), JTH Holding, Inc., SiempreTax's partners, affiliates or parent company ("Affiliated Companies"). You agree to abide by the terms of this Agreement.

You recognize and agree that the nature of the tax return preparation business is such that complete uniformity is not always practical or desirable and that SiempreTax, in SiempreTax's sole discretion, may vary the terms of this Agreement and the standards of operation of the Franchised Business to accommodate the peculiarities of a particular situation and/or territory. You have no recourse against SiempreTax if other franchisees are granted allowances that you are not granted.

## 2. TERM, RENEWAL AND BUYBACK

**a. Term.** This Agreement will be effective for a five-year term beginning on the effective date specified on the signature page of this Agreement ("Effective Date").

**b. Renewal.** You may renew for another five-year term by signing the then current SiempreTax franchise agreement if you have met the Target Volume specified in Section 6(f) of this Agreement and are otherwise in compliance with this Agreement. You may continue to renew future franchise agreements in this manner if you are in compliance with all agreements between you and SiempreTax. You must execute a general release of all claims that you might have against SiempreTax to renew and SiempreTax's then current Franchise Agreement which may contain materially different terms. SiempreTax may not raise royalties or advertising fees that you pay to SiempreTax upon any future renewal, or impose a renewal fee. Further, SiempreTax may not change the boundaries of your Territory, the level and type of territorial exclusivity or the territorial rights you have. Other terms and conditions may vary. If you wish to renew, you must notify SiempreTax in writing at least 180 days before the expiration of this Agreement.

**c. Buyback.** Between May 1 and August 31 of any year, SiempreTax has the right to purchase your Franchised Business for the greater of $150,000 or 200% of Gross Receipts of the Territory for the previous twelve months, or such shorter time as an office in the Territory may have been in operation. You understand that this is a premium price above fair value and does not vest any rights in you. The term "Gross Receipts" as used in this Agreement means all revenue from all services and

products offered by the Franchised Business (including, but not limited to, revenue from individual, corporate, estate and partnership tax returns), excluding only customer discounts, any transmitter, software or electronic filing fee, and sales tax, but not service fees for credit card transactions.

## 3. TERRITORY

**a.   Territory Generally.** Your Territory is described in Schedule A of this Agreement ("Territory").

**b. General Rights & Restrictions.** You may operate as many tax return preparation offices in the Territory as you determine to be appropriate. You may not operate outside your Territory. SiempreTax may grant franchises for areas outside your Territory or operate company offices in such areas. Except as described below, SiempreTax may not establish franchised or company owned outlets offering income tax preparation services using the Marks at a physical location in your Territory.  In addition, SiempreTax may not offer income tax preparation services through other channels of distribution at a physical location in your Territory except as described herein. SiempreTax, SiempreTax's parent company, partners, affiliates and JTH Tax, Inc. d/b/a Liberty Tax Service may establish franchised or company owned outlets in in your Territory that operate income tax preparation services under different trademarks and may operate or franchise a different line of business. SiempreTax may distribute SiempreTax tax return preparation products and services by means other than retail or storefront locations in your Territory, including the sale of gift cards for this service. No other franchisee using the Marks may operate a tax return preparation office in your Territory. SiempreTax may advertise in your Territory. You may not advertise in areas outside your Territory or in media that extends outside your Territory, without SiempreTax's expressed written approval.

**c. Misplaced Offices.** If you locate an office outside your Territory, even if SiempreTax approved such site location, you agree upon discovery of this fact to promptly abandon the office and refrain from any further targeted solicitation (e.g. direct mail, telephone calls, etc.) of customers residing in the territory containing the misplaced office. If SiempreTax learns that SiempreTax or another franchisee has erroneously located an office in your Territory, you agree to accept the abandonment of the office and, in the case of a misplaced office operated by another franchisee, the discontinuation of further targeted solicitation of customers located in your Territory, in full satisfaction of any claim against SiempreTax, SiempreTax's past and present employees, and SiempreTax's past and present franchisees, in relation to the misplaced office.  SiempreTax has a reasonable time to correct any such error after SiempreTax learns of it. No person or entity is a third-party beneficiary of this Section.

**d. National and Regional Retail Business Outlets.** SiempreTax may negotiate agreements with national or regional retail businesses. If there is an approved outlet of such a national or regional business in your Territory that is subject to such an agreement, you may choose to operate a tax return preparation service office in that outlet by communicating that decision to SiempreTax by December 1 before a given Tax Season, or such earlier date provided by SiempreTax in order to meet the requirements of that business.  If you choose not to operate in an outlet that exists in your Territory, SiempreTax may operate in that outlet in your Territory and all associated revenue and expenses shall belong to SiempreTax. Additionally, SiempreTax will retain the right to service the customers associated with that outlet in the future.  The term "Tax Season" means the time period of January 2 – April 30.

## 4. FEES AND PAYMENTS

**a. Initial and Resale Franchise Fee.**  The initial franchise fee and resale franchise fees range from $25,000 to $40,000 and will be determined based on whether the territory contains a Primarily Hispanic Population. "Primarily Hispanic Population" means 50% or more of the population of the territory is Hispanic in our determination based on data provided from the last United States census as adjusted by available post census data or information. The resale franchise fee applies to a territory that has been previously sold.  If a territory includes existing operations, the total cost will vary depending upon the Gross Receipts of the Territory and other pertinent market and economic factors.

**b. Down Payment and Approval.**   You must submit a minimum of 20% of the initial or resale franchise fee as a deposit after you have held the SiempreTax Franchise Disclosure Document for at least fourteen (14) calendar days and prior to attending Effective Operations Training ("EOT"). SiempreTax will refund this deposit to you upon your request at any time before you attend EOT. If you receive financing, you will be required to submit a deposit of up to $25,000 prior to closing for your operational expenses ("Operational Supply Deposit"). We will refund to you the initial or resale franchise fee (including deposits) if we do not approve your application or if you do not pass EOT in accordance with our passing standards, provided that you return to us all materials that we distributed to you during training.  After closing, SiempreTax will hold and make available for return to you any Operational Supply Deposit that you were required to submit, upon your written request to SiempreTax with substantiation as to the expenses to be paid by you with the Operational Supply Deposit. We do not pay interest on the Operational Supply Deposit. The initial and resale franchise fee is fully earned and nonrefundable when both parties execute this Agreement.

**c. Reverse Royalty.**  If SiempreTax receives tax preparation fees from individuals located in your Territory through the use of SiempreTax's Marks for online tax preparation services while you have a SiempreTax office open in that Territory, SiempreTax agrees to use commercially reasonable means to track and identify those revenues and pay or credit to you 14% of those tax preparation fees within sixty (60) days after the end of each Tax Season in its sole discretion.

**d. Royalties.**  You must pay a royalty to SiempreTax in the amount of 14% of Gross Receipts subject to the following minimums ("Minimum Royalties"):

i) **Year One.**  For the period ending April 30 following the Effective Date of this Agreement, if you operated or were required to have operated an office in the Territory for any part of Tax Season ending in that April, the minimum royalty is $5,000 per Territory.

ii) **Year Two.** For the period beginning May 1 following the Effective Date of this Agreement through the following April 30, the minimum royalty is $8,000 per Territory.

iii) **Year Three and Beyond.**  Thereafter, the minimum royalty is $11,000 per Territory for each successive period beginning May 1 through the following April 30.

iv) **Developed Territory.** For a territory that contains or that had in the most recent Tax Season prior to the Effective Date of this Agreement, an existing company, franchisee or other SiempreTax tax preparation office ("Developed Territory"), you must pay royalties as

set forth above depending upon how long any office has been operated in the Territory. For example, if it is your first year operating in a territory but an office has been operated in the Territory by SiempreTax or another franchisee through one Tax Season, then the Territory would be subject to Year Two royalties for the year that you first operate in the Territory. An office includes, but is not limited to, locations such as kiosks or temporary locations where tax return preparation services are provided.

**e. Area Developers.** If you are in or become part of an area covered by an Area Developer, SiempreTax may pay to the Area Developer a portion of the initial franchisee fee and royalties that you pay to SiempreTax.

**f. Advertising Fee.** You must pay an advertising fee of 5% of the Gross Receipts each month.

**g. Payment Period.** You must pay the royalty owed by the 5th of each month based on Gross Receipts for the preceding month, and any balance owed to achieve Minimum Royalty on May 5 for each fiscal year ending April 30. You must pay advertising fees by the 5th of each month based on Gross Receipts for the preceding month. SiempreTax reserves the right to modify this payment schedule in SiempreTax's Operations Manual.

**h. Interest.** You must pay interest of 12% (compounded daily) per year, or the maximum permitted by law if less, on any amounts owed to SiempreTax that are more than fifteen (15) days past due.

**i. Transfer Fee.** If you transfer your Franchised Business, or a majority ownership interest in it, you must pay SiempreTax a transfer fee of $5,000 at the time of transfer. This fee is subject to increase or decrease in future franchise agreements by the amount of change in the *Consumer Price Index – All Urban Consumers*, published by the U.S. Department of Labor, or a reasonably similar successor index, from the index as of the Effective Date.

**j. Customer Refunds, Penalty and Interest, Send a Friend.** If you do not resolve a customer service complaint or pay penalty and interest on an erroneous return prepared in your office, or misdeliver a customer check, or fail to pay a Send a Friend or E-Send a Friend referral, and the customer contacts SiempreTax, and SiempreTax believes there is a reasonable basis for the claim, SiempreTax may issue a refund of fees paid by the customer, pay to the customer the penalty and interest or amount of misdelivered check, or pay the Send a Friend referral, and bill you. You agree to pay the charges. Your obligation to pay penalty and interest for tax return preparation errors made during the operation of the Franchised Business continues after the expiration, termination or transfer of this Agreement and/or sale of the Franchised Business.

**k. Automatic Payment Transfer.** All of the tax preparation, transmitter, software, and electronic filing fees, and any rebates that you receive from Financial Products or customers who purchase Financial Products, shall initially be paid to SiempreTax. The term "Financial Products" as used in this Agreement means refund-based loan programs and/or a means for customers to obtain a refund using electronic deposit services that SiempreTax, or a company associated with SiempreTax, may offer to you. SiempreTax will remit any remaining balance to you from the above described fees and

rebates after deducting monies you owe to SiempreTax and/or Liberty and deducting monies to hold for application to upcoming amounts due to SiempreTax and/or Liberty.

**l.   Sales or Gross Receipts Tax.**  If required by the state or locality where your Territory is located, the initial franchise fee, royalties, and advertising fees will be subject to sales or gross receipts tax.  You must pay these taxes to SiempreTax at the same time and in the same manner as you pay the royalties and fees to SiempreTax.

**m. Transmitter, Software, or Electronic Filing Fee.**  SiempreTax reserves the right to impose a fee charged to you or your customers related to transmission of Financial Products, the provision of software, or the electronic filing of tax returns and, if charged to customers, may rebate a portion of the fee to you.  SiempreTax may vary the dollar amount of the fee and may change its name.  Any such fee is not included in your Gross Receipts.

**n.  Call Center.**  If you elect to use SiempreTax's call center to handle customer appointments, customer follow up, tax school calls, or other calls, you must pay to SiempreTax a fee for each such call pursuant to SiempreTax's schedule of call center charges.  This schedule is subject to future modification by SiempreTax.

**o.  Customer Cash Incentive Program Financing Set up Fee.**  If you elect to apply for customer cash incentive program financing through SiempreTax, you must pay to SiempreTax any set up fee that SiempreTax imposes pursuant to SiempreTax's schedule of fees. This schedule is subject to future modification by SiempreTax.

**p.  Assessment Related to Understatement of Revenues.**  Pursuant to the rights and obligations specified in Section 7 of this Agreement, if SiempreTax determines that you are underreporting Gross Receipts, you must pay to SiempreTax additional royalties on the undisclosed amount. If the excess determined following a review is more than two percent (2%) of the Gross Receipts for the period in question, you must also pay the costs of the review. Additionally, if a review results from your failure to maintain and/or provide records as required in Section 7, you must pay the costs of the review, regardless of the result.  The costs of any review pursuant to the terms of this Agreement shall be determined by SiempreTax. SiempreTax's acceptance of payments of royalties or Gross Receipts reports shall be without prejudice and shall in no case constitute a waiver of SiempreTax's rights to claim any delinquent royalties, or to require a review of your books of accounts and records, as provided for herein.

## 5.  OBLIGATIONS OF FRANCHISOR

**a.  Training.**  SiempreTax provides for new franchisees a required five (5) day or longer EOT and a required one (1) day Hands on Training ("HOT") taught by an existing franchisee at their SiempreTax office.  SiempreTax does not charge for EOT or HOT but you are responsible for all expenses you incur as a result of training, such as travel, lodging and meals.

**b.  Operations Manual.**  SiempreTax will loan you a copy of SiempreTax's Operations Manual ("Manual") to offer guidance in the operation of your Franchised Business.

**c. Site Selection.** SiempreTax provides guidance and advice to you regarding the selection of the location of your office(s). You may not sign a lease or locate an office until SiempreTax approves the location of your office. SiempreTax's approval of the location of a site is not a guarantee of success in that location or a warranty or assurance as to any aspect of the office or its location.

**d. Advertising and Marketing.** SiempreTax raises fees related to marketing through the advertising fees paid under SiempreTax's franchise agreements. SiempreTax will contribute advertising fees from company offices. SiempreTax disburses advertising fees to develop, produce, distribute and/or conduct advertising programs, marketing programs, public relations, and marketing research. SiempreTax spends advertising fees on a national, regional or local basis for television, electronic, radio and print advertising as SiempreTax determines to be appropriate. SiempreTax may produce advertising in-house and/or through an advertising agency. SiempreTax pays all costs of such activities, including a share of corporate overhead related to advertising and marketing, with advertising fees. You may also use your own advertising material provided that SiempreTax first approves it for compliance.

**e. Software.** SiempreTax provides tax return preparation software.

**f. Tax and Technical Support.** SiempreTax provides reasonable telephone and/or internet support for your questions regarding federal and state individual income tax return preparation, electronic filing, and the use of software specified by SiempreTax. However, SiempreTax will not provide support on any equipment that does not meet SiempreTax's then current specifications or issues related to the operating system of a computer.

**g. Electronic Filing.** SiempreTax provides the ability to file individual federal and certain individual state tax returns electronically, if such method of filing is reasonably available from the respective taxing authority. You must have a valid Electronic Filing Identification Number ("EFIN") to utilize electronic filing.

**h. Financial Products.** If reasonably available and feasible (in SiempreTax's sole determination), SiempreTax will offer you the ability to participate in Financial Products. If offered, your participation in Financial Products programs is subject to mutual agreement between you, SiempreTax and the Financial Products provider.

**i. Operational Support.** SiempreTax advises you in the budgeting for and operation of your Franchised Business.

**j. Advanced and Update Training and Conference Calls.** SiempreTax provides and may require your attendance at advanced training for experienced franchisees. SiempreTax also provides and requires attendance by all franchisees at update training. SiempreTax may offer advanced and update training at various sites that SiempreTax selects across the country, or SiempreTax may offer such training through the internet or electronically. The agenda for advanced training varies, but often will focus on improving business management skills in order to increase profitability. SiempreTax does not charge for advanced or update training, but you are responsible for all expenses that you incur as a result of attending training, such as travel, lodging and meals. SiempreTax may also require that

you attend a reasonable number of toll free conference calls to learn the latest operational and marketing tips. Such calls may either be attended live or through online replay.

**k. Supply Source.** SiempreTax will offer for sale or locate a source for purchasing supplies, forms and equipment that may be necessary to conduct the Franchised Business, as reasonably determined by SiempreTax.

**l. Leasing.** SiempreTax may make arrangements to refer you to a company that offers leasing of furniture, fixtures, signs, equipment, and possibly provides loans for franchise fees and working capital. These leasing or loan programs will be financed and administered by a third party. SiempreTax cannot guarantee that you will be offered leasing or loans, as the third party company will make individual determinations.

**m. Financing through SiempreTax.** SiempreTax may, in SiempreTax's sole discretion, provide financing for a portion of the initial franchise fee or other costs associated with the Franchised Business. The terms of such financing are subject to change. You must be in compliance with this Agreement to qualify for any such financing and may be required to obtain certain certifications including, but not limited to, Affordable Care Act certification. Further, if SiempreTax provides financing to you, you agree to submit monthly financial information to SiempreTax including, but not limited to, an income statement, balance sheet, and supporting documents. You agree to provide any requested document at the time and in the format required by SiempreTax.

**n. Group Discounts.** SiempreTax may provide you with the opportunity to participate in group purchasing programs that offer group discounts. The discounts and terms for these opportunities will vary.

**o. Area Developers.** In those areas where SiempreTax presently or in the future uses an Area Developer, SiempreTax reserves the right to delegate some portion of the responsibility for certain duties to the Area Developer including, but not limited to, site selection assistance, limited marketing assistance, and operating assistance. Area Developers do not have any authority to approve advertising or marketing material of any kind.

## 6. OBLIGATIONS OF FRANCHISEE

**a. Training.** You must attend and successfully complete SiempreTax's EOT and HOT before you may operate a SiempreTax office. SiempreTax may allow or require a general manager to attend on your behalf.

**b. Use of SiempreTax Marks.**

(i) **SiempreTax allows you to use SiempreTax's Marks.** SiempreTax allows you to use SiempreTax's Marks to hold out your SiempreTax business to the public. You agree to exclusively use SiempreTax's Marks as SiempreTax develops them for this purpose only.

(ii) **You must obtain prior advertising approval.** You must either use pre-approved advertising templates that SiempreTax or SiempreTax's approved vendors provide, or you must obtain

SiempreTax's prior written consent before using the Marks in any way and before using any marketing or promotional material, including internet advertising.

(iii) **No private website allowed.** You may not have a website for your Franchised Business without SiempreTax's prior written approval.

(iv) **Marketing to National Companies.** You must obtain written permission from SiempreTax before marketing on the premises (building and parking lot) of any national company. National companies include, by way of example, Wal-Mart, K-mart, and Sears.

(v) **No use of "SiempreTax" within a company name.** You may not use the word "JTH" "Dona Libertad" "Liberty," "Libtax", "Siempre", "SiempreTax" or the name, or any portion of the name of our affiliate companies, as any part of the name of a corporation, LLC or other entity except as may be agreed between you and our Affiliated Companies in a separate franchise agreement for that company. If we change the name or Marks, you also may not use the new name or Marks as part of the name of a corporation, LLC or other entity. However, "SiempreTax" followed by your entity number shall be your "doing business as" name for an entity that owns this Franchise, sometimes also called your "assumed name," "trading as" name, or "fictitious name."

(vi) **No confusingly similar marks.** You agree not to use any marks which could be confused with SiempreTax's Marks.

(vii) **SiempreTax may update or change SiempreTax's Marks.** We will likely change the initial names and Marks of the franchise. We also intend to replace, modify or add to the Marks. If SiempreTax replaces, modifies or creates additional marks, you agree to update or replace your signs, supplies, etc., to reflect the new marks in the time frame SiempreTax provides and at your own expense. Following the first change of the SiempreTax name and Marks, SiempreTax will not change exterior signage requirements more than once every four (4) years.

c. **Signs.** You must display an exterior lighted sign at each of your offices. SiempreTax must approve all signs before you order or display them.

d. **Starting Date.** You agree to begin operation and be open for business no later than January 8 following the Effective Date of this Agreement and agree to be open for business no later than January 2 for each year thereafter.

e. **Operating Hours.** You agree to exercise your best efforts to promote the Franchised Business and agree, at a minimum, to be open for business during the hours specified in the Operations Manual.

f. **Target Volume.** You must use your best efforts to promote the Franchised Business. Beginning in your fifth (5th) Tax Season and continuing in each Tax Season thereafter, you must prepare at least 1000 federal income tax returns in your Territory ("Target Volume").

g. **Software.** You must use the software that SiempreTax provides. You may not use, install or allow to be installed any other federal or state personal income tax return preparation or electronic filing software on any computers used in the Franchised Business, without SiempreTax's prior written consent.

**h. Telephone Number and Email Account.** You must obtain and maintain a SiempreTax telephone number to be used solely to transact the Franchised Business. You may purchase a white and yellow page listing through our approved vendor and may be required to purchase a yellow page advertisement and/or contribute to a group listing or advertisement per SiempreTax's recommendations. You also must provide and maintain an email account sufficient for communications between you and SiempreTax.

**i. Equipment.** You must obtain and use a computer system that meets SiempreTax's current specifications and any modifications to these specifications. All work stations must be purchased from SiempreTax's approved vendor including, but not limited to, tax return preparation and processing computers. SiempreTax may update the specifications. When the specifications are updated, you must update or upgrade the computer system, at your sole cost. Specifications will not be updated during a Tax Season except upon an emergency, as reasonably determined by SiempreTax.

**j. Insurance.** During the term of this Agreement, you must procure and maintain an insurance policy or policies with at least the following coverage or such other coverage as may be specified in the Operations Manual: (i) comprehensive general liability of $1 million per office and (ii) worker's compensation as required by your state law. You must name SiempreTax as an additional insured on these policies.

**k. Electronic Filing.** If SiempreTax provides or recommends a source for electronically filing tax returns, you are required to offer electronic filing and to use this source exclusively for all electronic filing.

**l. Financial Products.** If SiempreTax negotiates an agreement with a third party Provider to allow you to offer Financial Products, you are required to exclusively use such Providers as SiempreTax designates and to offer Financial Products to your customers.

**m. Operations Manual.** You acknowledge the importance of consistency of quality, service and operation among all SiempreTax franchised offices and, therefore, agree to operate the Franchised Business in conformity with all standards to be maintained, techniques and operating procedures that SiempreTax may prescribe in SiempreTax's manuals or otherwise in writing, and to refrain from deviating therefrom without SiempreTax's prior written consent. SiempreTax will loan you a copy of the Manual and provide you with other relevant manuals. SiempreTax may modify the Manual or any other manual, in order to adjust for competitive changes, technological advancements, legal requirements and attempts to improve in the marketplace. You agree to operate the Franchised Business according to the manuals and any modifications including, but not limited to, the Manual, as may be updated or supplemented by memoranda, bulletin, email or other similar mechanism that together with the Manual, contain the mandatory and suggested procedures and specifications that are prescribed for the Franchised Business.

**n. Participation.** You agree that the services of the Franchised Business will be provided under your direct supervision and control and/or under the direct supervision and control of a full-time general manager who has been approved by, and not later disapproved by SiempreTax. SiempreTax will not approve a general manager prior to their successful completion of EOT.

**o.  Return Check.**  You must prepare each income tax return accurately and in accordance with federal, state and local laws.  You must check each return thoroughly.

**p.  Tax School.**  If you complete EOT before September 1 of the year of the Effective Date of this Agreement, and during every year after your first Tax Season regardless of EOT, you must conduct an intensive 6 to 10 week tax course in the period of September through December in accordance with the specifications in the Manual. Additionally, you must conduct a one-week tax course during every January, including the January of your first (1st) Tax Season, in accordance with the specifications in the Manual. We may require that you offer Tax School in Spanish.

**q.  Employees.**  You shall conduct and require each of your employees to attend an employee policy and procedure training course as specified by SiempreTax.  You are solely responsible for hiring, firing, compensating, paying applicable payroll taxes and day to day supervision and control over your employees.  However, your employees are required to be fluent in Spanish.

**r.  Customer Service.**  You shall employ and train sufficient personnel to accommodate all customers without undue delay.  You shall provide all services and abide by all customer service policies described in the Manual, including, but not limited to, the money back guarantee.  You must operate in a manner that protects SiempreTax's goodwill, reputation and Marks.

**s.  Office Condition.**  You shall maintain offices that are neat and professional in appearance. Further, you may not offer products or services through your SiempreTax offices other than the franchise services authorized here (i.e., tax preparation, electronic filing, and Financial Products, all processed and reported through SiempreTax's systems) without SiempreTax's prior written approval.

**t.  Supplies and Furniture.**  You agree that in order to establish a standard and consistent delivery of SiempreTax services, certain items must be used in the operation of the Franchised Business.  You must use the items required in the Manual (e.g. client envelopes and folders, interview worksheets, interior signs sets).  You are responsible for the cost of all items needed to conduct the Franchised Business including, but not limited to, supplies, furniture, equipment, leasing and real estate costs.

**u.  Laws and Regulations.**  You agree to comply with all federal, state and local laws, regulations, ordinances and the like. You will abide by all legal requirements and be solely responsible for securing any necessary permits, certificates, licenses and consents to operate your business.

**v.  Audits.**  If the IRS or any governmental agency audits or investigates your SiempreTax operations, or otherwise requires that you provide documents to the IRS related to the Franchised Business, you agree to notify SiempreTax promptly upon receiving notice of the audit, investigation or request for documents. You agree to promptly provide SiempreTax with the findings of any audit or investigation.

**w.  EFIN.**  You must obtain by January 2 of your first Tax Season and maintain throughout the entire term of this Agreement, an EFIN from the IRS.  You agree to comply with all of the requirements of IRS Publication 3112 or any applicable successor publication relevant to EFINs. You

hereby authorize the IRS and any state tax authority to disclose to SiempreTax the reasons for any EFIN denial or suspension and to provide SiempreTax with copies of all EFIN application materials, suspension and denial notices.

**x. Site Selection and Leases.** As described in Section 5.c., SiempreTax provides guidance to you regarding the selection of the location of your office and all office locations must be approved by SiempreTax prior to your execution of a lease for that site. You are required to attempt to ensure that any lease entered into for an approved location contains a provision that the lessor consents to an assignment of the lease to SiempreTax with the right to sublease at SiempreTax's option. You agree to provide SiempreTax with a copy of the lease for each approved location within seven (7) days of execution.

## 7. REPORTS AND REVIEW

**a. Gross Receipt Report.** You must send SiempreTax a Gross Receipt report in the manner and form and at the times SiempreTax specifies. Presently, you must report your Gross Receipts on the fifth (5th) of the month for Gross Receipts received during the prior month.

**b. Profit and Loss.** By May 30 of each year, you must send SiempreTax an unaudited profit and loss statement of the Franchised Business, in the manner and form SiempreTax specifies, for the twelve (12) month period ending April 30.

**c. Review.** You agree to permit SiempreTax and/or SiempreTax's agents the right to enter your SiempreTax offices during normal business hours, without prior notice, and inspect your operations and inspect and copy all of your paper and electronic business records related to the Franchised Business and any other operations taking place at your Franchised Business. This includes, but is not limited to, the right to inspect and copy all tax returns and bank statements that may be indicative of revenues from the Franchised Business. SiempreTax also has the right to require that you implement a plan to resolve issues that SiempreTax discovers. You agree to comply with any such plan imposed.

**d. Mail Reviews.** If SiempreTax requests a copy of your customer receipts (paper and/or electronic) or any other business records, including, but not limited to customer taxpayer records related to the Franchised Business, you must send SiempreTax these records at your expense within five (5) days of receiving SiempreTax's request.

**e. Electronic Review.** SiempreTax may cause programs to run on your computer systems that may send information to SiempreTax. SiempreTax agrees that the use of such programs will not unreasonably interfere with your operation of the Franchised Business and you agree to allow such programs to run without interference by you. You hereby grant SiempreTax the right to access the computer systems in your office and authorize SiempreTax to obtain any and all information related to the Franchised Business. You acknowledge that SiempreTax will use information obtained from your computer system to make business decisions.

**f. Costs of Review.** Depending on the circumstances, you may be responsible for the costs of a review as more fully set forth in Section 4(p).

**g. Background Information.** During the term of this Agreement, you authorize SiempreTax to obtain background information related to your employment, credit and financial history, as well as your criminal and driving records.

## 8. TERMINATION

**a. Nonrenewal.** You may terminate this Agreement by not renewing; that is by not notifying SiempreTax in writing of your desire to renew at least one hundred eighty (180) days prior to the expiration of this Agreement. If you terminate pursuant to this Section, you must still comply with all of the post-termination provisions of this Agreement.

**b. Termination Without Notice and Opportunity to Cure.** SiempreTax may terminate this Agreement without notice and the opportunity to cure for any of the following reasons:

(i)   If you become insolvent, are unable to pay debts as they come due or take any steps to seek protection from creditors, or if a receiver (permanent or temporary) is appointed by a creditor or a court of competent authority, or if you make a general assignment for the benefit of creditors;

(ii)  If a final judgment of record against you or your Franchised Business remains unsatisfied for thirty (30) days or longer;

(iii) If we determine that you, or someone acting under your supervision and control, has committed a material violation of any law, ordinance, rule or regulation of a governmental agency or department reasonably associated with the operation of the Franchised Business;

(iv)  If you abandon the Franchised Business or discontinue the active operation of the Franchised Business for three (3) business days during any Tax Season or seven (7) business days otherwise, except where active operation was not reasonably possible;

(v)   If you fail to open for business in the Territory by January 2 or January 8 of any year, as specified pursuant to Section 6(d);

(vi)  If you operate any offices or advertise outside the Territory without SiempreTax's permission;

(vii) If you fail to meet the Target Volume specified in Section 6(f) above in the Territory during your fifth Tax Season or in any Tax Season thereafter;

(viii) If you fail to use the software, electronic filing services or Financial Products SiempreTax provides or recommends;

(ix)  If you do not obtain an EFIN from the IRS for each office in the Territory by January 2 of your first Tax Season or if any such EFINs are suspended for any reason at any time thereafter;

(x) If you include a materially false representation or omission of fact in your Confidential Franchise Application to SiempreTax or if you under-report Gross Receipts, falsify financial data, make a false submission with regard to any required reports or otherwise commit an act of fraud with respect to your acquisition or operation of the Franchised Business or your rights or obligations under this Agreement;

(xi) If you commit three (3) or more breaches of this Agreement, the Operations Manual, or any other agreement (including promissory notes) with SiempreTax, in any twelve (12) month period regardless of whether such breaches were cured after notice; or

(xii) If you fail to timely execute all documents necessary for renewal.

**c. Termination with Notice and Opportunity to Cure.** No fewer than seven (7) days after SiempreTax has sent you notice of your opportunity to cure, SiempreTax may terminate this Agreement if:

(i) You violate any term or condition of this Agreement, the Operations Manual, or any other agreement with SiempreTax or SiempreTax's Affiliated Companies;

(ii) Any amount owing to SiempreTax or SiempreTax's Affiliated Companies, whether related to the Territory or not, is more than thirty (30) days past due;

(iii) You fail to comply with IRS standards applicable to e-file providers as stated in IRS Publication 1345 or another or successor IRS publication applicable to e-file providers; or

(iv) You are more than sixty (60) days in default of any loan, lease or sublease agreement with a third party, affecting the Franchised Business.

## 9. POST-TERMINATION OBLIGATIONS

Upon expiration, termination, transfer or nonrenewal of this Agreement for any reason by any party, including a sale of the Franchised Business, you must immediately:

**a.** Sell to SiempreTax (if SiempreTax elects pursuant to Section 11) any or all equipment, signs, trade fixtures, and furnishings used in the Franchised Business, or if SiempreTax does not so elect, remove all Marks or other distinguishing indicia from all of your offices and other premises; and

**b.** Stop identifying yourself as a SiempreTax franchisee, never hold out as a former SiempreTax franchisee and forever cease the use of any of the Marks or any other marks that may be confused with the Marks; and

**c.** Stop using all literature and forms received from SiempreTax and other items bearing the Marks; and

**d.** Pay to SiempreTax all amounts owing to SiempreTax, whether related to the Territory or not; and

**e.** Transfer to SiempreTax all telephone numbers, listings and advertisements used in relation to the Franchised Business and deliver to SiempreTax copies of such documents of transfer; and

**f.** Assign to SiempreTax (if SiempreTax elects), and upon lessor's consent, any interest that you have in any lease, sublease or any other agreement related to the Franchised Business; and

**g.** Deliver to SiempreTax any original and all copies, including electronic copies and media, of lists and other sources of information containing the names, addresses, e-mail addresses, or phone numbers of customers of the Franchised Business; and

**h.** Deliver to SiempreTax any original and all copies, including electronic copies and media, containing customer tax returns, files, and records; and

**i.** Deliver to SiempreTax the copy of the Manual and any updates which SiempreTax loaned to you; and

**j.** Cancel all fictitious name listings which you have filed that utilize any of the Marks; and

**k.** Adhere to all applicable provisions contained herein including, but not limited to, the post-term covenants not to compete and not to solicit.

## 10. ADDITIONAL IN-TERM AND POST-TERM COVENANTS

**a. In-Term Covenant Not to Compete.** During the term of this Agreement, you agree not to directly or indirectly, for a fee or charge, in the United States or Canada, prepare or electronically file income tax returns, or offer Financial Products, except in your capacity as a SiempreTax franchisee using the SiempreTax system to offer such products and services.

**b. Post-Term Covenant Not to Compete.** For a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchised Business, or your removal as a Signator to this Agreement, you agree not to directly or indirectly, for a fee or charge, prepare or electronically file income tax returns, or offer Financial Products, within the Territory or within twenty-five (25) miles of the boundaries of the Territory.

**c. Liquidated Monetary Damages.** If you fail to comply with either of the above covenants not to compete, you agree to pay SiempreTax, as partial liquidated monetary damages, royalties and advertising fees as set forth in Section 4 of this Agreement against the greater of: (1) the total Gross Receipts during your last fiscal year (May 1- April 30) of operation for each Territory in which you are in breach; or (2) the total revenue you received in breach of a covenant not to compete. The greater of these two dollar figures shall be multiplied by two (2) to give consideration to lost, repeat, and referral business to SiempreTax. You acknowledge that any breach of the covenants not to compete causes damage to the integrity of SiempreTax's franchised system, loss of franchisee and customer goodwill

and irreparable harm. You specifically acknowledge that the full measure of these damages is greater than that specified herein.

    **d. Covenant Not to Solicit.**  For a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchised Business, or your removal as a Signator to this Agreement, you agree that you will not, within the Territory or within twenty-five (25) miles of the boundaries of the Territory, directly or indirectly solicit any person or entity served by any of your prior SiempreTax offices within the last twelve (12) months that were a SiempreTax franchisee, for the purpose of offering such person or entity, for a fee or charge, income tax preparation, electronic filing of tax returns, or Financial Products.  You further agree for a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchised Business, or your removal as a Signator to this Agreement, not to employ or solicit for employment without SiempreTax's prior written consent any of SiempreTax's employees or those of any other of SiempreTax's franchisees, or induce any such employee to leave his or her employ.

    **e. Covenant Not to Lease.**  You agree that during the term of this Agreement, you will not lease, sub-lease, assign or guaranty a lease in the Territory to or for a person or entity who will offer income tax preparation at such an office.  You also agree that upon the termination or expiration of this Agreement, if SiempreTax or a duly authorized SiempreTax franchisee desires to use any of your former SiempreTax office locations in the Territory, you will use reasonable good faith efforts to help SiempreTax secure possession of the office locations through a lease assignment or otherwise.  Otherwise, you agree to use reasonable, good faith efforts to ensure that, for a twenty-four (24) month period after non-renewal or termination of this Agreement, no person or entity will offer income tax preparation at the properties where your former SiempreTax offices were located.  Good faith efforts include a duty not to sub-lease or assign the leases of your office location to a person or entity who will offer income tax preparation at such office locations.

    **f. No Harmful Acts.**  You agree not to disparage SiempreTax or its current and former employees or directors.  During the term of this Agreement, you also agree not to do any act harmful, prejudicial or injurious to SiempreTax in SiempreTax's discretion.

    **g. Section 10 Conditions Required for Grant of Franchise.** You hereby acknowledge that the qualifications to be a SiempreTax franchisee are special, unique and extraordinary, and that SiempreTax would not enter into this Agreement without the inclusion of the conditions set forth in Section 10.

    **h. Waivers.**  You acknowledge and agree that the provisions of Section 10 are reasonable, valid and not contrary to the public interest. You waive all defenses to the strict enforcement of Section 10. You further agree that SiempreTax is entitled to a temporary restraining order, preliminary and/or permanent injunction for any breach of duties under any of the non-monetary obligations of Sections 9 and 10. You hereby waive any requirement that SiempreTax post a bond related to any temporary restraining order or injunctions requested as a result of an alleged violation of Sections 9 and 10.

    **i. Survival.**  The covenants contained in Section 10 shall survive any termination or expiration of this Agreement.

**j.  Severability.**  If any covenant or provision within Section 10 is determined to be void or unenforceable, in whole or in part, it shall be deemed severed and removed from this Agreement and shall not affect or impair the validity of any other covenant or provision of this Agreement.  Further, these obligations are considered independent of any other provision in this Agreement, and the existence of any claim or cause of action by either party to this Agreement against the other, whether based upon this Agreement or otherwise, shall not constitute a defense to the enforcement of these obligations.

## 11.  OPTION TO PURCHASE ASSETS

Upon termination or expiration of this Agreement, you hereby grant SiempreTax or its assignee the option to purchase from you some or all of the assets (including, but not limited to, supplies, equipment, signs, furnishings and fixtures) of the Franchised Business. SiempreTax may exercise this option by transmitting notice to you within thirty (30) days from the effective date of expiration or termination. If SiempreTax elects to exercise this option, the purchase price for the assets of the Franchised Business, will be the "adjusted book value" as described below. SiempreTax will have the right to set off and reduce the purchase price by any and all amounts owed by you to SiempreTax or any of SiempreTax's affiliates. The "adjusted book value" is the book value of the assets of the Franchised Business as listed on the balance sheet in the financial statements of the Franchised Business as of the date of the termination or expiration. There shall be no allocation for goodwill or any similar adjustment in the adjusted book value.

## 12.  CONFIDENTIAL INFORMATION

**a.  Disclosure.**    SiempreTax possesses confidential information including, but not limited to, methods of operation, service and other methods, techniques, formats, specifications, procedures, information, systems, knowledge of and experience in operating and franchising offices, customer information and marketing information ("Confidential Information"). SiempreTax may disclose some or all of the Confidential Information to you and your representatives while you operate the Franchised Business.  During the term of this Agreement and following the expiration or termination of this Agreement, you covenant not to directly or indirectly communicate, divulge, or use any Confidential Information for your personal benefit or the benefit of any other person or legal entity except as specifically provided by the terms of this Agreement or permitted by SiempreTax in writing prior to disclosure.  Upon the transfer, expiration, termination or nonrenewal of this Agreement, you agree that you will never use or disclose, and will not permit any of your representatives to use or disclose, SiempreTax's Confidential Information in any manner whatsoever, including, without limitation, in the design, development or operation of any business substantially similar to the Franchised Business. This provision shall not apply to information that: (i) at the time of disclosure is readily available to the public; (ii) after disclosure becomes readily available to the trade or public other than through breach of this Agreement; (iii) is subsequently lawfully and in good faith obtained by you from an independent third party without breach of this Agreement; (iv) was in your possession prior to the date of our disclosure to you; or (v) is disclosed to others in accordance with the terms of a prior written authorization between you and SiempreTax.  The protections granted in this Section shall be in addition to all other protections for Confidential Information provided by law or equity.

**b. Interest.** You will acquire no interest in SiempreTax's Confidential Information, but are provided the right to use Confidential Information disclosed to you for the purposes of developing and operating the Franchised Business pursuant to this Agreement. You acknowledge that it would be an unfair method of competition to use or duplicate any Confidential Information other than in connection with the operation of the Franchised Business. No part of the SiempreTax franchise system nor any document or exhibit forming any part thereof shall be distributed, utilized or reproduced in any form or by any means, without SiempreTax's prior written consent.

**c. Use.** You agree that you will: (i) refrain from using Confidential Information for any purpose other than the operation of the Franchised Business pursuant to this Agreement; (ii) maintain absolute confidentiality of Confidential Information during and after the term of this Agreement; (iii) not make unauthorized copies of any portion of Confidential Information; and (iv) adopt and implement all reasonable procedures, including, but not limited to, those required by SiempreTax, to prevent unauthorized use of or disclosure of Confidential Information, including, but not limited to, restrictions on disclosure to your employees and the use of nondisclosure and non-competition clauses in employment agreements with employees that have access to Confidential Information.

## 13. INDEPENDENT CONTRACTOR

You and SiempreTax are independent contractors to each other. Neither you nor SiempreTax are an agent, fiduciary, partner, employee, or a participant in a joint venture and neither you nor SiempreTax have the authority to hold out as such to third parties. You do not have any authority to bind or obligate SiempreTax. SiempreTax is not and will not be liable for any act, omission, debt, or other obligation of yours.

You are responsible for all claims, demands, losses, damages and/or contractual liability to third parties which may arise at any time related to your operation of the Franchised Business. You agree to defend, indemnify and hold SiempreTax and its employees harmless from all claims, demands, losses, damages, and/or contractual liability to third parties.

## 14. DEATH OR INCAPACITY

**a. Assistance and Reimbursement.** In the event of the death or incapacity of Franchisee, SiempreTax is entitled, but not required, to render assistance to maintain smooth and continued operation of the Franchised Business. SiempreTax shall be entitled to reimbursement from Franchisee or Franchisee's estate for reasonable expenditures incurred.

**b. Time Requirements.** Pursuant to this Section, death or incapacity shall not be grounds for termination of this Agreement unless:

i) Franchisee or his/her legal representative fails for a period of one hundred eighty (180) days after such death or incapacity to commence action to assign this Agreement according to controlling state law regarding the affairs of a deceased or incapacitated person and the terms of this Agreement; or

ii) Such assignment is not completed within one (1) year after death or incapacity.

**c. Termination.** SiempreTax shall have the right to terminate this Agreement if one of the conditions listed in 14(b) are not satisfied within the time frame provided. Nothing in this Section shall be construed to limit the provisions of Section 8 regarding termination. Further, the terms and conditions of Section 15 apply to a transfer upon death or incapacity.

## 15. ASSIGNABILITY AND FIRST RIGHT OF REFUSAL

**a. Assignability Generally.** SiempreTax may assign this Agreement to an assignee who agrees to remain bound by its terms. SiempreTax does not permit a sub-license of the Franchise. Your interest under this Agreement or your ownership in the Franchise may be transferred or assigned only if you comply with the provisions in this Section 15. No interest may be transferred unless you are in full compliance with this Agreement and current in all monies owed to SiempreTax. Pursuant to SiempreTax's request, any transfer of an ownership interest in this Agreement must be joined by all signatories to this Agreement, except in the case of death or legal disability.

**b. First Right of Refusal.** If you have received and desire to accept a signed, bona fide offer to purchase or otherwise transfer the Franchise or any interest in the Franchise, SiempreTax shall have the option ("Right of First Refusal") to purchase the Franchise or interest. You shall offer the Right of First Refusal by providing written notice to SiempreTax and including a copy of the signed offer to purchase that you received (collectively "Notice"). SiempreTax shall have the right to purchase the Franchise or interest in the Franchise for the price and upon the terms set out in the Notice; however, SiempreTax may substitute cash for any non-cash form of payment proposed and SiempreTax shall have sixty (60) days after the exercise of SiempreTax's Right of First Refusal to close the purchase. SiempreTax will notify you in writing within fifteen (15) days of receipt of the Notice if it plans to exercise the Right of First Refusal. Upon the transmission of notice by SiempreTax that it plans to exercise the Right of First Refusal, there shall immediately arise between SiempreTax and Franchisee, or its owners, a binding contract of purchase and sale at the price and terms contained in the Notice previously provided by you.

**c. Transfer to Controlled Entity.** A transfer to a "Controlled Entity" shall not trigger the Right of First Refusal. A "Controlled Entity" is an entity in which Franchisee is the beneficial owner of 100% of each class of voting ownership interest. At the time of the desired transfer of interest to a Controlled Entity, you must notify SiempreTax in writing of the name of the Controlled Entity and the name and address of each officer, director, shareholder, member, partner, or similar person and their respective ownership interest. Each such person of the Controlled Entity shall sign the amendment and release forms and/or franchise agreement as required by SiempreTax at the time of transfer. Currently, SiempreTax does not charge a transfer fee for this type of transaction. Upon transfer, a new EFIN must be obtained pursuant to Section 6(w) herein.

**d. Transfer of Interest Within Franchisee.** A transfer of interest within a Franchisee that is an entity shall not trigger the Right of First Refusal provided that only the percentage ownership is changing and not the identity of the owners. At the time of the desired transfer of interest within an entity, you must notify SiempreTax in writing of the name and address of each officer, director, shareholder, member, partner or similar person and their respective ownership interest prior to and following the proposed transfer. Each such person of the Controlled Entity shall sign the amendment

and release forms and/or franchise agreement as required by SiempreTax at the time of transfer. Further, if the transfer of interest results in a majority ownership change, you must pay to SiempreTax the transfer fee required at the time of transfer.

   **e. Right of First Refusal Not Exercised By SiempreTax.** If SiempreTax does not exercise the Right of First Refusal, you may transfer the Franchise or ownership interest therein according to the terms set forth in the Notice, provided that you satisfy the conditions of Sections 15(f) below and complete the sale within ninety (90) days from the date that SiempreTax received Notice from you. If you do not conclude the proposed sale transaction within this ninety (90) day period, SiempreTax's Right of First Refusal shall continue in full force and effect.

   **f. Additional Requirements and Restrictions Regarding Transfers.**

   i) The proposed transferee(s) must complete SiempreTax's franchise application and pass SiempreTax's application screening in place at the time of transfer;

   ii) The proposed transferee(s) must sign the SiempreTax amendment forms and/or the then current franchise agreement, and must personally assume and be bound by all of the terms, covenants and conditions therein;

   iii) The proposed transferee(s) must attend and successfully complete EOT and HOT;

   iv) You shall sign the transfer and release forms required by SiempreTax at the time of transfer and pay the transfer fee described in Section 4.i. of this Agreement; and

   v) Except as to approved transfers within the SiempreTax system as described in this Section, you may not give, transfer or sell all or substantially all of the assets of your Franchised Business during the term of this Agreement, or for a two (2) year period after its expiration or termination, to a person or entity who might be reasonably expected to use any such assets to offer income tax preparation in the Territory or within ten (10) miles of the boundaries of the Territory.

   **g. Writing Required.** No amendment, change, or modification of this Agreement and no waiver of any right under this Agreement will be effective unless in a written document that is signed by an authorized representative of SiempreTax.

## 16. NON-WAIVER OF BREACH

The failure of either party hereto to enforce any of the terms or conditions of this Agreement shall not be deemed a waiver of such terms or conditions or of either party's rights thereafter to enforce each and every term and condition of this Agreement.

## 17. GOVERNING LAW

   **a. Virginia Law.** This Agreement is effective upon its acceptance in Virginia by SiempreTax's authorized officer. Virginia law governs all claims that in any way relate to or arise out of this

Agreement or any of the dealings of the parties hereto.  However, the Virginia Retail Franchising Act does not apply to any claims by or on your behalf if the Territory shown on Schedule A is outside of Virginia.

**b.  Jurisdiction and Venue.**  In any suit brought by SiempreTax that in any way relates to or arises out of this Agreement or any of the dealings of the parties hereto, you consent to venue and personal jurisdiction in the state and federal court of the city or county of SiempreTax's National Office (presently Virginia Beach, Virginia state courts and the United States District Court in Norfolk, Virginia).   In any suit brought against SiempreTax, including SiempreTax's present or former employees or agents, that in any way relates to or arises out of this Agreement or any of the dealings of the parties hereto, venue shall be proper only in the federal court district and division located nearest SiempreTax's National Office (presently the U.S. District Court in Norfolk, Virginia), or if neither federal subject matter nor diversity jurisdiction exists, in the city or county state court where SiempreTax's National Office is located (presently the City of Virginia Beach, Virginia).

**c.  Jury Waiver.**  In any trial between any of the parties hereto, including present or former employees or agents of SiempreTax, that in any way relates to or arises out of this Agreement or any of the dealings of the parties hereto, you and SiempreTax agree to waive the rights to a jury trial and instead have such action tried by a judge.

**d.  Class Action Waiver.**  You agree that any claim you may have against SiempreTax, including SiempreTax's past or present employees or agents, shall be brought individually and you shall not join such claim with claims of any other person or entity or bring, join or participate in a class action against SiempreTax.

**e.  No Punitive Damages.**  In any lawsuit, dispute or claim between or against any of the parties hereto, including present or former agents or employees of SiempreTax's, that in any way relates to or arises out of this Agreement or any of the dealings of the parties hereto, you and SiempreTax agree to waive the rights, if any, to seek or recover punitive damages.

**f.  Area Developers.**  If your Territory is or becomes located in an Area Developer area, you agree not to bring any claim, including a lawsuit, against the Area Developer, or its owners, employees or independent contractors, except as to a claim unrelated to the SiempreTax franchise, such as an automobile accident.  Area Developers are a third party beneficiary of this clause.  Further, you agree that if you breach this clause, you will pay to SiempreTax and/or the Area Developer all attorney fees and other costs that SiempreTax and the Area Developer incur to defend the Area Developer in such an action, regardless of who prevails.

**g.  Survival.**  Any provisions of this Agreement that by their nature extend beyond the expiration or termination of this Agreement, shall survive termination or expiration of this Agreement and be fully binding and enforceable as though termination or expiration had not occurred.

## 18. MODIFICATION

No modifications to this Agreement will have any effect unless such modification is in writing and signed by you and by SiempreTax's authorized officer. However, SiempreTax may modify the provisions of the Operations Manual without your consent.

## 19. RELEASE OF PRIOR CLAIMS

By executing this Agreement, the undersigned entity, if any, and individuals, on behalf of yourselves and your heirs, legal representatives, successors and assigns, and each assignee of this Agreement, hereby forever release and discharge SiempreTax, its past and present employees, agents, area developers, officers and directors, including SiempreTax's parent, subsidiary and affiliated corporations, their respective past and present employees, agents, officers and directors, from any and all claims relating to or arising out of any franchise agreement between the parties executed prior to the date of this Agreement, and all other claims relating to any dealings between any of the parties. However, this release does not apply to SiempreTax's renewal obligations the same or similar to those in Section 2(b) above, as contained in any prior or other franchise agreement.

## 20. NOTICES

You shall give any notice or request hereunder by mail or courier, postage fully prepaid, delivered personally to SiempreTax's CEO at SiempreTax's National Office, presently 1716 Corporate Landing Parkway, Virginia Beach, Virginia, 23454, Telephone: (757) 493-8855. SiempreTax may also give any such notice to you in the same manner at the address indicated below the Franchisee's signature on this Agreement, or such other more current address as SiempreTax may have for you. SiempreTax may also give notice to you by e-mail.

## 21. FULL UNDERSTANDING

This Agreement is the entire agreement between you and SiempreTax. This Agreement supersedes all other prior oral and written agreements and understandings between you and SiempreTax with respect to the subject matter herein. Nothing in this or in any related agreement, however, is intended to disclaim the representations SiempreTax made in the Franchise Disclosure Document SiempreTax furnished to you.

## 22. ACKNOWLEDGMENTS

You acknowledge that you have read SiempreTax's franchise disclosure document and this Agreement and that you are familiar with their contents. You acknowledge that you have independently investigated the business offered hereunder and base your decision to purchase solely on such investigation. Except as may be stated in Item 19 of SiempreTax's Franchise Disclosure Document, you acknowledge that no person is authorized to make and no person has made any representations to you as to the actual, projected or potential sales, volumes, revenues, profits or success of any SiempreTax franchise. You further acknowledge and agree that you are not a third party beneficiary to any agreement between SiempreTax and any other franchisee.

## 23. SEVERABILITY

If any covenant or provision within this Agreement is determined to be void or unenforceable, in whole or in part, it shall be deemed severed and removed from this Agreement and shall not effect or impair the validity of any other covenant or provision of this Agreement and no covenant or provision of this Agreement shall be deemed to be dependent upon any other unless specifically expressed herein.

## 24. COUNTERPARTS AND ELECTRONIC SIGNATURE

This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, but such counterparts shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page to this Agreement by facsimile or in electronic (e.g. "pdf") format shall be effective as delivery of a manually executed counterpart of this Agreement. The words "execution," "signed," "signature," and words of similar import in the Agreement shall be deemed to include electronic or digital signatures or the keeping of records in electronic form, each of which shall be of the same effect, validity and enforceability as manually executed signatures or a paper-based recordkeeping system, as the case may be, to the extent and as provided for under applicable law, including the Electronic Signatures in Global and National Commerce Act of 2000 (15 USC § 7001 et seq.) or any other similar state or federal laws.

## 25. HEADINGS

The headings of the various sections of this Agreement have been inserted for reference only and shall not be deemed to have any legal effect or meaning.

## 26. GUARANTY

The Franchisee named at the top of the following page agrees to abide by the terms of this Agreement. The signature of an individual or individuals constitutes their personal agreement to such terms. The signature of an individual or individuals on behalf of an entity constitutes the entity's agreement to such terms.

In addition, the Franchisee signatures of all individuals on this Agreement, in any capacity, also constitute their personal joint and several agreement to perform all the obligations in and relating to this Agreement, including, but not limited to, the obligations stated in **Section 17 above concerning Governing Law, including but not limited to, the application of Virginia law, the jurisdiction and venue clause, the jury waiver, the class action waiver, and the limitation to compensatory damages only,** the obligation to make payments specified herein, pay any other promissory notes and other debts due to SiempreTax, and pay for products later ordered from SiempreTax. All Signators waive any right to presentment, demand or notice of non-performance and the right to require SiempreTax to proceed against the other Signators.

Franchisee: _Nora Garcia & Maribel Gorosave_ Entity Number:_____

**SIGNATORS:**

By: _Maribel Corona_
     (Signature)

_Maribel Gorosave_
     (Printed Name)

Title:_____

Address: _937 Lee Ave_
_Calexico, CA 92831_

Ownership Percentage:_99_%


By:_____
     (Signature)

_____
     (Printed Name)

Title:_____

Address:_____

_____

Ownership Percentage:_____%


By: _Nora Garcia_
     (Signature)

_Nora Garcia_
     (Printed Name)

Title:_____

Address: _1943 Annandale Way_
_Pomona CA 91767_

Ownership Percentage:_1_%


By:_____
     (Signature)

_____
     (Printed Name)

Title:_____

Address:_____

_____

Ownership Percentage:_____%


**SIEMPRETAX LLC**

By:_____

Printed Name: _John Hewitt_

Title: _CEO_

Effective Date: _11/13/14_

## SCHEDULE "A" TO THE FRANCHISE AGREEMENT

### Territory

The Franchise Territory* is as follows:

CA375 (ElCentroCA-1)


NORTH of and including I-8 from SR-111 to Forrester Rd.
EAST of and including Forrester Rd from I-8 to W Keystone Rd
SOUTH of and excluding W Keystone Rd continuing onto SOUTH of and excluding
E Keystone Rd from Forrester Rd to SR-111.
WEST of and excluding SR-111 from E Keystone Rd to I-8.



*Note: When a Territory description includes a road, avenue, street, parkway, highway, route or similar roadway, the Territory includes the U.S. Postal addresses assigned to either side of the roadway.  When a Territory description excludes a road, avenue, street, parkway, highway, route or similar roadway, the Territory excludes the U.S. Postal addresses assigned to either side of such roadway.  If a map of the Territory is attached, the map approximates the Territory, but the above legal description controls as to the Territory's precise boundaries.

## SPECIAL STIPULATION TO THE SIEMPRETAX FRANCHISE AGREEMENT
### Existing Liberty Franchisee Opening SiempreTax

To the extent of any conflict between the following and the provisions of the Franchise Agreement, this Special Stipulation shall control:

**1. Initial Franchise Fee.** Section 4(a) of this Agreement concerning the "Initial and Resale Franchise Fee" is modified to provide that the Initial and Resale Franchise Fee is $0.

**2. SiempreTax.** You have opted to enter into a SiempreTax Franchise Agreement for the same territorial area as your currently owned Liberty Tax Service ("Liberty") franchise as described in Schedule A of each applicable Franchise Agreement ("Territorial Area").

**3. Royalties.** Standard royalty percentages as described in the Franchise Agreement shall apply for any office that is operated, or required to be operated, except that the following is added at the end of Section 4(d) of the Franchise Agreement:

"(v) For each year that you operate both a Liberty Tax Service office and a SiempreTax office in the Territorial Area, the minimum royalties required under the SiempreTax Franchise Agreement will be waived.

(vi) The aggregate of royalties paid under your Liberty and SiempreTax franchise agreements shall be used to calculate whether the minimum royalty has been met."

**4. In Term Non-Compete.** Section 10(a) of the Franchise Agreement shall not apply to your operation of the Liberty Tax Service franchise in the Territorial Area.

**5. Counterparts.** This Special Stipulation may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, but such counterparts shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page to this Stipulation by facsimile or in electronic (e.g. "pdf") format shall be effective as delivery of a manually executed counterpart of this Stipulation. The words "execution," "signed," "signature," and words of similar import in the Stipulation shall be deemed to include electronic or digital signatures or the keeping of records in electronic form, each of which shall be of the same effect, validity and enforceability as manually executed signatures or a paper-based record keeping system, as the case may be, to the extent and as provided for under applicable law, including the Electronic Signatures in Global and National Commerce Act of 2000 (15 USC § 7001 et seq.) or any other similar state or federal laws.

Except to the extent modified above, the terms of the Agreement remain in full force and effect.

FRANCHISEE:

By: _Manuel Garcon_

By: _Nora Garcia_

SIEMPRETAX LLC

By: _____

Printed Name: _John Hewitt_

Title: _CEO_

Effective Date: _11/13/14_

## CALIFORNIA ADDENDUM
## TO THE FRANCHISE AGREEMENT

This Addendum forms a part of the Franchise Agreement dated _11/13/14_, between SiempreTax LLC ("SiempreTax") and _Nora Garcia & Maribel Corosave_, the franchisee ("you" or "your"). To the extent this Addendum shall be deemed to be inconsistent with any of the terms or conditions of the Franchise Agreement or its Exhibits, the terms of this Addendum shall govern.

**Section 6.u.** of the Franchise Agreement titled "Obligations of Franchisee," "Laws and Regulations" is supplemented to include the following:

You acknowledge that you have read, understand and agree to abide by the Judgment and Permanent Injunction entered by the Superior Court of the State of California in the case of *The People of the State of California v. JTH Tax, Inc. (d/b/a Liberty Tax Service)*, Docket Number CGC-07-460778, requiring that Liberty and its franchisees abide by certain advertising requirements and, in particular, not disseminate or cause to be disseminated any advertisement that directly or indirectly represents a refund anticipation loan as a client's actual refund ("California Injunction"). You further agree to remit to the Attorney General of California a fine in the amount of $15,000 in the event you commit two breaches of the terms of the California Injunction and agree to hold Liberty and/or SiempreTax harmless for fines assessed against you related to your violation of the California Injunction.

**Section 8.b (iii)** of the Franchise Agreement regarding termination without notice or opportunity to cure for violation of laws or regulations is supplemented to specifically include the following:

Breach of the California Injunction and/or your failure to remit required fines to the Attorney General of California for your violation of the California Injunction is cause for immediate termination.

**Section 19** of the Franchise Agreement titled "Release of Prior Claims" is amended to include the following language:

Unknown or Unsuspected Consequences- The parties understand and acknowledge that this Section applies to and includes all unknown or unsuspected consequences or results arising from or relating to the transactions, occurrences, or agreements referred to in this Section. You represent and warrant that you have read the contents of California Civil Code §1542, which provides as follows:

"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

YOU EXPRESSLY WAIVE ANY AND ALL RIGHTS AND BENEFITS UNDER CALIFORNIA CIVIL CODE §1542.

Nature of Release- Each party acknowledges that it has read this Section, that it fully understands the contents of this Section, and that THIS IS A SPECIFIC RELEASE GIVING UP ALL RIGHTS WITH RESPECT TO THE TRANSACTIONS OR OCCURRENCES THAT ARE BEING RELEASED UNDER THIS SECTION.

As required by law, the above Release shall not apply to any liabilities arising under the California Franchise Investment Law or the California Franchise Relations Act.

**FRANCHISEE:**

By: _Maribel Carora_

By: _Nora Garcia_

**SIEMPRETAX LLC**

By: _[signature]_

Printed Name: _John Hewitt_

Title: _CEO_

**SiempreTax+**

# Sales Journal Entry

| Buyer: | Maribel Gorosave | Entity: | 5205 | Ex. K Date: | 9/24/2014 |
|---|---|---|---|---|---|

| Entity/Owne rship Type: | Tenants in Common | Entity paperwork status: | Pending | Deal/Sale Type: | SiempreTax +1 |
|---|---|---|---|---|---|

| Seller: | n/a | # of Territories: | 1 | Territory(s): CA375 | |
|---|---|---|---|---|---|
| AD/ADC Entity: | 3622 N&M Garcia | | | Sales Contact: | Briana Koons/Casey Krampen |

| EOT Attended?: | TRUE | EOT Training Date: | |
|---|---|---|---|
| Ops Financing Approved (FAC)? | ☐ Yes ☐ No | If Yes (how much?): | |

| Purchase Price: | | Financing Type: | |
|---|---|---|---|
| Cash Down Payment: | | P-Note Term: | |
| P-Note Amount(Financing): | | All Cash Deal? ☐ Yes ☐ No | |

## Sending to Legal (choose all that apply):

- ☐ Exhibit K Receipt LTS
- ☐ Deposit (Check/Wire)
- ☐ Franchise Agreements LTS
- ☐ BOGO Stip LTS
- ☐ Conf. Agreement LTS
- ☐ State Addendum LTS
- ☐ Multiple T Stip LTS
- ☐ Delayed Opening Stip LTS
- ☐ Other Business Stip LTS
- ☐ Delayed EOT Stip LTS
- ☐ EOT Waiver Stip LTS
- ☐ Grandfathered Clients Stip LTS
- ☐ GC $$ LTS  ☐ GC List LTS
- ☐ Promissory Note
- ☐ Seller Debt Guarantee
- ☐ Purchase & Sale
- ☐ Transfer & Release

- ☒ Exhibit K Receipt HT
- ☒ Deal Approval (issue)
- ☒ Franchise Agreements HT
- ☒ Opening Stip HT & LTS
- ☒ Conf. Agreement HT
- ☒ State Addendum HT
- ☐ Multiple T Stip HT
- ☐ Delayed Opening Stip HT
- ☐ Other Business Stip HT
- ☐ Delayed EOT Stip HT
- ☐ EOT Waiver Stip HT
- ☐ GF Clients Stip HT
- ☐ GC $$ HT  ☐ GC List HT
- ☐ Assumption of Debt Stip
- ☐ AD Debt Guarantee
- ☐ We Sell P&S
- ☐ Item 20

## Pending/Still to Come (choose all that apply):

- ☐ Exhibit K Receipt LTS
- ☐ Deposit (Check/Wire)
- ☐ Franchise Agreements LTS
- ☐ BOGO Stip LTS
- ☐ Conf. Agreement LTS
- ☐ State Addendum LTS
- ☐ Multiple T Stip LTS
- ☐ Delayed Opening Stip LTS
- ☐ Other Business Stip LTS
- ☐ Delayed EOT Stip LTS
- ☐ EOT Waiver Stip LTS
- ☐ GF Clients Stip LTS
- ☐ GC $$ LTS  ☐ GC List LTS
- ☐ Promissory Note
- ☐ Seller Debt Guarantee
- ☐ Purchase & Sale
- ☐ Transfer & Release

- ☐ Exhibit K Receipt HT
- ☐ Deal Approval (TTDS/FFRF)
- ☐ Franchise Agreements HT
- ☐ BOGO Stip HT
- ☐ Conf. Agreement HT
- ☐ State Addendum HT
- ☐ Multiple T Stip HT
- ☐ Delayed Opening Stip HT
- ☐ Other Business Stip HT
- ☐ Delayed EOT Stip HT
- ☐ EOT Waiver Stip HT
- ☐ GF Clients Stip HT
- ☐ GC $$ HT  ☐ GC List HT
- ☐ Assumption of Debt Stip
- ☐ AD Debt Guarantee
- ☐ We Sell P&S
- ☐ Item 20

## Sales Notes:

11/7/14 - sending to legal the following: approval (issue #134-9544), Ex. K, Conf. Agree., FA w/CA state addendum and Siempre & LTS opening stips.

| Legal Received: | 11/07/14 | Legal Contact: | Carol | Legal Closed: | 11/13/14 |
|---|---|---|---|---|---|

## Incident Details

**Contact Details**

Office/Entity ID: 5205

First/Last Name: Maribel          Gorosave

Callback: ☐

Language Preference: English ▽

**Issue Type**

Type: Franchisee Support ▽

Country: US ▽

Category: Operations ▽

Product: Expansions (Hispanic Brand) ▽

Sub Product: Expansion Initial Request ▽

Summary: ENT5205 would like to open Hispanic Brand in EL CENTRO, CA Territory

## Comments

| ent 5205 (Nora Garcia & Maribel Gorosave) writes... | @ 9/17/2014 5:18 PM |
|---|---|

I would like to open a Hispanic Brand Store in my EL Centro Territory. What documents do I need to submit?
Do I have to attend EOT in Texas? Where and how can I do a budget for this new store?
I think the sooner I start planning and organizing for this new brand, the better the chances of the outcome will be.
Thank you,

Maribel Gorosave

| Heather Smith writes... | @ 9/19/2014 4:09 PM |
|---|---|

Hello!

Great news!

As an existing Zee you can view a condensed EOT via webinar. It will be listed on ZeeNet soon. You would use the same budget template that you would use for Liberty (https://app3.libertytax.net/ExcelDocumentDownloader/Default.aspx). I see you have a Hispanic population of 80.56%.

Development - please disclose and then assign to Leslie O'Conner.

Thanks!

Heather Smith

| Leslie O'Connor writes... | @ 9/24/2014 11:21 AM |
|---|---|

Maribel was sent the disclosure to maribelgorosave@hotmail.com
Thanks!

| ent 5205 (Nora Garcia & Maribel Gorosave) writes... | @ 9/24/2014 5:55 PM |
|---|---|

Hi Heather,

I open up the Budget template but I cannot add offices to the template, that item comes up blank...I'm not sure if I should do the budget that way anyway or if there's something wrong with the budget template? Could you please advise me on how to proceed.

| Leslie O'Connor secretly writes... | @ 9/25/2014 4:17 PM |
|---|---|

Oscar,
Do you approved of the zee opening Siempre tax office with the population of 80.56%

10/14/2014

Oscar Aujero secretly writes...                                           @ 10/6/2014 6:26 PM
RD approves +1 expansion w/in CA375.

- Zee is in a highly Hispanic territory
- Zee is the sister of Nora Garcia who is a long-time proven operator and is also the AD for this area.
- Debt is manageable and this area is right on the U.S./Mexican border.
- Zee was not on pre-approved list but I believe the opportunity to introduce the SiempreTax brand justifies $5K incentive.

Chris Bushey secretly writes...                                           @ 10/6/2014 9:22 PM
OK

Oscar Aujero secretly writes...                                           @ 10/6/2014 9:26 PM
Kathy- will you pls. approve $5k incentive payment? Thank you.

Kathy Donovan secretly writes...                                          @ 10/7/2014 7:49 AM
ok

Leslie O'Connor writes...                                                 @ 10/7/2014 12:33 PM
Congratulations and welcome to the SiempreTax team! Your $5k for 1 office incentive has been approved and will be disbursed via ACH to your designated bank account on ADMIN. Please work to complete the items we detailed above. If you have any questions, please feel free to update this issue or contact your Area Developer.

## Miscellaneous

| Attachments | Related Issues | Notifications | Incident History | Office History |

### Existing Attachments

| Attachment | Size | Date | Added By |
|---|---|---|---|
| 5205PRF60.pdf | 59.94KB | 10/6/2014 6:26 PM | Oscar Aujero |

### Add Attachments

Browse...
Browse...
Browse...

Click "Save" to upload the above files. You may attach as many files as you wish, but no more than three files can be attached at once (select your files and upload/save in groups of three until all files are attached). If you have selected a file and no longer wish to upload it, simply clear the text (file path) to the left of the "Browse" button.

## Issue Routing

Department: Area Developers (US)                     Status: Waiting On Customer
Person: Oscar Aujero                                 Priority: Critical

2010.0.0.98

10/14/2014

## Incident Details

**Contact Details**

| | |
|---|---|
| Office/Entity ID: | 5205 |
| First/Last Name: | Maribel       Gorosave |
| Callback: | ☐ |
| Language Preference: | English ▾ |

**Issue Type**

| | |
|---|---|
| Type: | Franchisee Support ▾ |
| Country: | US ▾ |
| Category: | Operations ▾ |
| Product: | Expansions (Hispanic Brand) ▾ |
| Sub Product: | Expansion Initial Request ▾ |

Summary: ENT5205 would like to open Hispanic Brand in EL CENTRO, CA Territory

## Comments

---

**ent 5205 (Nora Garcia & Maribel Gorosave) writes...**    @ 9/17/2014 5:18 PM

I would like to open a Hispanic Brand Store in my EL Centro Territory. What documents do I need to submit?
Do I have to attend EOT in Texas? Where and how can I do a budget for this new store?
I think the sooner I start planning and organizing for this new brand, the better the chances of the outcome will be.
Thank you,

Maribel Gorosave

---

**Heather Smith writes...**    @ 9/19/2014 4:09 PM

Hello!

Great news!

As an existing Zee you can view a condensed EOT via webinar. It will be listed on ZeeNet soon. You would use the same budget template that you would use for Liberty (https://app3.libertytax.net/ExcelDocumentDownloader/Default.aspx). I see you have a Hispanic population of 80.56%.

Development - please disclose and then assign to Leslie O'Conner.

Thanks!

Heather Smith

---

**Leslie O'Connor writes...**    @ 9/24/2014 11:21 AM

Maribel was sent the disclosure to maribelgorosave@hotmail.com
Thanks!

---

**ent 5205 (Nora Garcia & Maribel Gorosave) writes...**    @ 9/24/2014 5:55 PM

Hi Heather,

I open up the Budget template but I cannot add offices to the template, that item comes up blank...I'm not sure if I should do the budget that way anyway or if there's something wrong with the budget template? Could you please advise me on how to proceed.

---

**Leslie O'Connor secretly writes...**    @ 9/25/2014 4:17 PM

Oscar,
Do you approved of the zee opening Siempre tax office with the population of 80.56%

---

**Oscar Aujero secretly writes...**    @ 10/6/2014 6:26 PM

RD approves +1 expansion w/in CA375:

---

- Zee is in a highly Hispanic territory
- Zee is the sister of Nora Garcia who is a long-time proven operator and is also the AD for his area.
- Debt is manageable and this area is right on the U.S./Mexican border.
- Zee was not on pre-approved list but I believe the opportunity to introduce the SiempreTax brand justifies $5K incentive.

---

**Chris Bushey secretly writes...** @ 10/6/2014 9:22 PM

OK

---

**Oscar Aujero secretly writes...** @ 10/6/2014 9:26 PM

Kathy- will you pls. approve $5k incentive payment? Thank you.

---

**Kathy Donovan secretly writes...** @ 10/7/2014 7:49 AM

ok

---

**Leslie O'Connor writes...** @ 10/7/2014 12:33 PM

Congratulations and welcome to the SiempreTax team! Your $5k for 1 office incentive has been approved and will be disbursed via ACH to your designated bank account on ADMIN. Please work to complete the items we detailed above. If you have any questions, please feel free to update this issue or contact your Area Developer.

---

**Briana Koons writes...** @ 10/19/2014 12:10 PM

Siempre Tax franchise documents have been overnighted to the address provided in ADMIN. Please sign where indicated and be sure to not make any notes or stray marks that may cause a delay in the process. Please see below for the FEDEX tracking numbers.

To: 547317035684
Back to LTS: 573623538346

Thank you,
Briana Koons

---

**ent 5205 (Nora Garcia & Maribel Gorosave) writes...** @ 10/24/2014 6:53 PM

I received the documents but I have a few questions on them.
On the Siempre Tax Franchise Agreement it states Initial and Resale Franchise Fee... 25,000 to 40,000. Also Down payment 20% Royalties, 5000 minimum for first year.
I already own the EL CENTRO territory and I was told I wasn't going to have to pay any additional fees to open up a siempre tax in my territory, also, my royalties would stay the same...only minimum for current territory. and since there wasn't any additional fees there should be no requirement for down payment. I'm a little confused with this and not sure I should sign any of it. Can somebody please look into this.
Thank you,
Maribel

---

**ent 5205 (Nora Garcia & Maribel Gorosave) writes...** @ 10/24/2014 6:55 PM

I found the Special Stipulation to the Siempre Tax Franchise Agreement.
Please disregard previous entry.

Thank you,
Maribel

---

**Briana Koons writes...** @ 10/28/2014 11:03 AM

Hi Maribel, just a reminder to send back your documents at your earliest convenience. If you have any questions, please ask your RD, Oscar.

Thank you!

---

**Briana Koons secretly writes...** @ 10/28/2014 11:03 AM

Waiting on return docs.

---

**Briana Koons writes...** @ 10/31/2014 10:48 AM

As a reminder we are still waiting on your returned Siempre tax documents.

Thank you

---

**ent 5205 (Nora Garcia & Maribel Gorosave) writes...** @ 11/3/2014 3:28 PM

Paperwork will be sent by the end of this week. I didn't realize Nora needed to sign documents also.

Thank you,
Maribel

---

**Miscellaneous**

**Existing Attachments**

| Attachment | Size | Date | Added By |
|---|---|---|---|
| 5205PRF60.pdf | 59.94KB | 10/6/2014 6:26 PM | Oscar Aujero |

**Add Attachments**

Browse...

Browse...

Browse...

Click "Save" to upload the above files. You may attach as many files as you wish, but no more than three files can be attached at once (select your files and upload/save in groups of three until all files are attached). If you have selected a file and no longer wish to upload it, simply clear the text (file path) to the left of the "Browse" button.

## Issue Routing

Department: Area Developers (US)

Person: Briana Koons

Status: Waiting On Customer

Priority: Critical

2010.0.0.102

# EXHIBIT C

CA376(BrawleyCA-1)



**FRANCHISE AGREEMENT**

**EXHIBIT B**

## TABLE OF CONTENTS

**Section**                                                                                      **Page**

1. GRANT OF FRANCHISE ...................................................................................................3

2. TERM, RENEWAL AND BUYBACK ...............................................................................3

3. TERRITORY .........................................................................................................................3

4. FEES AND PAYMENTS ......................................................................................................4

5. OBLIGATIONS OF FRANCHISOR .................................................................................7

6. OBLIGATIONS OF FRANCHISEE ..................................................................................8

7. REPORTS AND REVIEW ................................................................................................11

8. TERMINATION ................................................................................................................12

9. POST-TERMINATION OBLIGATIONS ........................................................................13

10. ADDITIONAL IN-TERM AND POST-TERM COVENANTS .....................................14

11. OPTION TO PURCHASE ASSETS ................................................................................16

12. CONFIDENTIAL INFORMATION ................................................................................16

13. INDEPENDENT CONTRACTOR ...................................................................................17

14. DEATH OR INCAPACITY ..............................................................................................17

15. ASSIGNABILITY AND FIRST RIGHT OF REFUSAL ...............................................17

16. NON-WAIVER OF BREACH ..........................................................................................19

17. GOVERNING LAW ..........................................................................................................19

18. MODIFICATION ...............................................................................................................20

19. RELEASE OF PRIOR CLAIMS .....................................................................................20

20. NOTICES ............................................................................................................................20

21. FULL UNDERSTANDING ...............................................................................................20

22. ACKNOWLEDGMENTS .................................................................................................21

23. GUARANTY .......................................................................................................................21

24. COUNTERPARTS .............................................................................................................21

25. SEVERABILITY ................................................................................................................21

26. HEADINGS ........................................................................................................................21

   Signature Page.....................................................................................................22

   Schedule A – Territory....................................................................................A-1

   Schedules B-1 to B-5 – Special Stipulations.........................................B-1-B-5

## 1. GRANT OF FRANCHISE

Liberty Tax Service ("Liberty," "Liberty Tax") has developed a system for the operation of tax return preparation offices. The Liberty system utilizes special marketing techniques and operating procedures to facilitate the provision of tax return preparation and related services.

You, meaning the franchisee and all signators identified on the signature page to this franchise agreement ("Agreement" or "Franchise Agreement"), in your personal capacity, have applied for a franchise that utilizes Liberty's system and Liberty's trade names, service marks, and trademarks (collectively, the "Marks") ("Franchised Business" or "Franchise"). Subject to the terms of this Agreement, Liberty grants to you a Liberty Tax Service franchise. This Agreement will allow you to operate a tax return preparation business using Liberty's system and Liberty's Marks within the territory described on Schedule A ("Territory"). You agree to abide by the terms of this Agreement.

You recognize and agree that the nature of the tax return preparation business is such that complete uniformity is not always practical or desirable and that Liberty, in Liberty's sole discretion, may vary the terms of this Agreement and the standards of operation of the Franchised Business to accommodate the peculiarities of a particular situation and/or territory. You have no recourse against Liberty if other franchisees are granted allowances that you are not granted.

## 2. TERM, RENEWAL AND BUYBACK

**a. Term.** This Agreement will be effective for a five-year term beginning on the effective date specified on the signature page of this Agreement ("Effective Date").

**b. Renewal.** You may renew for another five-year term by signing Liberty's then current franchise agreement if you have met the Target Volume specified in Section 6.f. of this Agreement and are otherwise in compliance with this Agreement. You may continue to renew future franchise agreements in this manner if you are in compliance with all agreements between you and Liberty. You must exercise a general release of all claims that you might have against Liberty to renew. Liberty may not raise royalties or advertising fees that you pay to Liberty upon any future renewal, or impose a renewal fee. Further, Liberty may not change the boundaries of your Territory, the level and type of territorial exclusivity or the territorial rights you have. Other terms and conditions may vary. If you wish to renew, you must notify Liberty in writing at least 180 days before the expiration of this Agreement.

**c. Buyback.** Between May 1 and August 31 of any year, Liberty has the right to purchase your Franchised Business for the greater of $150,000 or 200% of Gross Receipts of the Territory for the previous twelve months, or such shorter time as an office in the Territory may have been in operation. You understand that this is a premium price above fair value and does not vest any rights in you. The term "Gross Receipts" as used in this Agreement means all revenue from all services and products offered by the Franchised Business (including, but not limited to, revenue from individual, corporate, estate and partnership tax returns), excluding only customer discounts, any transmitter, software or electronic filing fee, and sales tax, but not service fees for credit card transactions.

## 3. TERRITORY

**a. Territory Generally.** Your Territory is described in Schedule A of this Agreement ("Territory").

**b. General Rights & Restrictions.** You may operate as many tax return preparation offices in the Territory as you determine to be appropriate. You may not operate outside your Territory. Liberty may grant franchises for areas outside your Territory or operate company offices in such areas. Except as described below, Liberty may not establish franchised or company owned outlets or other channels of distribution of similar products or services in your Territory. Liberty may grant franchises in your Territory that operate a different line of business. Liberty may distribute Liberty tax return preparation products and services by means other than retail or storefront locations in your Territory, including the sale of gift cards for this service. No other franchisee using the Marks may operate a tax return preparation office in your Territory. Liberty may advertise in your Territory. You may not advertise in areas outside your Territory or in media that extends outside your Territory, without Liberty's expressed written approval.

**c. Misplaced Offices.** If you locate an office outside your Territory, even if Liberty approved such site location, you agree upon discovery of this fact to promptly abandon the office and refrain from any further targeted solicitation (e.g., direct mail, telephone calls, etc.) of customers residing in the territory containing the misplaced office. If Liberty learns that Liberty or another franchisee has erroneously located an office in your Territory, you agree to accept the abandonment of the office and, in the case of a misplaced office operated by another franchisee, the discontinuation of further targeted solicitation of customers located in your Territory, in full satisfaction of any claim against Liberty, Liberty's past and present employees, and Liberty's past and present franchisees, in relation to the misplaced office. Liberty has a reasonable time to correct any such error after Liberty learns of it. No person or entity is a third-party beneficiary of this Section.

**d. National and Regional Retail Business Outlets.** Liberty may negotiate agreements with national or regional retail businesses. If there is an outlet of such a national or regional business in your Territory that is subject to such an agreement, you may choose to operate a tax return preparation service office in that outlet by communicating that decision to Liberty by December 1 before a given Tax Season, or such earlier date provided by Liberty in order to meet the requirements of that business. If you choose not to operate in an outlet that exists in your Territory, Liberty may operate in that outlet in your Territory and all associated revenue and expenses shall belong to Liberty. Additionally, Liberty will retain the right to service the customers associated with that outlet in the future.

## 4. FEES AND PAYMENTS

**a. Initial and Resale Franchise Fee.** The initial franchise fee and resale franchise fees are $40,000. The resale franchise fee applies to a territory that has been previously sold. If a territory includes existing operations, the total cost will vary depending upon the Gross Receipts of the Territory and other pertinent market and economic factors.

**b. Down Payment and Approval.** You must submit a minimum of 20% of the initial or resale franchise fee as a deposit after you have held the Liberty Franchise Disclosure Document for at least fourteen (14) calendar days and prior to attending Effective Operations Training ("EOT"). Liberty will refund this deposit to you upon your request at any time before you attend EOT. If you receive financing, you will be required to submit a deposit of up to $25,000 prior to closing for your operational expenses ("Operational Supply Deposit"). We will refund to you the initial or resale franchise fee (including deposits) if we do not approve your application or if you do not pass EOT in accordance with our passing standards, provided that you return to us all materials which we distributed to you during training. After closing, Liberty will hold and make available for return to you any Operational Supply Deposit that you were required to submit, upon your written request to Liberty with substantiation as to the expenses to be paid by you with the Operational Supply Deposit. We do

not pay interest on the Operational Supply Deposit. The initial and resale franchise fee is fully earned and nonrefundable when both parties execute this Agreement.

**c.  Reverse Royalty.**  If Liberty receives tax preparation fees from individuals located in your Territory through the use of Liberty's online tax preparation services while you have a Liberty Tax Service office open in that Territory,  Liberty agrees to use commercially reasonable means to track and identify those revenues and pay or credit to you 14% of those tax preparation fees within sixty (60) days after the end of each Tax Season in its sole discretion. The term "Tax Season" means the time period of January 2 – April 30.

**d.  Royalties.**  You must pay a royalty to Liberty in the amount of 14% of Gross Receipts subject to the following minimums ("Minimum Royalties"):

    i) **Year One.**  For the period ending April 30 following the Effective Date of this Agreement, if you operated or were required to have operated an office in the Territory for any part of Tax Season ending in that April, the minimum royalty is $5,000 per Territory.

    (ii) **Year Two.**  For the period beginning May 1 following the Effective Date of this Agreement through the following April 30, the minimum royalty is $8,000 per Territory.

    (iii) **Year Three and Beyond.**  Thereafter, the minimum royalty is $11,000 per Territory for each successive period beginning May 1 through the following April 30.

    (iv) **Developed Territory.** For a territory that contains or that had in the most recent Tax Season prior to the Effective Date of this Agreement, an existing company, franchisee or other Liberty tax preparation office ("Developed Territory"), you must pay royalties as set forth above depending upon how long any office has been operated in the Territory.  For example, if it is your first year operating in a territory but an office has been operated in the Territory by Liberty or another franchisee through one Tax Season, then the Territory would be subject to Year Two royalties for the year that you first operate in the Territory.  An office includes, but is not limited to, locations such as kiosks or temporary locations where tax return preparation services are provided.

**e. Area Developers.**  If you are in or become part of  an area covered by an Area Developer, Liberty may pay to the Area Developer a portion of the initial franchisee fee and royalties that you pay to Liberty.

**f.  Advertising Fee.**  You must pay an advertising fee of 5% of the Gross Receipts each month.

**g.  Payment Period.**  You must pay the royalty owed by the 5th of each month based on Gross Receipts for the preceding month, and any balance owed to achieve Minimum Royalty on May 5 for each fiscal year ending April 30.  You must pay advertising fees by the 5th of each month based on Gross Receipts for the preceding month.  Liberty reserves the right to modify this payment schedule in Liberty's Operations Manual.

**h.  Interest.**  You must pay interest of 12% (compounded daily) per year, or the maximum permitted by law if less, on any amounts owed to Liberty that are more than fifteen (15) days past due.

**i.  Transfer Fee.**  If you transfer your Franchised Business, or a majority ownership interest in it, you must pay Liberty a transfer fee of $5,000 at the time of transfer.  This fee is subject to increase or decrease in future franchise agreements by the amount of change in the *Consumer Price Index – All*

*Urban Consumers*, published by the U.S. Department of Labor, or a reasonably similar successor index, from the index as of the Effective Date.

**j.   Customer Refunds, Penalty and Interest, Send a Friend**.  If you do not resolve a customer service complaint or pay penalty and interest on an erroneous return prepared in your office, or misdeliver a customer check, or fail to pay a Send a Friend or E-Send a Friend referral, and the customer contacts Liberty, if Liberty believes there is a reasonable basis for the complaint, payment of penalty and interest, or payment of the Send a Friend referral, Liberty may issue a refund of fees paid by the customer, pay to the customer the penalty and interest or amount of misdelivered check, or pay the Send a Friend referral, and bill you.  You agree to pay the charges.  Your obligation to pay penalty and interest for tax return preparation errors made by you continues after the expiration or termination of this Agreement or sale of the Franchised Business.

**k.   Automatic payment transfer**.  All of the tax preparation, transmitter, software, and electronic filing fees, and any rebates that you receive from Financial Products or customers who purchase Financial Products, shall initially be paid to Liberty.  The term "Financial Products" as used in this Agreement means refund-based loan programs and/or a means for customers to obtain a refund using electronic deposit services that Liberty, or a company associated with Liberty, may offer to you. Liberty will remit any remaining balance to you from the above described fees and rebates  after deducting monies you owe to Liberty and deducting monies to hold for application to upcoming amounts due to Liberty.

**l.   Sales or Gross Receipts Tax.**  If required by the state or locality where your Territory is located, the initial franchise fee, royalties, and advertising fees will be subject to sales or gross receipts tax. You  must pay these taxes to Liberty at the same time and in the same manner as you pay the royalties and fees to Liberty.

**m. Transmitter, Software, or Electronic Filing Fee.**  Liberty reserves the right to impose a fee charged to you or customers related to transmission of Financial Products, the provision of software, or the electronic filing of tax returns and, if charged to customers, may rebate a portion of the fee to you. Liberty may vary the dollar amount of the fee and may change its name.  Any such fee is not included in your Gross Receipts.

**n.   Call Center.**  If you elect to use Liberty's call center to handle customer appointments, customer follow up, tax school calls, or other calls, you must pay to Liberty a fee for each such call pursuant to Liberty's schedule of call center charges. This schedule is subject to future modification by Liberty.

**o.   Cash in a Flash Financing Set up Fee.**  If you elect to apply for cash in a flash financing through Liberty, you must pay to Liberty any set up fee that Liberty imposes pursuant to Liberty's schedule of fees. This schedule is subject to future modification by Liberty.

**p.   Assessment Related to Understatement of Revenues.**  Pursuant to the rights and obligations specified in Section 7 of this Agreement, if Liberty determines that you are underreporting Gross Receipts, you must pay to Liberty the additional royalties on the undisclosed amount. If the excess determined following a review is more than two percent (2%) of the Gross Receipts for the period in question, you must also pay the costs of the review. Additionally, if a review results from your failure to maintain and/or provide records as required in Section 7, you must pay the costs of the review, regardless of the result.  The costs of any review pursuant to the terms of this Agreement shall be determined by Liberty. Liberty's acceptance of payments of royalties or Gross Receipts reports shall

be without prejudice and shall in no case constitute a waiver of Liberty's rights to claim any delinquent royalties, or to require a review of your books of accounts and records, as provided for herein.

## 5. OBLIGATIONS OF FRANCHISOR

**a. Training.** Liberty provides for new franchisees a required five (5) day or longer EOT and a required one (1) day Hands on Training ("HOT") taught by an existing franchisee at their Liberty Tax office. Liberty does not charge for EOT or HOT but you are responsible for all expenses you incur as a result of training, such as travel, lodging and meals.

**b. Operations Manual.** Liberty will loan you a copy of Liberty's Operations Manual ("Manual") to offer guidance in the operation of your Franchised Business.

**c. Site Selection.** Liberty provides guidance and advice to you regarding the selection of the location of your office(s). You may not sign a lease or locate an office until Liberty approves the location of your office. Liberty's approval of the location of a site is not a guarantee of success in that location or a warranty or assurance as to any aspect of the office or its location.

**d. Advertising and Marketing.** Liberty raises fees related to marketing through the advertising fees paid under Liberty's franchise agreements. Liberty will contribute advertising fees from company offices. Liberty disburses advertising fees to develop, produce, distribute and/or conduct advertising programs, marketing programs, public relations, and marketing research. Liberty spends advertising fees on a national, regional or local basis for television, electronic, radio and print advertising as Liberty determines to be appropriate. Liberty may produce advertising in-house and/or through an advertising agency. Liberty pays all costs of such activities, including a share of corporate overhead related to advertising and marketing, with advertising fees. You may also use your own advertising material provided that Liberty first approves it for compliance.

**e. Software.** Liberty provides tax return preparation software.

**f. Tax and Technical Support.** Liberty provides reasonable telephone and/or internet support for your questions regarding federal and state individual income tax return preparation, electronic filing, and the use of software specified by Liberty. However, Liberty will not provide support on any equipment that does not meet Liberty's then current specifications or relates to the operating system of a computer.

**g. Electronic Filing.** Liberty provides the ability to electronically file individual federal and some individual state tax returns if such method of filing is reasonably available from the respective taxing authority. You must have a valid Electronic Filing Identification Number ("EFIN").

**h. Financial Products.** If reasonably available and feasible (in Liberty's sole determination), Liberty will offer you the ability to participate in Financial Products. If offered, your participation in Financial Products programs is subject to mutual agreement between you, Liberty and the Financial Products provider.

**i. Operational Support.** Liberty advises you in the budgeting for and operation of your Franchised Business.

**j. Advanced and Update Training and Conference Calls.** Liberty provides and may require your attendance at advanced training for experienced franchisees. Liberty also provides and requires attendance by all franchisees at update training. Liberty may offer advanced and update training at

various sites that Liberty selects across the country, or Liberty may offer such training on the web or electronically. The agenda for advanced training varies, but often will focus on improving business management skills in order to increase profitability. Liberty does not charge for advanced or update training, but you are responsible for all expenses that you incur as a result of attending training, such as travel, lodging and meals. Liberty may also require that you attend a reasonable number of toll free conference calls to learn the latest operational and marketing tips. Such calls may either be attended live or through online replay.

**k. Supply Source.** Liberty will offer for sale or locate a source for purchasing supplies, forms and equipment that may be necessary to conduct the Franchised Business, as reasonably determined by Liberty.

**l.   Leasing.** Liberty may make arrangements to refer you to a company that offers leasing of furniture, fixtures, signs, equipment, and possibly provides loans for franchise fees and working capital. These leasing or loan programs will be financed and administered by a third party. Liberty cannot guarantee that you will be offered leasing or loans, as the third party company will make individual determinations.

**m. Financing through Liberty.** Liberty may, in Liberty's sole discretion, provide financing for a portion of the initial franchise fee or other costs associated with the Franchised Business. The terms of such financing are subject to change. You must be in compliance with this Agreement to qualify for any such financing. Further, if Liberty provides financing to you, you agree to submit monthly financial information to Liberty including, but not limited to, an income statement, balance sheet, and supporting documents. You agree to provide any requested document at the time and in the format required by Liberty.

**n.   Group Discounts.** Liberty may provide you with the opportunity to participate in group purchasing programs that offer group discounts. The discounts and terms for these opportunities will vary.

**o.   Area Developers.** In those areas where Liberty presently or in the future uses an Area Developer, Liberty reserves the right to delegate some portion of the responsibility for the following duties to the Area Developer: site selection assistance, limited marketing assistance, and operating assistance. However, Area Developers do not have any authority to approve advertising or marketing material of any kind.

## 6. OBLIGATIONS OF FRANCHISEE

**a.   Training.** You must attend and successfully complete Liberty's EOT and HOT before you may operate a Liberty office. Liberty may allow or require a general manager to attend on your behalf.

**b.   Use of Liberty Marks.**

(i)   **Liberty allows you to use Liberty's Marks**. Liberty allows you to use Liberty's Marks to hold out your Liberty Tax Service business to the public. You agree to exclusively use Liberty's Marks as Liberty develops them for this purpose only.

(ii)   **You must obtain prior advertising approval**. You must either use pre-approved advertising templates that Liberty or Liberty's approved vendors provide, or you must obtain Liberty's prior written consent before using the Marks in any way and before using any marketing or promotional material, including internet advertising.

(iii)   **No private website allowed.**  You may not have a website for your Franchised Business without Liberty's prior written approval.

(iv)   **Marketing to National Companies**.  You must obtain written permission from Liberty before marketing on the premises (building and parking lot) of any national company.  National companies include, by way of example, Wal-Mart, K-mart, and Sears.

(v)   **No use of "Liberty" within a company name.**  You may not use the word "Liberty" or "Libtax" as any part of the name of a corporation, LLC or other entity.  However, "Liberty Tax Service" followed by your entity number shall be your "doing business as" name for an entity that owns this Franchise, sometimes also called your "assumed name," "trading as" name, or "fictitious name."

(vi)   **No confusingly similar marks**.  You agree not to use any marks which could be confused with Liberty's Marks.

(vii)   **Liberty may update or change Liberty's Marks**.  Liberty may replace, modify or add to the Marks. If Liberty replaces, modifies or  creates additional marks, you agree to update or replace your signs, supplies, etc., to reflect the new marks in the time frame Liberty provides and at your own expense. Liberty will not change exterior signage requirements more than once every four (4) years unless legally required.

**c.  Signs.**  You must display an exterior lighted sign at each of your offices.  Liberty must approve all signs before you order or display them.

**d.  Starting Date.**  In a territory that has not contained or had in the most recent Tax Season an existing company, franchisee or other Liberty tax preparation office ("Undeveloped Territory"), you agree to begin operation and be open for business no later than the January 8 following the Effective Date of this Agreement and agree to be open for business no later than the January 2 for each year thereafter.  For a Developed Territory, you agree to begin operations and be open for business no later than the January 2 following the Effective Date of this Agreement and for every year thereafter.

**e.  Operating Hours.**  You agree to exercise your best efforts to promote the Franchised Business and agree, at a minimum, to be open for business during the hours specified in the Operations Manual.

**f.  Target Volume.**   You must use your best efforts to promote the Franchised Business. Beginning in your fifth (5th) Tax Season and continuing in each Tax Season thereafter, you must prepare at least 1000 federal income tax returns in your Territory ("Target Volume").

**g.  Software.**  You must use the software that Liberty provides.  You may not use, install or allow to be installed any other federal or state personal income tax return preparation or electronic filing software on any computers used in the Franchised Business without Liberty's prior written consent.

**h.  Telephone Number and Email Account.**   You must obtain and maintain a Liberty Tax Service telephone number to be used solely to transact the Franchised Business. You may purchase a white and yellow page listing through our approved vendor and may be required to purchase a yellow page advertisement and/or contribute to a group listing or advertisement per Liberty's recommendations.  You also must provide and maintain an email account sufficient for communications between you and Liberty.

**i.  Equipment.**  You must obtain and use a computer system that meets Liberty's current specifications and any modifications to these specifications.  All work stations, including tax return preparation and processing computers, must be purchased from Liberty's approved vendor. Liberty may update the specifications.  When the specifications are updated, you must update or upgrade the computer system, at your sole cost.  Specifications will not be updated during a Tax Season except upon an emergency, as reasonably determined by Liberty.

**j.  Insurance.**  During the term of this Agreement, you must procure and maintain an insurance policy or policies with at least the following coverage or such other coverage as may be specified in the Operations Manual:  (i) Comprehensive General Liability of $1 million per office, (ii) Worker's Compensation as required by your state law. You must name Liberty as an additional insured on these policies.

**k.  Electronic Filing.**  If Liberty provides or recommends a source for electronically filing tax returns, you are required to offer electronic filing and to use this source exclusively for all electronic filing.

**l.  Financial Products.**  In the event that Liberty negotiates an agreement with a third party Provider to allow you to offer Financial Products, you are required to exclusively use such Providers as Liberty designates and to offer Financial Products to your customers.

**m. Operations Manual.**  You acknowledge the importance of consistency of quality, service and operation among all Liberty Tax franchised offices and, therefore, agree to operate the Franchised Business in conformity with all standards to be maintained, techniques and operating procedures that Liberty may prescribe in Liberty's manuals or otherwise in writing, and to refrain from deviating therefrom without Liberty's prior written consent.  Liberty will loan you a copy of the Manual and provide you with other relevant manuals.  Liberty may modify the Manual or any other manual, in order to adjust for competitive changes, technological advancements, legal requirements and attempts to improve in the marketplace.  You agree to operate the Franchised Business according to the manuals and any modifications including, but not limited to, the Manual, as may be updated or supplemented by memoranda, bulletin, email or other similar mechanism that together with the Manual, contain the mandatory and suggested procedures and specifications that are prescribed for the Franchised Business.

**n.  Participation.**  You agree that the services of the Franchised Business will be provided under your direct supervision and control and/or under the direct supervision and control of a full-time general manager who has been approved by, and not later disapproved by Liberty.  Liberty will not approve a general manager prior to their successful completion of EOT.

**o.  Return Check.**  You must prepare each income tax return accurately and in accordance with federal, state and local laws.  You must check each return thoroughly.

**p.  Tax School.**  If you complete EOT before September 1 of the year of the Effective Date of this Agreement, and in any event during every year after your first Tax Season, you must conduct an intensive 6 to 10 week tax course in the period of September through December in accordance with the specifications in the Manual. Additionally, you must conduct a one-week tax course during every January, including the January of your first (1st) Tax Season, in accordance with the specifications in the Manual.

**q.  Employee Training.**  You shall conduct and require each of your employees to attend an employee policy and procedure training course as specified by Liberty.  You are solely responsible for

hiring, firing, compensating, paying applicable payroll taxes and day to day supervision and control over your employees.

**r.   Customer Service.**   You shall employ and train sufficient personnel to accommodate all customers without undue delay.   You shall provide all services and abide by all customer service policies described in the Manual, including, but not limited to, the money back guarantee.   You must operate in a manner that protects the goodwill, reputation and Marks of the Franchised Business.

**s.   Office Condition.**   You shall maintain offices that are neat and professional in appearance. Further, you may not offer products or services through your Liberty offices other than the franchise services authorized here (i.e., tax preparation, electronic filing, and Financial Products, all processed and reported through Liberty's systems) without Liberty's prior written approval.

**t.   Supplies and Furniture.**   You agree that in order to establish a standard and consistent delivery of Liberty Tax services, certain items must be used in the operation of the Franchised Business.   You must use the items set forth as required in the Manual (e.g. client envelopes and folders, interview worksheets, interior signs sets).   You are responsible for the cost of all items needed to conduct the Franchised Business including, but not limited to, supplies, furniture, equipment, leasing and real estate costs.

**u. Laws and Regulations.**   You agree to comply with all federal, state and local laws, regulations, ordinances and the like. You will abide by all legal requirements and be solely responsible for securing any necessary permits, certificates, licenses and consents to operate your business.

**v.   Audits.**   If the IRS or any governmental agency audits or investigates your Liberty Tax operations, or otherwise requires that you provide documents to the IRS related to the Franchised Business, you agree to notify Liberty promptly upon receiving notice of the audit, investigation or request for documents. You agree to promptly provide Liberty with the findings of any audit or investigation.

**w.   EFIN.**   You must obtain by January 2 of your first Tax Season and maintain throughout the entire term of this Agreement, an EFIN from the IRS.   You hereby authorize the IRS and any state tax authority to disclose to Liberty the reasons for any EFIN denial or suspension and to provide Liberty with copies of all EFIN application materials, suspension and denial notices.

**x.   Site Selection and Leases.**   As described in Section 5.c., Liberty provides guidance to you regarding the selection of the location of your office and all office locations must be approved by Liberty prior to your execution of a lease for that site.   You are required to attempt to ensure that any lease entered into for an approved location contains a provision that the lessor consents to an assignment of the lease to Liberty with the right to sublease at Liberty's option. You agree to provide Liberty with a copy of the lease for each approved location within seven (7) days of execution.

## 7. REPORTS AND REVIEW

**a.   Gross Receipt Report.**   You must send Liberty a Gross Receipt report in the manner and form and at the times Liberty specifies.   Presently, you must report your Gross Receipts on the fifth (5th) of the month for Gross Receipts received during the prior month.

**b.   Profit and Loss.**   By May 30 of each year, you must send Liberty an unaudited profit and loss statement of the Franchised Business, in the manner and form Liberty specifies, for the twelve (12) month period ending April 30.

**c.   Review.**  You agree to permit Liberty and/or Liberty's agents the right to enter your Liberty Tax offices during normal business hours, without prior notice, and inspect your operations and inspect and copy all of your paper and electronic business records related to the Franchised Business and any other operations taking place at your Franchised Business.  This includes, but is not limited to, the right to inspect and copy all tax returns and bank statements that may be indicative of revenues from the Franchised Business.  Liberty also has the right to require that you implement a plan to resolve issues that Liberty discovers.

**d.   Mail Reviews.**  If Liberty requests a copy of your customer receipts (paper and/or electronic) or any other business records, including, but not limited to customer taxpayer records related to the Franchised Business, you must send Liberty these records at your expense within five (5) days of receiving Liberty's request.

**e.   Electronic Review.**  Liberty may cause programs to run on your computer systems that may send information to Liberty.  Liberty agrees that the use of such programs will not unreasonably interfere with your operation of the Franchised Business and you agree to allow such programs to run without interference by you.  You hereby grant Liberty the right to access the computer systems in your office and authorize Liberty to obtain any and all information related to the Franchised Business. You acknowledge that Liberty will use information obtained from your computer system to make business decisions.

**f.   Costs of Review.**  Depending on the circumstances, you may be responsible for the costs of a review as more fully set forth in Section 4(p).

**g.   Background Information.**  You authorize Liberty to obtain background information relating to your employment, credit and financial history and criminal and driving records during the term of this Agreement.

## 8. TERMINATION

**a.   Nonrenewal.**  You may terminate this Agreement by not renewing; that is by not notifying Liberty in writing of your desire to renew at least one hundred eighty (180) days prior to the expiration of this Agreement.  If you terminate pursuant to this Section, you must still comply with all of the post-termination provisions of this Agreement.

**b.   Termination Without Notice and Opportunity to Cure.**  Liberty may terminate this Agreement without notice and the opportunity to cure for any of the following reasons:

(i)   If you become insolvent, are unable to pay debts as they come due or take any steps to seek protection from creditors, or if a receiver (permanent or temporary) is appointed by a creditor or a court of competent authority, or if you make a general assignment for the benefit of creditors;

(ii)   If a final judgment of record against you or your Franchised Business remains unsatisfied for thirty (30) days or longer;

(iii)   If we determine that you, or someone acting under your supervision and control, has committed a material violation of any law, ordinance, rule or regulation of a governmental agency or department reasonably associated with the operation of the Franchised Business;

(iv) If you abandon the Franchised Business or discontinue the active operation of the Franchised Business for three (3) business days during any Tax Season or seven (7) business days otherwise, except where active operation was not reasonably possible;

(v) If you fail to open for business in the Territory by January 2 or January 8 of any year, as specified pursuant to Section 6.d.;

(vi) If you operate any offices or advertise outside the Territory without Liberty's permission;

(vii) If you fail to meet the Target Volume specified in Section 6.f. above in the Territory during your fifth Tax Season or in any Tax Season thereafter;

(viii) If you fail to use the software, electronic filing services or Financial Products Liberty provides or recommends;

(ix) If you do not obtain an EFIN from the IRS for each office in the Territory by January 2 of your first Tax Season or if any of such EFINs are suspended for any reason at any time thereafter;

(x) If you include a materially false representation or omission of fact in your Confidential Franchise Application to Liberty or if you under-report Gross Receipts, falsify financial data, make a false submission with regard to any required reports or otherwise commit an act of fraud with respect to your acquisition or operation of the Franchised Business or your rights or obligations under this Agreement;

(xi) If you commit three (3) or more breaches of this Agreement, the Operations Manual, or any other agreement (including promissory notes) with Liberty, in any twelve (12) month period regardless of whether such breaches were cured after notice; or

(xii) If you fail to timely execute all documents necessary for renewal.

**c. Termination with Notice and Opportunity to Cure.** No fewer than seven (7) days after Liberty has sent you notice of your opportunity to cure, Liberty may terminate this Agreement if:

(i) You violate any term or condition of this Agreement, the Operations Manual, or any other agreement with Liberty;

(ii) Any amount owing to Liberty, whether related to the Territory or not, is more than thirty (30) days past due;

(iii) You fail to comply with IRS standards applicable to e-file providers as stated in IRS Publication 1345 or another or successor IRS publication applicable to e-file providers; or

(iv) You are more than sixty (60) days in default of any loan, lease or sublease agreement with a third party, affecting the Franchised Business.

## 9. POST-TERMINATION OBLIGATIONS

If this Agreement expires, is not renewed or is terminated for any reason by any party, including a sale of the Franchised Business, you must immediately:

**a.** Sell to Liberty (if Liberty elects pursuant to Section 11) any or all equipment, signs, trade fixtures, and furnishings used in the Franchised Business, or if Liberty does not so elect, remove all Marks or other distinguishing indicia from all of your offices and other premises; and

**b.** Stop identifying yourself as a Liberty Tax franchisee, never hold out as a former Liberty Tax franchisee and forever cease the use of any of the Marks or any other marks that may be confused with the Marks; and

**c.** Stop using all literature and forms received from Liberty and other items bearing the Marks; and

**d.** Pay to Liberty all amounts owing to Liberty, whether related to the Territory or not; and

**e.** Transfer to Liberty all telephone numbers, listings and advertisements used in relation to the Franchised Business and deliver to Liberty copies of such documents of transfer; and

**f.** Assign to Liberty (if Liberty elects), and upon lessor's consent, any interest that you have in any lease, sublease or any other agreement related to the Franchised Business; and

**g.** Deliver to Liberty any original and all copies, including electronic copies and media, of lists and other sources of information containing the names, addresses, e-mail addresses, or phone numbers of customers of the Franchised Business; and

**h.** Deliver to Liberty any original and all copies, including electronic copies and media, containing customer tax returns, files, and records; and

**i.** Deliver to Liberty the copy of the Manual and any updates which Liberty loaned to you; and

**j.** Cancel all fictitious name listings which you have filed that utilize any of the Marks; and

**k.** Adhere to all applicable provisions contained herein including, but not limited to, the post-term covenants not to compete and not to solicit.

## 10. ADDITIONAL IN-TERM AND POST-TERM COVENANTS

**a. In-Term Covenant Not to Compete.** During the term of this Agreement, you agree not to directly or indirectly, for a fee or charge, in the United States or Canada, prepare or electronically file income tax returns, or offer Financial Products, except in your capacity as a Liberty Tax Service franchisee using the Liberty Tax Service system to offer such products and services.

**b. Post-Term Covenant Not to Compete.** For a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchised Business, or your removal as a Signator to this Agreement, you agree not to directly or indirectly, for a fee or charge, prepare or electronically file income tax returns, or offer Financial Products, within the Territory or within twenty-five (25) miles of the boundaries of the Territory.

**c. Liquidated Monetary Damages.** If you fail to comply with either of the above covenants not to compete, you agree to pay Liberty, as partial liquidated monetary damages, royalties and advertising fees as set forth in Section 4 of this Agreement against the greater of: (1) the total Gross Receipts during your last fiscal year (May 1- April 30) of operation for each Territory in which you are in

breach; or (2) the total revenue you received in breach of a covenant not to compete. The greater of these two dollar figures shall be multiplied by two (2) to give consideration to lost, repeat, and referral business to Liberty. You acknowledge that any breach of the covenants not to compete causes damage to the integrity of Liberty's franchised system, loss of franchisee and customer goodwill and irreparable harm. You specifically acknowledge that the full measure of these damages is greater than that specified herein.

**d. Covenant Not to Solicit.** For a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchised Business, or your removal as a Signator to this Agreement, you agree that you will not, within the Territory or within twenty-five (25) miles of the boundaries of the Territory, directly or indirectly solicit any person or entity served by any of your prior Liberty offices within the last twelve (12) months that were a Liberty franchisee, for the purpose of offering such person or entity, for a fee or charge, income tax preparation, electronic filing of tax returns, or Financial Products. You further agree for a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchised Business, or your removal as a Signator to this Agreement, not to employ or solicit for employment without Liberty's prior written consent any of Liberty's employees or those of any other of Liberty's franchisees, or induce any such employee to leave his or her employ.

**e. Covenant Not to Lease.** You agree that during the term of this Agreement, you will not lease, sub-lease, assign or guaranty a lease in the Territory to or for a person or entity who will offer income tax preparation at such an office. You also agree that upon the termination or expiration of this Agreement, if Liberty or a duly authorized Liberty franchisee desires to use any of your former Liberty office locations in the Territory, you will use reasonable good faith efforts to help Liberty secure possession of the office locations through a lease assignment or otherwise. Otherwise, you agree to use reasonable, good faith efforts to ensure that, for a twenty-four (24) month period after non-renewal or termination of this Agreement, no person or entity will offer income tax preparation at the properties where your former Liberty offices were located. "Good faith efforts" include a duty not to sub-lease or assign the leases of your office location to a person or entity who will offer income tax preparation at such office locations.

**f. No Harmful Acts.** You agree not to disparage Liberty or its current and former employees or directors. During the term of this Agreement, you also agree not to do any act harmful, prejudicial or injurious to Liberty.

**g. Section 10 Conditions Required for Grant of Franchise.** You hereby acknowledge that the qualifications to be a Liberty franchisee are special, unique and extraordinary, and that Liberty would not enter into this Agreement without the inclusion of the conditions set forth in Section 10.

**h. Waivers.** You acknowledge and agree that the provisions of Section 10 are reasonable, valid and not contrary to the public interest. You waive all defenses to the strict enforcement of Section 10. You further agree that Liberty is entitled to a temporary restraining order, preliminary and/or permanent injunction for any breach of duties under any of the non-monetary obligations of Sections 9 and 10. You hereby waive any requirement that Liberty post a bond related to any temporary restraining order or injunctions requested as a result of an alleged violation of Sections 9 and 10.

**i. Survival.** The covenants contained in Section 10 shall survive any termination or expiration of this Agreement.

**j. Severability.** If any covenant or provision within Section 10 is determined to be void or unenforceable, in whole or in part, it shall be deemed severed and removed from this Agreement and

shall not affect or impair the validity of any other covenant or provision of this Agreement. Further, these obligations are considered independent of any other provision in this Agreement, and the existence of any claim or cause of action by either party to this Agreement against the other, whether based upon this Agreement or otherwise, shall not constitute a defense to the enforcement of these obligations.

## 11. OPTION TO PURCHASE ASSETS

Upon termination or expiration of this Agreement, you hereby grant Liberty or its assignee the option to purchase from you some or all of the assets (including, but not limited to, supplies, equipment, signs, furnishings and fixtures) of the Franchised Business. Liberty may exercise this option by transmitting notice to you within thirty (30) days from the effective date of expiration or termination. If Liberty elects to exercise this option, the purchase price for the assets of the Franchised Business, will be the "adjusted book value" as described below. Liberty will have the right to set off and reduce the purchase price by any and all amounts owed by you to Liberty or any of Liberty's affiliates. The "adjusted book value" is the book value of the assets of the Franchised Business as listed on the balance sheet in the financial statements of the Franchised Business as of the date of the termination or expiration. There shall be no allocation for goodwill or any similar adjustment in the adjusted book value.

## 12. CONFIDENTIAL INFORMATION

**a. Disclosure.** Liberty possesses confidential information including, but not limited to, methods of operation, service and other methods, techniques, formats, specifications, procedures, information, systems, knowledge of and experience in operating and franchising offices, customer information and marketing information ("Confidential Information"). Liberty may disclose some or all of the Confidential Information to you and your representatives while you operate the Franchised Business. During the term of this Agreement and following the expiration or termination of this Agreement, you covenant not to directly or indirectly communicate, divulge, or use any Confidential Information for your personal benefit or the benefit of any other person or legal entity except as specifically provided by the terms of this Agreement or permitted by Liberty in writing prior to disclosure. Upon the transfer, expiration, termination or nonrenewal of this Agreement, you agree that you will never use or disclose, and will not permit any of your representatives to use or disclose, Liberty's Confidential Information in any manner whatsoever, including, without limitation, in the design, development or operation of any business substantially similar to the Franchised Business. This provision shall not apply to information that: (i) at the time of disclosure is readily available to the public; (ii) after disclosure becomes readily available to the trade or public other than through breach of this Agreement; (iii) is subsequently lawfully and in good faith obtained by you from an independent third party without breach of this Agreement; (iv) was in your possession prior to the date of our disclosure to you; or (v) is disclosed to others in accordance with the terms of a prior written authorization between you and Liberty. The protections granted in this Section shall be in addition to all other protections for Confidential Information provided by law or equity.

**b. Interest.** You will acquire no interest in Liberty's Confidential Information, but are provided the right to use Confidential Information disclosed to you for the purposes of developing and operating the Franchised Business pursuant to this Agreement. You acknowledge that it would be an unfair method of competition to use or duplicate any Confidential Information other than in connection with the operation of the Franchised Business. No part of the Liberty Tax franchise system nor any document or exhibit forming any part thereof shall be distributed, utilized or reproduced in any form or by any means, without Liberty's prior written consent.

**c. Use.** You agree that you will: (i) refrain from using Confidential Information for any purpose other than the operation of the Franchised Business pursuant to this Agreement; (ii) maintain absolute confidentiality of Confidential Information during and after the term of this Agreement; (iii) not make unauthorized copies of any portion of Confidential Information; and (iv) adopt and implement all reasonable procedures, including, but not limited to, those required by Liberty, to prevent unauthorized use of or disclosure of Confidential Information, including, but not limited to, restrictions on disclosure to your employees and the use of nondisclosure and non-competition clauses in employment agreements with employees that have access to Confidential Information.

## 13. INDEPENDENT CONTRACTOR

You and Liberty are independent contractors to each other. Neither you nor Liberty are an agent, fiduciary, partner, employee, or a participant in a joint venture and neither you nor Liberty have the authority to hold out as such to third parties. You do not have any authority to bind or obligate Liberty. Liberty is not and will not be liable for any act, omission, debt, or other obligation of yours.

You are responsible for all claims, demands, losses, damages and/or contractual liability to third parties related to the operation of the Franchised Business. You agree to defend, indemnify and hold Liberty and its employees harmless from all claims, demands, losses, damages, and/or contractual liability to third parties.

## 14. DEATH OR INCAPACITY

**a. Assistance and Reimbursement.** In the event of the death or incapacity of Franchisee, Liberty is entitled, but not required, to render assistance to maintain smooth and continued operation of the Franchised Business. Liberty shall be entitled to reimbursement from Franchisee or Franchisee's estate for reasonable expenditures incurred.

**b. Time Requirements.** Pursuant to this Section, death or incapacity shall not be grounds for termination of this Agreement unless:

i) Franchisee or his/her legal representative fails for a period of one hundred eighty (180) days after such death or incapacity to commence action to assign this Agreement according to controlling state law regarding the affairs of a deceased or incapacitated person and the terms of this Agreement; or

ii) Such assignment is not completed within one (1) year after death or incapacity.

**c. Termination.** Liberty shall have the right to terminate this Agreement if one of the conditions listed in 14(b) are not satisfied within the time frame provided. Nothing in this Section shall be construed to limit the provisions of Section 8 regarding termination. Further, the terms and conditions of Section 15 apply to a transfer upon death or incapacity.

## 15. ASSIGNABILITY AND FIRST RIGHT OF REFUSAL

**a. Assignability Generally.** Liberty may assign this Agreement to an assignee who agrees to remain bound by its terms. Liberty does not permit a sub-license of the Franchise. Your interest under this Agreement or your ownership in the Franchise may be transferred or assigned only if you comply with the provisions in this Section. No interest may be transferred unless you are in full compliance with this Agreement and current in all monies owed to Liberty. Pursuant to Liberty's request, any

transfer of an ownership interest in this Agreement must be joined by all signatories to this Agreement, except in the case of death or legal disability.

**b.  First Right of Refusal.**  If you have received and desire to accept a signed, bona fide offer to purchase or otherwise transfer the Franchise or any interest in the Franchise, Liberty shall have the option ("Right of First Refusal") to purchase the Franchise or interest.  You shall offer the Right of First Refusal by providing written notice to Liberty and including a copy of the signed offer to purchase that you received (collectively "Notice").  Liberty shall have the right to purchase the Franchise or interest in the Franchise for the price and upon the terms set out in the Notice; however, Liberty may substitute cash for any non-cash form of payment proposed and Liberty shall have sixty (60) days after the exercise of Liberty's Right of First Refusal to close the purchase.  Liberty will notify you in writing within fifteen (15) days of receipt of the Notice if it plans to exercise the Right of First Refusal.  Upon the transmission of notice by Liberty that it plans to exercise the Right of First Refusal, there shall immediately arise between Liberty and Franchisee, or its owners, a binding contract of purchase and sale at the price and terms contained in the Notice previously provided by you.

**c.  Transfer to Controlled Entity.**  A transfer to a "Controlled Entity" shall not trigger the Right of First Refusal.  A "Controlled Entity" is an entity in which Franchisee is the beneficial owner of 100% of each class of voting ownership interest.  At the time of the desired transfer of interest to a Controlled Entity, you must notify Liberty in writing of the name of the Controlled Entity and the name and address of each officer, director, shareholder, member, partner, or similar person and their respective ownership interest.  Each such person of the Controlled Entity shall sign the amendment and release forms and/or franchise agreement as required by Liberty at the time of transfer.  Currently, Liberty does not charge a transfer fee for this type of transaction.

**d.  Transfer of Interest Within Franchisee.**  A transfer of interest within a Franchisee that is an entity shall not trigger the Right of First Refusal provided that only the percentage ownership is changing and not the identity of the owners.  At the time of the desired transfer of interest within an entity, you must notify Liberty in writing of the name and address of each officer, director, shareholder, member, partner or similar person and their respective ownership interest prior to and following the proposed transfer.  Each such person of the Controlled Entity shall sign the amendment and release forms and/or franchise agreement as required by Liberty at the time of transfer.  Further, if the transfer of interest results in a majority ownership change, you must pay to Liberty the transfer fee required at the time of transfer.

**e.  Right of First Refusal Not Exercised By Liberty.**  If Liberty does not exercise the Right of First Refusal, you may transfer the Franchise or ownership interest therein according to the terms set forth in the Notice, provided that you satisfy the conditions of Sections 15(f) below and complete the sale within ninety (90) days from the date that Liberty received Notice from you.  If you do not conclude the proposed sale transaction within this ninety (90) day period, Liberty's Right of First Refusal shall continue in full force and effect.

**f.  Additional Requirements and Restrictions Regarding Transfers.**

    i)  The proposed transferee(s) must complete Liberty's franchise application and pass Liberty's application screening in place at the time of transfer;

    ii)  The proposed transferee(s) must sign the Liberty amendment forms and/or franchise agreement in place at the time of transfer, and must personally assume and be bound by all of the terms, covenants and conditions therein;

iii) The proposed transferee(s) must attend and successfully complete EOT and HOT;

iv) You shall sign the transfer and release forms required by Liberty at the time of transfer and pay the transfer fee described in Section 4.i. of this Agreement; and

v) Except as to approved transfers within the Liberty system as described in this Section, you may not give, transfer or sell all or substantially all of the assets of your Franchised Business during the term of this Agreement, or for a two (2) year period after its expiration or termination, to a person or entity who might be reasonably expected to use any such assets to offer income tax preparation in the Territory or within ten (10) miles of the boundaries of the Territory.

## 16. NON-WAIVER OF BREACH

The failure of either party hereto to enforce any of the terms or conditions of this Agreement shall not be deemed a waiver of such terms or conditions or of either party's rights thereafter to enforce each and every term and condition of this Agreement.

## 17. GOVERNING LAW

**a. Virginia Law.** This Agreement is effective upon its acceptance in Virginia by Liberty's authorized officer. Virginia law governs all claims that in any way relate to or arise out of this Agreement or any of the dealings of the parties hereto. However, the Virginia Retail Franchising Act does not apply to any claims by or on your behalf if the Territory shown on Schedule A is outside of Virginia.

**b. Jurisdiction and Venue.** In any suit brought by Liberty that in any way relates to or arises out of this Agreement or any of the dealings of the parties hereto, you consent to venue and personal jurisdiction in the state and federal court of the city or county of Liberty's National Office (presently Virginia Beach, Virginia state courts and the United States District Court in Norfolk, Virginia). In any suit brought against Liberty, including Liberty's present or former employees or agents, that in any way relates to or arises out of this Agreement or any of the dealings of the parties hereto, venue shall be proper only in the federal court district and division located nearest Liberty's National Office (presently the U.S. District Court in Norfolk, Virginia), or if neither federal subject matter nor diversity jurisdiction exists, in the city or county state court where Liberty's National Office is located (presently the City of Virginia Beach, Virginia).

**c. Jury Waiver.** In any trial between any of the parties hereto, including present or former employees or agents of Liberty, that in any way relates to or arises out of this Agreement or any of the dealings of the parties hereto, you and Liberty agree to waive the rights to a jury trial and instead have such action tried by a judge.

**d. Class Action Waiver.** You agree that any claim you may have against Liberty, including Liberty's past or present employees or agents, shall be brought individually and you shall not join such claim with claims of any other person or entity or bring, join or participate in a class action against Liberty.

**e. No Punitive Damages.** In any lawsuit, dispute or claim between or against any of the parties hereto, including present or former agents or employees of Liberty's, that in any way relates to or

arises out of this Agreement or any of the dealings of the parties hereto, you and Liberty agree to waive the rights, if any, to seek or recover punitive damages.

**f. Area Developers.** If your Territory is or becomes located in an Area Developer area, you agree not to bring any claim, including a lawsuit, against the Area Developer, or its owners, employees or independent contractors, except as to a claim unrelated to the Liberty franchise, such as an automobile accident. Area Developers are a third party beneficiary of this clause. Further, you agree that if you breach this clause, you will pay to Liberty and/or the Area Developer all attorney fees and other costs that Liberty and the Area Developer incur to defend the Area Developer in such an action, regardless of who prevails.

**g. Survival.** Any provisions of this Agreement that by their nature extend beyond the expiration or termination of this Agreement, shall survive termination or expiration of this Agreement and be fully binding and enforceable as though termination or expiration had not occurred.

## 18. MODIFICATION

No modifications to this Agreement will have any effect unless such modification is in writing and signed by you and by Liberty's authorized officer. However, Liberty may modify the provisions of the Operations Manual, without your consent.

## 19. RELEASE OF PRIOR CLAIMS

By executing this Agreement, the undersigned entity, if any, and individuals, on behalf of yourselves and your heirs, legal representatives, successors and assigns, and each assignee of this Agreement, hereby forever release and discharge Liberty, its past and present employees, agents, area developers, officers and directors, including Liberty's parent, subsidiary and affiliated corporations, their respective past and present employees, agents, officers and directors, from any and all claims relating to or arising out of any franchise agreement between the parties executed prior to the date of this Agreement, and all other claims relating to any dealings between any of the parties. However, this release does not apply to Liberty's renewal obligations the same or similar to those in Section 2.b. above, as contained in any prior or other franchise agreement.

## 20. NOTICES

You shall give any notice or request hereunder by mail or courier, postage fully prepaid, delivered personally to Liberty's CEO, at Liberty's National Office, presently 1716 Corporate Landing Parkway, Virginia Beach, Virginia, 23454, Telephone: (757) 493-8855. Liberty may also give any such notice to you in the same manner at the address indicated below the Franchisee's signature on this Agreement, or such other more current address as Liberty may have for you. Liberty may also give notice to you by e-mail.

## 21. FULL UNDERSTANDING

This Agreement is the entire agreement between you and Liberty. This Agreement supersedes all other prior oral and written agreements and understandings between you and Liberty with respect to the subject matter herein. Nothing in this or in any related agreement, however, is intended to disclaim the representations Liberty made in the Franchise Disclosure Document Liberty furnished to you.

## 22.  ACKNOWLEDGMENTS

You acknowledge that you have read Liberty's franchise disclosure document and this Agreement and that you are familiar with their contents.  You acknowledge that you have independently investigated the business offered hereunder and base your decision to purchase solely on such investigation.  Except as may be stated in Item 19 of Liberty's Franchise Disclosure Document, you acknowledge that no person is authorized to make and no person has made any representations to you as to the actual, projected or potential sales, volumes, revenues, profits or success of any Liberty Tax franchise.  You further acknowledge and agree that you are not a third party beneficiary to any agreement between Liberty and any other franchisee.

## 23.  GUARANTY

The Franchisee named at the top of the following page agrees to abide by the terms of this Agreement.  The signature of an individual or individuals constitutes their personal agreement to such terms.  The signature of an individual or individuals on behalf of an entity constitutes the entity's agreement to such terms.

In addition, the signatures of all individuals on this Agreement, in any capacity, also constitute their personal joint and several agreement to perform all the obligations in and relating to this Agreement, including, but not limited to, the obligations stated in **section 17 above concerning Governing Law, including but not limited to, the application of Virginia Law, the Jurisdiction and Venue clause, the Jury Waiver, the Class Action Waiver, and the limitation to Compensatory Damages only,** the obligation to make payments specified herein, pay any other promissory notes and other debts due to Liberty, and pay for products later ordered from Liberty.  All Signators waive any right to presentment, demand or notice of non-performance and the right to require Liberty to proceed against the other Signators.

## 24.  COUNTERPARTS

This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, but such counterparts shall constitute one and the same instrument.

## 25.  SEVERABILITY

If any covenant or provision within this Agreement is determined to be void or unenforceable, in whole or in part, it shall be deemed severed and removed from this Agreement and shall not effect or impair the validity of any other covenant or provision of this Agreement and no covenant or provision of this Agreement shall be deemed to be dependent upon any other unless specifically expressed herein.

## 26.  HEADINGS

The headings of the various sections of this Agreement have been inserted for reference only and shall not be deemed to have any legal effect or meaning.

Franchisee: _Nora Garcia & Maribel Gorosave_   Entity Number: _5205_

**SIGNATORS:**

By: _Maribel Gorosave_
(Signature)

_Maribel Gorosave_
(Printed Name)

Title:_____

Address: _937 Lee Ave_

_Calexico CA 92231_

Ownership Percentage:_____%

By:_____
(Signature)

_____
(Printed Name)

Title:_____

Address:_____

_____

Ownership Percentage:_____%

By: _Nora Garcia_
(Signature)

_Nora Garcia_
(Printed Name)

Title:_____

Address: _1943 Annandale Way_

_Pomona CA 91767_

Ownership Percentage:_____%

By:_____
(Signature)

_____
(Printed Name)

Title:_____

Address:_____

_____

Ownership Percentage:_____%

**JTH TAX, INC. d/b/a**
**LIBERTY TAX SERVICE**

By:_____
    John Hewitt, CEO

Effective Date: _12/19/13_

## SCHEDULE "A" TO THE FRANCHISE AGREEMENT

### Territory

The Franchise Territory* is as follows:

CA376(BrawleyCA-1)
NORTH of and including Keystone Rd. from SR-115 to McConnell Rd.
WEST of and excluding McConnell Rd. from Keystone Rd. to E Keystone Rd.
NORTH of and including E Keystone Rd. continuing onto NORTH of and including W Keystone Rd. from McConnell Rd. to Forrester Rd.
EAST of and including Forrester Rd. from W Keystone Rd. to Baughman Rd.
NORTH of and including Baughman Rd. from Forrester Rd. to S H St.
EAST of and including S H St. from Baughman Rd. to W Main St.
SOUTH of and excluding S Main St. continuing onto SOUTH of and excluding E Main St. continuing onto SOUTHWEST of and excluding Miller Ave. from S H St. to Boarts Rd.
EAST of and excluding Boarts Rd. continuing onto SOUTH of and excluding Boarts Rd. from Miller Ave. to Kalin Rd.
EAST of and including Kalin Rd. from Boarts Rd. to W Rutherford Rd.
SOUTH of and excluding W Rutherford Rd. continuing onto SOUTH of and excluding Rutherford Rd. from Kalin Rd. to West Rd.
WEST of and excluding West Rd. from Rutherford Rd. to Ben Hulse Hwy.
SOUTH of and excluding Ben Hulse Hwy. from West Rd. to SR-115.
WEST of and excluding SR-115 from Ben Hulse Hwy. to Keystone Rd.



*Note: When a Territory description includes a road, avenue, street, parkway, highway, route or similar roadway, the Territory includes the U.S. Postal addresses assigned to either side of the roadway. When a Territory description excludes a road, avenue, street, parkway, highway, route or similar roadway, the Territory excludes the U.S. Postal addresses assigned to either side of such roadway. If a map of the Territory is attached, the map approximates the Territory, but the above legal description controls as to the Territory's precise boundaries.

## CALIFORNIA ADDENDUM
## TO THE FRANCHISE AGREEMENT

This Addendum forms a part of the Franchise Agreement dated _12/19/13_ , between Liberty Tax Service ("Liberty") and _Nora Garcia + Daniel_ , the franchisee ("you" or "your"). To the extent this Addendum shall be deemed to be inconsistent with any of the terms or conditions of the Franchise Agreement or its Exhibits, the terms of this Addendum shall govern.

**Section 6.u.** of the Franchise Agreement titled "Obligations of Franchisee," "Laws and Regulations" is supplemented to include the following:

You acknowledge that you have read, understand and agree to abide by the Judgment and Permanent Injunction entered by the Superior Court of the State of California in the case of *The People of the State of California v. JTH Tax, Inc. (d/b/a Liberty Tax Service)*, Docket Number CGC-07-460778, requiring that Liberty and you, its franchisee, abide by certain advertising requirements and, in particular, not disseminate or cause to be disseminated any advertisement that directly or indirectly represents a refund anticipation loan as a client's actual refund ("California Injunction"). You further agree to remit to the Attorney General of California a fine in the amount of $15,000 in the event you commit two breaches of the terms of the California Injunction and agree to hold Liberty harmless for fines assessed against you related to your violation of the California Injunction.

**Section 8.b (iii)** of the Franchise Agreement regarding termination without notice or opportunity to cure for violation of laws or regulations is supplemented to specifically include the following:

Breach of the California Injunction and/or your failure to remit required fines to the Attorney General of California for your violation of the California Injunction is cause for immediate termination.

**Section 19** of the Franchise Agreement titled "Release of Prior Claims" is amended to include the following language:

Unknown or Unsuspected Consequences- The parties understand and acknowledge that this Section applies to and includes all unknown or unsuspected consequences or results arising from or relating to the transactions, occurrences, or agreements referred to in this Section. You represent and warrant that you have read the contents of California Civil Code §1542, which provides as follows:

"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

YOU EXPRESSLY WAIVE ANY AND ALL RIGHTS AND BENEFITS UNDER CALIFORNIA CIVIL CODE §1542.

Nature of Release- Each party acknowledges that it has read this Section, that it fully understands the contents of this Section, and that THIS IS A SPECIFIC RELEASE GIVING UP ALL RIGHTS WITH RESPECT TO THE TRANSACTIONS OR OCCURRENCES THAT ARE BEING RELEASED UNDER THIS SECTION.

As required by law, the above Release shall not apply to any liabilities arising under the California Franchise Investment Law or the California Franchise Relations Act.

**FRANCHISEE:**

By: *Maribel Garcia*

By: *Nora Garcia*

**JTH Tax, Inc. d/b/a Liberty Tax Service**

By: _____
        John Hewitt, CEO

## EXHIBIT C
## PROMISSORY NOTE- SOLE PROPRIETORSHIP OR PARTNERSHIP

$ 32,000.00                                            Date  12/19/13
                                                      Virginia Beach, Virginia

FOR VALUE RECEIVED, the undersigned Maker(s) (the "undersigned") promises to pay to the order of JTH Tax, Inc., d/b/a Liberty Tax Service ("Liberty"), at 1716 Corporate Landing Parkway, Virginia Beach, VA 23454, or at the holder's option, at such other place as may be designated by holder, the amount of Thirty Two Thousand Dollars ($32,000.00), together with interest at the rate of Twelve Percent (12%) per annum on the unpaid balance computed from the date provided above.

This Note shall be payable as follows:

        February 28, 2014: Interest Only Payment
        February 28, 2015: $8,000.00 plus interest;
        February 28, 2016: $8,000.00 plus interest;
        February 28, 2017: $8,000.00 plus interest;
        February 28, 2018: $8,000.00 plus all remaining interest

However, pursuant to Liberty's Automatic Payment Transfer program, all of the tax preparation, transmitter, software, and electronic filing fees, and any rebates that the undersigned receive from bank products or customers who purchase bank products, shall initially be paid to Liberty. From these fees and any rebates, Liberty will deduct monies that the undersigned owes to Liberty and deduct and hold monies to apply to upcoming amounts due to Liberty, and remit any remaining balance to the undersigned. All such payments shall be applied first to past-due interest outstanding and then to principal. Interest under this Note will be calculated on the basis of a 360-day year consisting of Twelve (12) 30-day months.

The undersigned represents and warrants to Liberty that the loan evidenced by this Note is being made for business, commercial or investment purposes. The undersigned further represents and warrants that the execution of this Note and the performance of the obligations stated herein have been duly authorized by all necessary action in accordance with all applicable law. The undersigned may prepay this Note, in whole or in part, without penalty, at any time.

The undersigned agrees to submit monthly financial information to Liberty including, but not limited to, income statements, balance sheets, and supporting documents, as Liberty specifies and in the format Liberty provides.

The undersigned agrees to pay all attorneys' fees and other costs and expenses that Liberty may incur in connection with the collection or enforcement of this Note or the preservation or disposition of any collateral for the payment of this Note.

Each person liable on this Note in any capacity, whether as maker, endorser, surety, guarantor or otherwise, and any holder (collectively hereafter "Obligor"), waives the benefit of the homestead exemption and of all other exemptions available to Obligor and also waives presentment, demand, protest, notice of dishonor, notice of acceleration of maturity, diligence in taking any action to collect sums owing hereunder and all other notices of every kind and nature to which any Obligor would otherwise be entitled under the applicable law. Each Obligor agrees that Liberty may take any one or more of the following actions, on one or more occasions, whether before or after the maturity of this Note, without any notice to such Obligor, without any further consent to such actions, and without releasing or discharging such Obligor from liability on the Note: (a) extension or extensions of the time of payment of any principal,

1

interest or other amount due and payable under this Note; (b) renewal of this Note, in whole or in part; (c) full or partial release or discharge from liability under this Note of any other Obligor; (d) waiver of any default under this Note or other agreement between Liberty and any Obligor relating to the indebtedness evidenced by this Note; or (e) agreement with the undersigned changing the rate of interest or any other term or condition of this Note.

TIME IS OF THE ESSENCE with regard to the payment of any amounts due under this Note and the performance of the covenants, terms and conditions of this Note.

Any one or more of the following shall constitute an event of default under this Note: (a)default in the payment of any installment or payment of principal, interest, or other amounts due and payable under this Note; (b) the death, dissolution, merger, consolidation or termination of existence of any Obligor; (c) any default by an Obligor in the performance of, or compliance with, any provision in this Note or other agreement, document or instrument to which any Obligor and Liberty are parties; (d) any Obligor is unable to pay debts as they become due, or is or becomes insolvent or makes an assignment for the benefit of creditors; (e) any Obligor files or becomes the subject of any petition or other pleading for relief under federal bankruptcy laws or any state insolvency statute; (f) a receiver is appointed for, or a writ or order of attachment, levy or garnishment is issued against, any Obligor or the property, assets or income of any Obligor; (g) if any representation or warranty made by or on behalf of the undersigned in any agreement between the undersigned and Liberty is false, misleading or incomplete in any material respect when made (or deemed to have been made); or (h) any termination, sale or other action whereby any Obligor ceases to hold ownership rights to the business to which this Notes relates.

If an event of default shall occur or if the undersigned shall fail to pay this Note in full at maturity, the entire unpaid balance of this Note and all accrued interest shall become immediately due and payable, at the option of Liberty, without notice or demand to any Obligor. The remedies provided in this Note upon default and in other agreement between Liberty and any Obligor are cumulative and not exclusive of any other remedies provided under any other agreement or at law or in equity.

The failure of Liberty to enforce any one or more of the terms or conditions of this Note shall not be deemed a waiver of such terms or conditions or of Liberty's rights thereafter to enforce each and every term and condition of this Note.

Each Obligor hereby waives trial by jury in any action or proceeding to which Obligor and Liberty may be parties, arising out of, in connection with or in any way pertaining to, this Note. It is agreed and understood that this waiver constitutes a waiver of trial by jury of all claims against all parties to such action or proceeding, including claims against parties who are not parties to this Note. This waiver is knowingly, willingly and voluntarily made by each Obligor, and each Obligor hereby represents that no representations of fact or opinion have been made by any individual to induce this waiver of trial by jury and that each Obligor has been represented in the signing of this Note and in the making of this waiver by independent legal counsel, or has had the opportunity to be represented by independent legal counsel selected of Obligor's own free will, and that Obligor has had the opportunity to discuss this waiver with Obligor's counsel.

Each Obligor agrees that any claim Obligor may have against Liberty, including Liberty's past and present employees and agents, shall be brought individually and that no Obligor shall join such claim with claims of any other person or entity or bring, join or participate in a class action against Liberty.

The covenants, terms and conditions of this Note shall be binding upon the heirs, personal representatives, successors and assigns of each Obligor and shall inure to the benefit of Liberty, its successors and assigns.

This Note constitutes the entire understanding of the parties and supersedes all prior negotiations, commitments, representations, and undertakings of the parties with respect to the subject matter hereof. This Note may be executed in counterparts, each of which shall constitute an original, but all taken together shall constitute a single instrument. Delivery of an executed counterpart of a signature page to this Note by facsimile or in electronic (e.g. "pdf") format shall be effective as delivery of a manually executed counterpart of this Note. The words "execution," "signed," "signature," and words of similar import in the Note shall be deemed to include electronic or digital signatures or the keeping of records in electronic form, each of which shall be of the same effect, validity and enforceability as manually executed signatures or a paper-based recordkeeping system, as the case may be, to the extent and as provided for under applicable law, including the Electronic Signatures in Global and National Commerce Act of 2000 (15 USC § 7001 et seq.) or any other similar state or federal laws based on the Uniform Electronic Transactions Act.

This Note shall be construed in all respects and enforced according to the laws of the Commonwealth of Virginia. Each Obligor hereby irrevocably and unconditionally consents to venue and personal jurisdiction in the state and federal court located in or most proximate to the city or county of Liberty's National Office, presently Virginia Beach state courts and the United States District Court in Norfolk, Virginia.

If any term or provision of this Note is invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other term or provision of this Note or invalidate or render unenforceable such term or provision in any other jurisdiction.

WITNESS the following signature(s) and seal(s):


_Maribel Gorosave_
Signature of Maker

_Maribel Gorosave_
Printed Name of Maker

Home Address:

_937 Lee Ave_

_Calexico CA 92231_


_Nora Garcia_
Signature of Maker

_Nora Garcia_
Printed Name of Maker

Home Address:

_1943 Annandale Way_

_Pomona, CA 91767_


3

**EXHIBIT D-5**

**CONFIDENTIALITY AGREEMENT- Liberty Tax Franchisee**

I.     **Purpose**.  JTH Tax, Inc. d/b/a Liberty Tax Service ("Liberty") is interested in pursuing a possible franchise relationship (the "Opportunity") with you ("Recipient").   To keep discussions and information sharing as open and free as possible the parties agree to the terms provided in this Agreement.

II.     **Confidential Information**.   Confidential information ("Confidential Information") shall mean all oral, written and electronic information furnished by Liberty to Recipient in connection with this Opportunity, including but not limited to all training materials, manuals, operations materials, notes, studies, statistics and data.   You and your officers, directors, employees, contractors and agents pursuing the Opportunity are referred to collectively as the Recipient of the Confidential Information.

Confidential information will not include information which (i) is or becomes available to the public other than as a result of disclosure by the Recipient, (ii) was known by the Recipient at the time of disclosure of the information by Liberty and that knowledge is evidenced in writing, (iii) was or becomes available from a source other than Liberty, if, to the best of the Recipient's knowledge, the source was not legally bound to Liberty to maintain the confidentiality of the information, or (iv) the Recipient independently develops without using the Confidential Information.

III.     **Agreement to Maintain Confidentiality**.   The Recipient agrees to keep the Confidential Information confidential, and will not disclose the Confidential Information to any person or entity or use the Confidential Information, directly or indirectly, other than as a Franchisee or in the operation of a Liberty Tax Service franchise.   The Recipient may disclose the Confidential Information to any employee of the Recipient who is likewise bound in writing to keep the Confidential Information confidential

IV.     **Compliance with Law**.   If the Recipient becomes legally compelled to disclose any Confidential Information in a manner not otherwise permitted by this Agreement, the Recipient will provide Liberty with prompt notice of the request so that Liberty may seek an appropriate protective order or other appropriate remedy.  If a protective order or similar order is not obtained by the date that the Recipient must comply with the request, the Recipient may disclose the Confidential Information to the requesting parties, but the Recipient will disclose the minimal amount of Confidential Information necessary to comply with the request.

V.     **Injunctive Relief**.   Recipient acknowledges that unauthorized disclosure or use of the Confidential Information would irreparably damage Liberty in such a way that Liberty could not be adequately compensated in damages in an action at law.  Accordingly, if any dispute arises concerning the disclosure or use of any Confidential Information, Liberty may seek injunctive relief restraining the unauthorized disclosure or use restraining the unauthorized disclosure or use, in addition to any other remedy available.

VI.    **Return of Materials**.   Upon termination of discussions related to the Opportunity, or Recipient's relation as a franchisee of Liberty, whichever is later, Recipient will deliver to the Liberty all Confidential Information without retaining any copies of the Confidential Information.   If so requested by Liberty, the Recipient will destroy all Confidential Information and will confirm in writing that all Confidential Information has been returned or destroyed.   This provision is in addition to any other confidentiality provisions of any other agreement between the parties.

VII.   **Miscellaneous**.   This Agreement may only be modified by a written document executed by both parties.   This Agreement may be executed in counterparts, and all such counterparts together will constitute one Agreement.   Neither party intends by this Agreement to grant any license or other rights in any of the Confidential Information to the Recipient of that information.

IN WITNESS WHEREOF, the parties have executed this Agreement as of _12/18/13_____.

**Recipient:** Maribel Gorosave

By: _Maribel Gorosave_
        Signature

By: _Nora Garcia_
        Signature

**JTH Tax, Inc. d/b/a Liberty Tax Service**

By: _____
        John Hewitt, CEO

2

# Franchise Financing Request Form

RD/FD_____  AD 3622-Nora & Martin Garcia

**LIBERTY TAX SERVICE**

**REQUEST DATE: 11/25/13**

**FRANCHISEE(s):** Nora Garcia & Maribel Gorosave

**CREDIT SCORE:** n/a          **TERRITORY(S):** CA376

**PURCHASE PRICE:** $40k

## Terms:

☐ *Paid in Full* $_____

☒ *Long Term P-Note*
   **Down Payment**          $8k____
   **Annual Installments** $8k____
   **P-Note Term**             5 years

☐ *Short Term P-Note*
   **Down Payment**     $_____
   **P-Note Balance**   $_____
   **P-Note Due Date**  _____

☐ *Zero Franchise Fee Promotion**

**Operational Supply Deposit   (Provided by Zee)**   $__n/a_____

## Operational Financing Needed:

☐ **Operating Expenses**       **Amount:** $__n/a_____
☐ **Full operations costs**

## Approved by:

| | **RD** | **Dir. of Finance** | **CFO** | **CEO** |
|---|---|---|---|---|
| | Email | Issue | Issue | Email |
| **Date:** | 11/25/13 | 11/15/13 | 11/25/13 | 11/25/13 |

*Notes:*
*IssueTracker & email approvals attached.*

**Briana Koons**

| | |
|---|---|
| **From:** | John Hewitt |
| **Sent:** | Monday, November 25, 2013 3:39 PM |
| **To:** | Briana Koons |
| **Subject:** | Re: For your approval- CA376 |

Yes

Sent from my iPad

On Nov 25, 2013, at 3:38 PM, "Briana Koons" <briana.koons@libtax.com> wrote:

> New terms for you to review:
>
> **Seller**: 1000-available territory
> **Buyer**: 5205- Nora Garcia & Maribel Gorosave
> **Territory**: CA376
> **Purchase Price**: $40k
> **Payment Terms**: Buyer to put down $8K and financing $32K as follows
> 2/28/14 interest only payment
> 2/28/15 $8K plus interest
> 2/28/16 $8K plus interest
> 2/28/17 $8K plus interest
> 2/28/18 $8K plus interest
>
> We have approvals from Oscar and Mark B....do you also approve of the revised terms?
>
> **Briana Koons**
> AD Unit Sales|Franchise Development
> Direct: 757.301.8253
>
> ---
>
> **From:** John Hewitt
> **Sent:** Monday, November 18, 2013 5:32 PM
> **To:** AD.FranchiseDevelopment
> **Subject:** RE: For your approval- CA376
>
> ok
>
> **From:** AD.FranchiseDevelopment
> **Sent:** Monday, November 18, 2013 5:31 PM
> **To:** John Hewitt
> **Cc:** AD.FranchiseDevelopment
> **Subject:** For your approval- CA376
>
> **Seller**: available territory
> **Buyer**: 5205- Nora Garcia & Maribel Gorosave (current total LTS debt= $19,844.24)
> **Territory**: CA376
> **Purchase Price**: $40k
> **Payment Terms**: Buyer to put down $8K and financing $32K as follows:
> 2/28/14 $8k plus interest

2/28/15 $8K plus interest
2/28/16 $8K plus interest
2/28/17 $8K plus interest

Do you approve?

**Briana Koons**
Liberty Tax Service
AD Unit Sales|Franchise Development
Direct: 757-301-8253
Toll Free: 800-790-3863 ext. 8253
Fax: 800-853-6406

**Incident Details**

## Contact Details

Office/Entity ID: 5205

First/Last Name: Maribel                 Gorosave

Callback: ☐

Language Preference: English

## Issue Type

Type: Franchisee Support

Country: US

Category: Operations

Product: Expansions

Sub Product: Expansion Initial Request

Summary: Expansion CA376

**Comments**

When creating a new issue, be sure to include as much information about your issue as possible. For example, including information to identify your customer or the exact error message, when applicable, along with a detailed description of the issue will contribute to a speedy resolution.
Additionally, attaching a screenshot can be extremely beneficial in diagnosing technical issues and resolving application or report discrepancies.

ent 5205 (Nora Garcia & Maribel Gorosave) writes...                                                    @ 10/1/2013 3:06 PM
Attention Liza Malinis,

I would like to expand, purchase CA376 Brawley CA,If I can put $8k down and finance the rest at $8k due Feb 2015, 2016, 2017, 2018.

Liza Malinis writes...                                                                                  @ 10/4/2013 9:58 AM
Need AD approval noted in this issue. Once approved, please route it back to me. Thank you

Liza Malinis secretly writes...                                                                        @ 10/4/2013 9:58 AM
The DD link has been sent and CA376 is UC to 5205; please create an issue via the issue tracker using the Zee's entity #.

Within the body of the issue please outline the terms of the expansion (how much down payment, what LTS will be financing etc.); also attach a copy of the Zee's PRF60 (performance report – located in Report Central).

The issue will then need to be assigned to the AD for their approval; it will go to the RD for review and approval and then to the Finance Committee. Once the final approval is obtained then we will be able to send out the Franchise Agreements to the Zee/Buyer.

Nora and Martin Garcia (M66) writes...                                                          @ 10/7/2013 6:03 PM
I approve.

Martin
AD3622

ent 5205 (Nora Garcia & Maribel Gorosave) writes...                                             @ 11/4/2013 2:27 PM
I would like to purchase Brawley territory, haven't heard from Corporate, would like to know if I will be able to proceed or if I should put plans on hold, for another year. I feel like time is rapidly approaching and I wont be ready for the next tax season. During Liberty College this year, all they talked about was preparation and being ready before the tax season starts, I'm trying to do that but it's not possible if I don't have the territory. I would like to know how long this process will take?

Nora and Martin Garcia (M66) writes...                                                          @ 11/4/2013 9:54 PM
Once corporate receives the disclosure document a contract should be drafted and sent to you.

Nora and Martin Garcia (M66) writes...                                                          @ 11/4/2013 9:54 PM
Once corporate receives the disclosure document a contract should be drafted and sent to you.

Nora and Martin Garcia (M66) writes...                                                          @ 11/7/2013 5:47 PM
Hello, is contract on its way yet, please advise.

Oscar Aujero secretly writes...                                                                 @ 11/13/2013 1:11 PM
RD approves.

Ericka Tynan secretly writes...                                                                 @ 11/13/2013 2:55 PM
So to be clear; the request and approval is for no payment in 2014?

Nora Garcia & Maribel Gorosave (5205) wants to purchase CA376 by putting down $8K and financing $32K as follows:
2/28/14 interest only payment?
2/28/15 $8K plus interest
2/28/16 $8K plus interest
2/28/17 $8K plus interest
2/28/18 $8K plus interest

Oscar, please confirm if you approve of no payment in 2014 (interest only). Thank you!

Oscar Aujero secretly writes...                                                                 @ 11/15/2013 4:19 PM
No. I approve standard expansion. $8K down and $8k + interest in 2014, 2015, and 2016. thanks.

Briana Koons secretly writes...                                                                 @ 11/15/2013 4:41 PM
Mark,

Do you approve of the following:
Nora Garcia & Maribel Gorosave (5205) wants to purchase CA376 by putting down $8K and financing $32K as follows:
2/28/14 $8k plus interest
2/28/15 $8K plus interest
2/28/16 $8K plus interest
2/28/17 $8K plus interest

*Zee's PRF60 Attached

Mark Baumgartner writes...                                                                      @ 11/15/2013 4:46 PM
ok

Briana Koons secretly writes...                                                                              @ 11/15/2013 4:49 PM
Matt,

Do you also approve of the terms?

Matt Reddy writes...                                                                                         @ 11/15/2013 4:55 PM
approved

Briana Koons secretly writes...                                                                              @ 11/15/2013 6:04 PM
Matt/Mark...I added an extra payment above. Please approve the terms below only.

Do you approve of the following:
Nora Garcia & Maribel Gorosave (5205) wants to purchase CA376 by putting down $8K and financing $32K as follows:
2/28/14 $8k plus interest
2/28/15 $8K plus interest
2/28/16 $8K plus interest

Mark Baumgartner writes...                                                                                   @ 11/16/2013 9:48 AM
ok assuming the last 8k is due 2/28/17

Briana Koons writes...                                                                                       @ 11/18/2013 5:26 PM

Briana Koons secretly writes...                                                                              @ 11/18/2013 5:26 PM
Sent for JTH approval 11/18/13. Will update all parties involved once documents have been sent to the buyer.

Nora and Martin Garcia (M66) secretly writes...                                                              @ 11/22/2013 1:42 PM
The franchisee was putting 8k down to cover the year 2014 as we are a little over a month away and requested
8k 02/2015
8k 02/2016
8k 02/2017
8k 02/2018
Considering with start up and operating cost the franchisee will spend close to 100k by 02/2014 the terms seem fair and will help us toward meeting our 2020 goals. Please assist us in this matter.

Thank you,
Martin

Oscar Aujero secretly writes...                                                                              @ 11/25/2013 2:17 PM
RD approves revised terms.

Briana Koons secretly writes...                                                                              @ 11/25/2013 2:23 PM
Oscar,

The revised terms will be as follows.

2/28/14 interest only payment
2/28/15 $8K plus interest
2/28/16 $8K plus interest
2/28/17 $8K plus interest
2/28/18 $8K plus interest

Oscar Aujero secretly writes...                                                                              @ 11/25/2013 2:26 PM

OK

Briana Koons secretly writes...                                                    @ 11/25/2013 2:27 PM

Mark,
Do you approve of these revised terms?

$8k down
2/28/14 interest only payment
2/28/15 $8K plus interest
2/28/16 $8K plus interest
2/28/17 $8K plus interest
2/28/18 $8K plus interest

Mark Baumgartner writes...                                                         @ 11/25/2013 3:34 PM

ok

Briana Koons writes...                                                             @ 11/25/2013 3:40 PM

All necessary approvals have been obtained. An updated p-note will be emailed the the zee to return with her Franchise Agreements.

## Miscellaneous

| Attachments | Related Issues | Notifications | Incident History | Office History |

### Existing Attachments

| Attachment | Size | Date | Added By |
|---|---|---|---|
| PRF60-5205.pdf | 59.90KB | 11/15/2013 4:41 PM | Briana Koons |

### Add Attachments

Browse

Browse

Browse

Click "Save" to upload the above files. You may attach as many files as you wish, but no more than three files can be attached at once (select your files and upload/save in groups of three until all files are attached). If you have selected a file and no longer wish to upload it, simply clear the text (file path) to the left of the "Browse" button.

## Issue Routing

Department:  Operations (US)                                Status:  Closed - Pending

Person:  Briana Koons                                       Priority:  Normal

010.0.0.82

**Briana Koons**

| | |
|---|---|
| **From:** | Oscar Aujero |
| **Sent:** | Monday, November 25, 2013 2:19 PM |
| **To:** | AD.FranchiseDevelopment |
| **Subject:** | RE: CA376 |

I approved revised terms.

**Oscar E. Aujero**  𝕏

Desk:  (800)790-3863 x.8137  eFax:  (800) 880-6432

Email:  oscar.aujero@libtax.com

**From:** AD.FranchiseDevelopment
**Sent:** Monday, November 25, 2013 2:04 PM
**To:** Oscar Aujero
**Cc:** AD.FranchiseDevelopment
**Subject:** FW: CA376

Oscar,

AD Martin Garcia is requesting the below payment terms for CA376 (existing zee 5205 expanding). However, in issue #1188325 (https://app1.libertytax.net/issuetracker/issues/issuedetail.aspx?id=1188325) you approved the following terms:

Payment Terms: Buyer to put down $8K and financing $32K as follows:
2/28/14 $8k plus interest
2/28/15 $8k plus interest
2/28/16 $8k plus interest
2/28/17 $8K plus interest

All parties approve the same terms, and the buyer has the franchise agreements in their possession. How should I proceed?

**Briana Koons**
**AD Unit Sales|Franchise Development**
Direct: 757.301.8253

**From:** martinlibtax [mailto:martinlibtax@yahoo.com]
**Sent:** Friday, November 22, 2013 5:56 PM
**To:** AD.FranchiseDevelopment
**Subject:** RE: Docs out! Nora

Hi,
Yes franchise would like to pay 8k down for 2014 the
8k 02/2015
8k 02/2016
8k 02/2017
8k 02/2018
With 2014 startup costs and operating costs will spend close to 100k!

1

I also explained in issue #1188325

Thank you

Sent via the Samsung Galaxy S™ III, an AT&T 4G LTE smartphone

-------- Original message --------
From: "AD.FranchiseDevelopment" <AD.FranchiseDevelopment@libtax.com>
Date: 11/22/2013 12:57 PM (GMT-08:00)
To: "AD.FranchiseDevelopment" <AD.FranchiseDevelopment@libtax.com>,martinlibtax@yahoo.com
Cc: Oscar Aujero <oscar.aujero@libtax.com>,Marla Brown <marla.brown@libtax.com>
Subject: RE: Docs out! Nora

Martin,

I received your voicemail from earlier, my apologizes for the missed call. Can you explain the accommodations you are requesting regarding the payments?

Thank you!

**Briana Koons**

AD Unit Sales|Franchise Development

Direct: 757.301.8253

---

**From:** AD.FranchiseDevelopment
**Sent:** Wednesday, November 20, 2013 10:19 AM
**To:** 'martinlibtax@yahoo.com'
**Cc:** AD.FranchiseDevelopment; Oscar Aujero; Marla Brown
**Subject:** Docs out! Nora

Good morning,

Franchise documents have been overnighted to Nora Garcia & Maribel Gorosave for the purchase of CA376 . Please see below for the tracking numbers.

2

*To:* 573623528551

*Back* to LTS: 573623528562

Approved terms:

**Buyer**: 5205- Nora Garcia & Maribel Gorosave (current total LTS debt= $19,844.24)

**Territory**: CA376

**Purchase Price**: $40k

**Payment Terms**: Buyer to put down $8K and financing $32K as follows:

2/28/14 $8k plus interest

2/28/15 $8K plus interest

2/28/16 $8K plus interest

2/28/17 $8K plus interest

We will need:

- Signed/dated Exhibit K

-$8k deposit

- All return docs

**Briana Koons**

Liberty Tax Service

AD Unit Sales | Franchise Development

Direct: 757-301-8253

Toll Free: 800-790-3863 ext. 8253

Fax: 800-853-6406

This electronic communication and any files transmitted with it, or attached to it, are confidential and are intended solely for the use of the

**MARIBEL GOROSAVE**
**DBA LIBERTY TAX SERVICE**
440 S. 4TH ST
EL CENTRO, CA 92243

WELLS FARGO BANK, N.A.
www.wellsfargo.com
16-24/1220

1403

Dec 16, 2013

PAY TO THE
ORDER OF  JTH TAX, INC                                    $ 8000.00

Eight thousand dollars and 00/100 ─────────── DOLLARS

MEMO  Brawley Franchise Deposit

Maribel Gorosave
AUTHORIZED SIGNATURE

⑈000000 1403⑈ ⑆122002 47⑆ 63259 468 50⑈

# Sales Journal Entry

*Nora Garcia*

**Name:** Maribel Gorosave **Entity:** 5205 **Stage:** Pending

**Ownership Type:** Tenants-in-Common

**Sale Type:** New Sale (Old Z)   **Financing Type:** Purchase Price

**Department:** AD   **AD:** 3622 N&M Garcia

**Sales Ops Contact:** Briana Koons   **Sales Rep:** N/A If none

### Sales Info

**App Rec'd:** 12/17/2013  **K Date:** 10/1/2013  **Redis. K Date:**

**EOT Date:** [] **EOT Attended:** FALSE

### Area Information

Territory List:   CA376
 Num of Territories: 1

### Projected Monies

**Total Amt :** $40,000.00

**Deposit Amt::** $8,000.00

**Approved P-note Amt:** $32,000.00

**Balance Rec'd:**   **Paid In Full:** FALSE

**Sales Notes:**
12/17/13 Deposit of $8k ck # 1403. P-Note for $32K which payments will be $8k yearly. Exhibit K, FA x2, Conf Agree, and FFRF approvals.

### Legal Compliance

**Legal Contact:** *Carol DeCesare*

**Legal Rec'd:** 12/18/13 **Closed:** 12/19/13
**Legal Notes:** *Received all as noted (✓) above.*

**EXHIBIT K**
**RECEIPT**

This disclosure document summarizes certain provisions of the franchise agreement and other information in plain language. Read this disclosure document and all agreements carefully.

If JTH Tax, Inc. d/b/a Liberty Tax Service offers you a franchise, we must provide this disclosure document to you at least 14 days before you sign a binding agreement or make a payment to us in connection with the proposed franchise sale or grant.

Rhode Island requires that we give you this Disclosure Document at the earlier of the first personal meeting or 10 business days before the execution of the franchise or other agreement or the payment of any consideration that relates to the franchise relationship.

Michigan and Washington require that we give you this Disclosure Document at least 10 business days before the execution of any binding franchise or other agreement or the payment of any consideration, whichever occurs first.

If we do not deliver this disclosure document on time or if it contains a false or misleading statement, or a material omission, a violation of federal law and State law may have occurred and should be reported to the Federal Trade Commission, Washington, D.C. 20580 and the state agency listed on Exhibit F.

Date of Issuance: September 26, 2013

See Exhibit F for our registered agents authorized to receive service of process.

If a Franchise Broker was involved in this sale, the name, principal business address and telephone number of the Broker follows:

Name of Broker:_____

Broker Telephone Number:_____

Broker Principal Business Address:_____

I have received a disclosure document dated September 26, 2013 that included the following Exhibits:

A.  State Disclosure Document Addenda (CA, HI, IL, IN, MD, MI, MN, NY, ND, SD, VA)
B.  Franchise Agreement and State Franchise Agreement Addenda (CA, IL, IN, MD, MN, ND, RI, SD, VA, WA, WI)
C.  Promissory Notes
D-1.  JTH Financial, LLC Program Services Agreement, MetaBank Secured Credit Card Agreement, and SBBT Financial Services Agreements
D-2.  Libtax Software License Agreement
D-3.  Walmart Kiosk  Stipulation and Agreement, K-Mart, Ace, and Sears Management Commitment Forms
D-4.  Renewal & Release forms
D-5.  Confidentiality Agreement
D-6.  Franchisee Card Program Agreement
E.  Purchase and Sale Agreements
F.  List of State Administrators and Registered Agents

G. List of Current Franchisees and List of Franchisees Who Had an Outlet Terminated, Cancelled, Not Renewed or Otherwise Ceased to Do Business
H.   Financial Statements and Guarantee of Performance
I.    Table of Contents of Operations Manual and Confidentiality Agreement
J.    Franchisee Organizations We Have Created, Sponsored or Endorsed
K.   Receipt

10/01/2013 .

**Date you received this Disclosure Document**

**PROSPECTIVE FRANCHISEE:**

**If an individual:**

**If a business entity:**

**Name of Business Entity**

By: _Maribel Gorosave_

**Signature**

**Signature**

Maribel Gorosave

**Printed Name**

/

**Printed Name/Title**

937 Lee Ave

**Address**

**Address**

Calexico CA 92231

626-482-9168   **(Telephone number)**

**(Telephone number)**

By: _Nora Garcia_

**Signature**

**Signature**

Nora Garcia

**Printed Name**

**Printed Name/Title**

1943 Annandale Way

**Address**

**Address**

Pomona CA 91767

(626) 674-6480   **(Telephone number)**

**(Telephone number)**

# EXHIBIT D

DocuSign Envelope ID: 24B48785-649D-4BCC-ADED-D9F0B63D59A1

## MUTUAL TERMINATION AGREEMENT

THIS MUTUAL TERMINATION AGREEMENT is made this 8th day of ____January____ 2019 by and between JTH Tax, Inc. d/b/a Liberty Tax Service, SiempreTax+ LLC (collectively "Franchisor") and Maribel Gorosave ("Franchisee").

Whereas the Franchisee has a license to operate certain Liberty Tax Service franchises referred to as CA375 and CA376 in the stateof California pursuant to written franchise agreements for the franchise territories set forth in the Schedule "A" of the Liberty franchise agreements and a certain SiempreTax+ franchise referred to as CA375 in the state(s) of California pursuant to a written franchise agreement for the franchise territory set forth in the Schedule "A" of the SiempreTax+ franchise agreement; and

Whereas the Franchisee and Franchisor each desire to terminate only the Franchise Agreement for the Liberty territory known as CA376 and the SiempreTax+ territory known as CA375 (the SiempreTax+ and Liberty franchise agreements being terminated are referred to collectively herein as the "Franchise Agreements" or the "Franchised Business").

Now, therefore, in consideration of the mutual covenants and agreements herein, the parties hereto mutually agree as follows:

1. Effective immediately, the Franchisee relinquishes all rights granted pursuant to the Franchise Agreement and any other franchise related agreements, including, but not limited to any Commission Agreements. Franchisor releases the Franchisee from all obligations incurred pursuant to the Franchise Agreement or any other related Agreement except those obligations noted herein. If this Agreement is not executed by the Franchisee and returned to the Franchisor by January 17, 2019, the offer to mutually terminate the Franchise Agreement may be rescinded.

2. Franchisor and Franchisee acknowledge that this Agreement shall in no way affect amounts due and/or payable by Franchisee to Franchisor. The Franchisee hereby guarantees that all amounts owing to the Franchisor shall be paid in accordance with the terms of such amounts owing.

3. All furniture, fixtures and equipment used in connection with the operation of the Franchised Business shall remain the property of the Franchisee.

4. All office leases operated or entered into in connection with the Franchised Business shall remain the responsibility of the Franchisee.

5. Franchisee acknowledges that all post-term covenants of the Franchise Agreement will be adhered to upon execution of this Agreement and thereafter. Nothing contained in this Agreement shall be construed as limiting the continuing effectiveness of the post-term covenants of the Franchise Agreement.

6. Franchisee shall immediately comply with the Post Termination Obligations contained in the Franchise Agreements, including, but not limited to, the following:
   a. Abide by the covenants not to compete and not to solicit as described in the Franchise Agreement; and
   b. Remove all Liberty and SiempreTax+ signs from all offices and other premises; and
   c. Cease, and not thereafter commence, use of any of Franchisor's Marks or any marks which are likely to be confused with Franchisor's Marks; and
   d. Cease use of all literature and other items bearing Franchisor's marks and/or received from Franchisor; and
   e. Transfer to Franchisor all telephone numbers used in relation to the Franchised Business; and

1

    f.   Deliver to Franchisor all copies, including electronic copies, of lists and other sources of information containing the names of customers who patronized the Franchised Business; and

    g.   Deliver to Franchisor all customer tax returns, files, records and all copies thereof; and

    h.   Deliver to Franchisor the copy of the Operations Manual and all updates, which Franchisor loaned to Franchisee; and

    i.   Cancel all fictitious name listings, which Franchisee has filed for use of any of the Marks.

7.   Franchisee warrants that he/she will take no actions and make no statements that could hinder or compromise the Franchisor's success.  Without limiting the generality of the foregoing, the Franchisee agrees not to disparage the Franchisor, the Franchisor's operating system or the Franchisor's employees, officers or directors.

8.   The Franchisee covenants that he/she is not in default in any material respect under any agreements, leases, or other documents related to the Franchised Business to which he is a party.

9.   Franchisee grants Franchisor the right to remotely access and make changes to the computers used in operation of the franchised business in order to remotely wipe and/or copy all data on the computers. Franchisor is not responsible for any information lost or damage caused to the computers as a result of such actions.

10.  Franchisee is responsible for all loss, expenses, claims, damages and contractual liability to third parties which relate directly or indirectly to the business operated pursuant to the Franchise Agreements prior to the date of execution of this Agreement.  The Franchisee and its partners and affiliates agree to indemnify and hold the Franchisor and all its past and present employees and area developers harmless from any and all losses and additional expenses, including costs and any reasonable attorneys' fees that may be incurred because of any such loss, damage, liability, claim or demand.

11.  By executing this Agreement, Franchisee and Franchisee's officers, individually and on behalf of Franchisee's heirs, legal representatives, successors and assigns, hereby forever releases and discharges Franchisor, its past and present employees, area developers, agents, officers, directors, Franchisor's subsidiary and affiliated corporations and franchisees, their respective past and present employees, agents, officers, directors, from any and all claims that could be asserted by the Franchisee against any such persons and entities through the date of this Agreement, except obligations set forth or re-affirmed herein. The parties understand and acknowledge this Release applies to and includes all unknown or unsuspected consequences or results arising from or relating to the transactions, occurrences, or agreements referred to in this Section. Franchisee represents and warrants that Franchisee has read the contents of California Civil Code §1542, which provides as follows:

"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

FRANCHISEE EXPRESSLY WAIVES ANY AND ALL RIGHTS AND BENEFITS UNDER CALIFORNIA CIVIL CODE §1542. Each party acknowledges that it has read Section 11 of this Agreement, that it fully understands the contents of Section 11 of this Agreement, and that THIS IS A SPECIFIC RELEASE GIVING UP ALL RIGHTS WITH RESPECT TO THE TRANSACTIONS OR OCCURRENCES THAT ARE BEING RELEASED UNDER THIS AGREEMENT.

12.  This Agreement shall bind and inure to the benefit of the respective successors, assigns, legatees, heirs, and personal representatives of each of Franchisee and Franchisor.

13. This Agreement is effective upon its acceptance in Virginia by Franchisor's authorized officer. Virginia law governs all claims which in any way relate to or arise out of this Agreement or any of the dealings of the parties hereto.  However, the Virginia Retail Franchising Act does not apply to any claims by or on your behalf if the territory shown on Schedule A of your Franchise Agreement is located outside of Virginia.

14. In any suit brought by Franchisor, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, you consent to venue and personal jurisdiction in the state and federal court of the city or county of Franchisor's National Office, presently Virginia Beach state courts and the United States District Court in Norfolk, Virginia.  In any suit brought against Franchisor, including Franchisor's present and former employees and agents, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, venue shall be proper only in the federal court located nearest Franchisor's National Office (presently the U.S. District in Norfolk, Virginia), or if neither federal subject matter or diversity jurisdiction exists, in the city or county state court located where Franchisor's National Office is (presently the City of Virginia Beach, Virginia).

15. In any trial between any of the parties hereto, including present and former employees and agents of Franchisor, Franchisee and Franchisor agree to waive our rights to a jury trial and instead have such action tried by a judge.

16. You agree that any claim you may have against Franchisor, including Franchisor's past and present employees and agents, shall be brought individually and you shall not join such claim with claims of any other person or entity or bring, join or participate in a class action against Franchisor.

17. In any lawsuit, dispute or claim between or against any of the parties hereto, including present and former agents and employees of Franchisee and Franchisor, Franchisee and Franchisor agree to waive our rights, if any, to seek or recover punitive damages.

18. This Agreement constitutes the entire understanding of the parties and supersedes all prior negotiations, commitments, representations, contracts, agreements and undertakings of the parties with respect to the subject matter hereto. This Agreement shall not be modified except in writing signed by the parties.

19. This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, but such counterparts shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page to this Agreement by facsimile or in electronic (e.g. "pdf") format shall be effective as delivery of a manually executed counterpart of this Agreement.  The words "execution," "signed," "signature," and words of similar import in the Agreement shall be deemed to include electronic or digital signatures or the keeping of records in electronic form, each of which shall be of the same effect, validity and enforceability as manually executed signatures or a paper-based record keeping system, as the case may be, to the extent and as provided for under applicable law, including the Electronic Signatures in Global and National Commerce Act of 2000 (15 USC § 7001 et seq.) or any other similar state or federal laws.

20. Each party agrees to be responsible for any tax consequences affecting said party as a result of this Agreement.

21. By executing this Agreement, Franchisee, for Franchisee and Franchisee's respective successors, represents and warrants that Franchisee's representations herein are true and correct and that Franchisee has the right and authority to enter into and to accept the terms and conditions of this Agreement.

22. The provisions of this Agreement are severable, and in the event that any of them are held void and unenforceable as a matter of law, the remainder shall continue in full force and effect.

**Accepted and Agreed to:**

**Franchisee:   Maribel Gorosave**

By: _____
        Maribel Gorosave

**Franchisor:**
**JTH Tax, Inc. d/b/a**
**Liberty Tax Service**

**SiempreTax+ LLC**

By: _____

Print Name: _____Nicole Ossenfort_____

Title: _____CEO_____

By: _____

Print Name: _____Mike Piper_____

Title: _____CFO_____

4

## OPERATIONS REQUEST FOR TERMINATION

### Area Developer                                    ☑ Show

#### GENERAL INFORMATION

Date  10/17/18

AREA DEVELOPER 101 (Apollo Emeka )

ENTITY/FRANCHISEE 5205 ( Maribel Gorosave)

- ● Mutual
- ○ Unilateral
- ○ Buy Back

CONTACT FIRST NAME  Maribel

CONTACT LAST NAME  Gorosave

AD EMAIL  Apollo.emeka@libtax.com

#### TOTAL MONIES OWED

| | | | |
|---|---|---|---|
| AR  $15,948.70 | PAST DUE AR  $15,475.69 | DEBT FORGIVENESS  No | |
| P-NOTES  $0.00 | PAST DUE P-NOTES  $0.00 | Debt Forgiveness is at the discretion of the RD. | |
| TOTAL  $15,948.70 | TOTAL PAST DUE  $15,475.69 | | |

#### ENTITY INFORMATION

REASON FOR TERMINATION

Reason for termination: Zee has moved out of location and refuses to open again. Zee was ready to walk away completely but agreed to operate CA375 for another year.

COS evaluation decision: Return count under 100 with no location. Not viable for a COS location
Action taken to save location: No other zees willing to take over.

Relocation of client files: Client files moved to office 14926, the zees second territory.

STOP FAC PAYMENTS  No          ALL GRR's LOCKED  Yes

#### GUARANTEE/GUARANTOR ON OTHER AGREEMENT

#### TERRITORIES

TERRITORY  CA376

| Office Id | Office Age | Returns | Free Returns | Gross Fees | Net Fees | Lease Exp Date |
|---|---|---|---|---|---|---|

| 19230 | 5 | 70 | 9 | $27,436.00 | $20,301.00 | |
| 1 | | 70 | 9 | $27,436.00 | $20,301.00 | |

Brand Indicator

Liberty Exclusive

## LEASE INFO

OFFICE 19230   STOP LEASE PAYMENTS   Yes          DATE ACCOUNTING GIVEN LEASE(S) 10/17/18

LEASE PER MONTH $0.00          LEASE TO BE ASSUMED No

UTILITIES/PHONE TRANSFERRED  ○ Yes ● No          LIBERTY TO ACQUIRE EQUIPMENT No

## COMPETITION OFFICE RETURNS

HRB 2,409          JH 0

## GUARANTOR/GUARANTEE

Guarantor          Guarantee

## SALE INFO

SALES STATUS 1000 - Terminated for Sale          HAS BUYER ☐

SALE NOTES          LIBERTY\Jessica.jacobsen

## TERRITORY CA375

| Office Id | Office Age | Returns | Free Returns | Gross Fees | Net Fees | Lease Exp Date |
|---|---|---|---|---|---|---|
| 19715 | 4 | 0 | 0 | $0.00 | $0.00 | |
| 14926 | 10 | 340 | 60 | $119,672.00 | $92,460.00 | |
| 2 | | 340 | 60 | $119,672.00 | $92,460.00 | |

Brand Indicator

Liberty & SiempreTax

Which brand is being terminated?
○ Liberty
● SiempreTax
○ Liberty & SiempreTax

**LEASE INFO**

OFFICE `14926`   STOP LEASE PAYMENTS   No   DATE ACCOUNTING GIVEN LEASE(S) `10/17/18`

LEASE PER MONTH `$0.00`   LEASE TO BE ASSUMED No

UTILITIES/PHONE TRANSFERRED  ◯ Yes  ◉ No   LIBERTY TO ACQUIRE EQUIPMENT No

**COMPETITION OFFICE RETURNS**

HRB `2,229`   JH `32`

**GUARANTOR/GUARANTEE**

Guarantor `_____`   Guarantee `_____`

**SALE INFO**

SALES STATUS 1000 - Terminated for Sale   HAS BUYER ☐

SALE NOTES `_____`

SIEMPRE RIGHTS ONLY, LIBERTY OFFICE 14926 WILL REMAIN ACTIVE

## Operations/Finance

**OPERATIONS**

AMOUNT `$0.00`   DEAL ACCEPTED ◉ Yes ◯ No

DATE ACCEPTED `10/19/18`

DEAL NOTES   `LIBERTY\shaun.y...`

ok

POSSIBLE RESCISSION ☐

**FINANCE NOTES**

`_____`

**CEO**

**APPROVAL**

CEO APPROVAL ☑                    DATE APPROVED 11/19/2018

**Notes**

**Signature**

CEO: _____

**OPERATIONS**

AMOUNT $0.00

DATE ACCEPTED 10/19/18

DEAL ACCEPTED ● Yes ○ No

**DEAL NOTES**

LIBERTY\shaun.york

ok

POSSIBLE RESCISSION ☐

**CFO APPROVAL**

CFO APPROVAL ✓

DATE APPROVED 11/13/2018

**FINANCE NOTES**

**CEO APPROVAL**

CEO APPROVAL ☐

DATE APPROVED

**Notes**

☑ Show

| **PACER Service Center** | Receipt 01/08/2019 10:33:09 1314972414 |
|---|---|
| **User** | legalcompliance |
| **Client Code** | legalcompliance |
| **Description** | Bankruptcy Party Search |
| | All Courts; Name Gorosave, Maribel; Jurisdiction BK; SSN4 5661; All Courts |
| **Billable Pages** | 1 ($0.10) |

| Entity | 5205 | | |
|--------|------|--|--|

|       | Current | Past Due | Total |
|-------|---------|----------|-------|
| Notes | - | - | - |
| AR | - | 16,812.07 | 16,812.07 |
| *Total* | **-** | ***16,812.07*** | ***16,812.07*** |

**Entity 5205**

## Contact Information

| | |
|---|---|
| **Entity Name:** | Maribel Gorosave |
| **Owner Name:** | Maribel Gorosave |
| **Phone:** | (626) 482-9168 |
| **Email:** | maribelgorosave@hotmail.com |
| **Address:** | 937 Lee Ave Calexico, CA 92231 |

## Key Metrics

Hide

PRF61 - Franchisee Performance for Finance and Operations

### Operation Data

| | Current Calendar YTD | Prior Calendar YTD | Variance |
|---|---|---|---|
| # of Offices | 2 | 2 | 0.00% |
| Total Returns | 1 | 2 | -50.00% |
| Free Returns | 0 | 0 | |
| Gross Fees | 374.00 | 576.00 | -35.07% |
| Net Fees | 324.00 | 576.00 | -43.75% |
| Average Net Fees | 324.00 | 288.00 | 12.50% |

### Compliance Data

| | |
|---|---|
| Budget Approved | 6/4/2018 |
| P&L Approved | |
| Action Plan Approved | |
| Last GRR Locked | 1/7/2019 |

### Financial Data

| | FY2019 | FY2018 | FY2017 |
|---|---|---|---|
| Operating Loan: | 0.00 | 0.00 | 0.00 |
| CIF Loan: | 0.00 | 5,200.00 | 8,550.00 |
| Total Debt: | 16,812.07 | 0.00 | -9,321.05 |

## Snapshot

### Communication

| Category | Product | Sub Product |
|---|---|---|
| -- select -- | -- select -- | -- select -- |

| Status | Follow up |
|---|---|
| -- select -- | |

**Subject**

**Comment**

Add New

### Contact Log History

There is no contact log history found

### Issues

| ID | Status | Product | Department | Assigned | Issue Title | Owner | Mod |
|---|---|---|---|---|---|---|---|
| 2019829 | Waiting On Customer | Compliance | AD Ops | | Required IRS EITC Due Diligence Training | LIBERTYTAX\lts19230 | 12/7/ 9:34: AM |
| 2017470 | Waiting On Customer | Compliance | AD Ops | | Required IRS EITC Due Diligence Training | LIBERTYTAX\ent5205 | 12/6/ 9:41: AM |
| 1964452 | Waiting On Customer | Drake | Technical Support (US) | | Missing Drake Business Returns in Key Metrics / Incorrect Version Installed | LIBERTYTAX\lts14926 | 4/18/ 4:56: PM |
| 1865426 | Waiting On Customer | Other | AD Franchise Development | | Siempre Tax - Franchise Disclosure Document Amended 7-17 Am 9-17 Release | LIBERTYTAX\ent5205 | 1/26/ 11:19 AM |
| 1852418 | Waiting On Customer | Other | AD Franchise Development | | Liberty Tax Service - Franchise Disclosure Document Amended 7-17 Am 9-17 Release | LIBERTYTAX\ent5205 | 1/26/ 11:17 AM |

## General Information

| Entity Name | Entity Type | Entity Status |
|---|---|---|
| | | |

Maribel Gorosave          Franchisee          [▢]   Contract Closed/Active                    [▢]

**Ownership Type**                              **EIN**                **Termination Date**
Sole-proprietorship       [▢]                   26-1319294

**Broker**                **Corporate Entity**
None       [▢]            [☐]

### Contact Information

**Address**                                     **Zip/Postal Code**        **City**
937 Lee Ave                                     92231                      Calexico

**State/Province**                              **Phone**                  **Fax**
California       [▢]                             (626) 482-9168             (760) 352-7643

**Cell/Text Phone**       **Email**
(626) 482-9168            maribelgorosave@hotma

### Insurance Information

**Participation**          **Licensed Agent - Franchisee**   **Licensed Agent - Employee**   **3rd Party Agent - In Office**
[Select]       [▢]         [☐]                               [☐]                             [☐]

**3rd Party Agent - Referral**
[☐]

### Entity Office Count Goal

**Current**               **2020**              **2021**              **2022**
2                         0                     0                     0

**Last Modified**
9/12/2016

Schedule Opening:        **2020**              **2021**              **2022**
                         0                     0                     0

### Location Information

**Address**                                     **Zip/Postal Code**        **City**
937 Lee Ave                                     92231                      Calexico

**State/Province**                              **Phone**
California       [▢]                             (626) 482-9168

### Billing Information

**Name**                  **Address**                                      **Zip/Postal Code**
Maribel Gorosave          937 LEE AVE                                      92231

**City**                  **State/Province**
CALEXICO                  California       [▢]

### Entity Owner(s)

#### Primary Owner

|        | **First Name** | **Last Name** | **Date Of Birth** | **SSN** |
|--------|-----------|-----------|---------------|-------------|
| Owner: | Maribel   | Gorosave  | 10/11/1979    | ###-##-5661 |
| Spouse: |          |           |               |             |

**Settings**

**Withholding Type**      **Support Level**      **Receive Daily Metrics Email**   **Top Gun A**

Standard Fee Intercept ☑    Rank 2 ▼ ☑                        ☐

Top Gun B                   Elite 18              Millionaire            Large Entity Support
☐                           ☐                     ☐                      ☐

Fantastic 50                ACA Certified         PHOENIX Remote Signing
☐                           ☐                     ☑

---

**Pricing Curve**

| Start Date | Pricing Curve |
|------------|---------------|
| 1/2        | 85%           |
| 1/20       | 100%          |
| 3/1        | 80%           |
| 4/8        | 100%          |

---

**Bank Account Information**

| Name on Account | Routing Number (RTN) | Account Number (DAN) |
|-----------------|----------------------|----------------------|
| MARIBEL GOROSAVE | 122000247 | 6325946850 |

Account Type
Checking ▼

---

**Wire Transfer Information**

Wire transfers are offered at a rate of $50 per request; this fee will be billed to your AR. Do you accept this fee for future wire requests?

Accept Wire Fees: ☐

Bank Name              Routing Number (RTN)

---

**Entity Debt Tracking**

---

**FAC Pre-Approval**

| Level | Amount | Start Date | End Date |
|-------|--------|-----------|----------|
| 2 ▼   | 25000  | 4/1/2014  | 1/31/2015 |

Note

---

**Legal**

**Legal Documents**

📂 **5205**
   📁 Onboarding Documents
   📁 Entity Amendments & Guaranties
   📁 Correspondence
   📁 Promissory Notes
   📁 Miscellaneous
   📁 LTCA376
   📁 LTCA375
   📁 STCA375

| Name | Modified |
|------|----------|

Bankruptcy Indicator
☐

**Legal Notes**

09/12/16 Entity 5205 Amendment finalized removing Nora Garcia. Cgd;

**Entity Breakdown**

| Id | Name | DMA | Sales Rep DM | RD | AD | Address | City | State | Internal Support | Open Date | Return Count | Status |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Region 101 (Apollo Emeka ) | | | | Jay Canaday | | | | | | | | |
| CA375 | ElCentroCA-1 | Yuma-El Centro, AZ-CA | Unassigned Unassigned | | Apollo Emeka | | | | Patricia Old | | | Active/Contract Closed |
| 14926 | El Centro | | | | | 440 SOUTH 4TH STREET | El Centro | CA | | 1/8/2009 | 1 | Active |
| 19715 | Siempre | | | | | 350 Ross Ave Suite E | El Centro | CA | | 1/8/2015 | 0 | Inactive |
| CA376 | BrawleyCA-1 | Yuma-El Centro, AZ-CA | Unassigned Unassigned | | Apollo Emeka | | | | Patricia Old | | | Active/Contract Closed |
| 19230 | BRAWLEY OFFICE | | | | | 251 W MAIN ST | Brawley | CA | | 1/8/2014 | 0 | Active |

## Territory CA375

---

### General Information

#### Territory Information

Name
ElCentroCA-1

Status
Active/Contract Closed

Previous Status                                 Entity 🔍
Under Contract                                  5205

Area Developer 🔍        Region
8758                     101 (Apollo Emeka )

City                     State
El Centro                California

DMA                                             Type
Yuma-El Centro, AZ-CA                           Standard Market

Contract Effective       Contract Expires       FR Contract Effective
4/30/2008                4/30/2013               5/1/2013

FR Contract Expires      Buy Back               Projected Open Date
5/1/2018                                         1/8/2009

Commission Agree Exp.    Sale Price             Sale Price Includes
                         $0.00                  Commission and Transfer
                                                Fee

For Sale By Owner        Advertising
☐                        ☐

AD Support Rep
Patricia Old

Guarantee


Guarantor


Sales Rep
Unassigned

District Manager
Unassigned

Last Locked GRR:
12/2018

Territory Transaction
[Select]

#### Brand Information

Territory Brand Indicator       Sales Rights Indicator          SB Contract Effective
Liberty & SiempreTax  ⌄         [Select]                        11/13/2014

SB Contract Expires             SB FR Contract Effective        SB FR Contract Expires
11/13/2019

SB Projected Opening Date
2015                      ⌄

### Agreement Type

Royalty Type
Third Year+ -14% of Gross Receipts, subject to $11,000 minimum (FA 7-12,7-11,7-10,7-09,7-08,7-07,7-06,7-  ⌄

Advertising
5% of all Gross Receipts                                                                          ⌄

Market Maps

### Description

NORTH of and including I-8 from SR-111 to Forrester Rd.
EAST of and including Forrester Rd from I-8 to W Keystone Rd
SOUTH of and excluding W Keystone Rd continuing onto SOUTH of and excluding E Keystone Rd from Forrester Rd to SR-111.
WEST of and excluding SR-111 from E Keystone Rd to I-8.

### Territory Map

### City Map

### Competition Offices

#### Competition Office List

| | Office Name | Address | City | State/Province | Competitor | Return Count |
|---|---|---|---|---|---|---|
| Select | H & R BLOCK | 3051 N IMPERIAL AVE | EL CENTRO | CA | H&R Block | 2229 |
| Select | JACKSON HEWITT TAX SERVICE | 3751 S DOGWOOD AVE | EL CENTRO | CA | Jackson Hewitt | 32 |
| Select | JACKSON HEWITT TAX SERVICE | 2150 N WATERMAN AVE | EL CENTRO | CA | Jackson Hewitt | 0 |

#### Competition Office Detail

Select an office above, or Add a new Competition Office

### Legal

**Legal Documents**

| Name | Modified |
|------|----------|
|      |          |

## Notes

### Territory Notes

Royalty update 05.12.2009 Royalty update 05.11.2010
(ADT-SWST014)

### Sale Notes

### FA Address

**Entity Information**

| | |
|---|---|
| Entity Name: | Maribel Gorosave |
| Entity Phone: | (626) 482-9168 |
| Entity Cell Phone: | (626) 482-9168 |
| Area Developer Name: | Apollo Emeka |

**Territory Breakdown**

| Id | Name | DMA | Sales Rep | DM | RDAD | Address | City | State | Internal Support | Open Date | Return Count | Status |
|----|------|-----|-----------|----|----|---------|------|-------|----------|----------|--------|--------|
| CA375 | ElCentro | CA-1 Yuma-El Centro, AZ-CA | Unassigned | Unassigned | Apollo Emeka | | | | Patricia Old | | | Active/Contract Closed |
| 14926 | El Centro | | | | | 440 SOUTH 4TH STREET | El Centro | CA | | 1/8/2009 | 1 | Active |
| 19715 | Siempre | | | | | 350 Ross Ave Suite E | El Centro | CA | | 1/8/2015 | 0 | Inactive |

**Territory CA376**

---

## General Information

### Territory Information

Name
BrawleyCA-1

Status
Active/Contract Closed

Previous Status                                    Entity 🔍
Under Contract                                     5205

Area Developer 🔍          Region
8758                       101 (Apollo Emeka )

City                       State
Brawley                    California

DMA                        Type
Yuma-El Centro, AZ-CA      Standard Market

Contract Effective         Contract Expires        FR Contract Effective
12/19/2013                 12/19/2018

FR Contract Expires        Buy Back                Projected Open Date
                                                   1/8/2014

Commission Agree Exp.      Sale Price              Sale Price Includes
                           $40,000.00              Commission and Transfer
                                                   Fee

For Sale By Owner          Advertising
☐                          ☐

AD Support Rep
Patricia Old

Guarantee


Guarantor


Sales Rep
Unassigned

District Manager
Unassigned

Last Locked GRR:
12/2018

Territory Transaction
[Select]

### Brand Information

Territory Brand Indicator          Sales Rights Indicator          SB Contract Effective
Liberty Exclusive  ▼               [Select]                        ▼

SB Contract Expires                SB FR Contract Effective        SB FR Contract Expires

---

**Agreement Type**

Royalty Type
Third Year+ -14% of Gross Receipts, subject to $11,000 minimum (FA 7-12,7-11,7-10,7-09,7-08,7-07,7-06,7-  ▼

Advertising
5% of all Gross Receipts                                                                               ▼

Market Maps

---

**Description**

NORTH of and including Keystone Rd from SR-115 to McConnell Rd.
WEST of and excluding McConnell Rd from Keystone Rd to E Keystone Rd.
NORTH of and including E Keystone Rd continuing onto NORTH of and including W Keystone Rd from McConnell Rd to
Forrester Rd.
EAST of and including Forrester Rd from W Keystone Rd to Baughman Rd.
NORTH of and including Baughman Rd from Forrester Rd to S H St.
EAST of and including S H St from Baughman Rd to W Main St.
SOUTH of and excluding S Main St continuing onto SOUTH of and excluding E Main St continuing onto SOUTHWEST of and
excluding Miller Ave from S H St to Boarts Rd.
EAST of and excluding Boarts Rd continuing onto SOUTH of and excluding Boarts Rd from Miller Ave to Kalin Rd.
EAST of and including Kalin Rd from Boarts Rd to W Rutherford Rd.
SOUTH of and excluding W Rutherford Rd continuing onto SOUTH of and excluding Rutherford Rd from Kalin Rd to West Rd.
WEST of and excluding West Rd from Rutherford Rd to Ben Hulse Hwy.
SOUTH of and excluding Ben Hulse Hwy from West Rd to SR-115.
WEST of and excluding SR-115 from Ben Hulse Hwy to Keystone Rd.

---

**Territory Map**



---

**City Map**



---

**Competition Offices**

**Competition Office List**

| Office Name | Address | City | State/Province | Competitor | Return Count |
|---|---|---|---|---|---|
| Select H&R BLOCK | 631 MAIN ST | BRAWLEY | CA | H&R Block | 2409 |
| Select JACKSON HEWITT TAX SERVICE | 250 WILDCAT DR | BRAWLEY | CA | Jackson Hewitt | 0 |

**Competition Office Detail**

Select an office above, or Add a new Competition Office

## Legal

### Legal Documents ⟳

| Name | Modified |
|------|----------|
|      |          |

## Notes

### Territory Notes

Royalty update 6.30.2015 Royalty update 6.30.2015

(ADT-SWST014)

### Sale Notes

10/1/13 - UC to 5205 for expansion; see Oscar A or Liza M for details. elt

### FA Address

### Entity Information

Entity Name:    Maribel Gorosave
Entity Phone:    (626) 482-9168
Entity Cell Phone:    (626) 482-9168
Area Developer Name:    Apollo Emeka

### Territory Breakdown

| Id | Name | DMA | Sales Rep DM | RDAD | Address | City | State | Internal Support | Open Date | Return Count | Status |
|----|------|-----|--------------|------|---------|------|-------|------------------|-----------|--------------|--------|
| CA376 | Brawley CA-1 | Yuma-El Centro, AZ-CA | Unassigned Unassigned | Apollo Emeka | | | | Patricia Old | | | Active/Contract Closed |
| 19230 | BRAWLEY OFFICE | | | | 251 W MAIN ST | Brawley | CA | | 1/8/2014 | 0 | Active |

# EXHIBIT

# E



July 11, 2019

**VIA UPS**
Maribel Gorosave
937 Lee Ave.
Calexico, CA 92231

      **Re: Non-Renewal of Liberty Tax Service Franchise Agreement for CA375**
      **Entity: 5205**

Dear Maribel Gorosave:

      This is to confirm that you have notified Liberty in writing on June 25, 2019, of your intent not to renew your Franchise Agreement, pursuant to the terms of your Franchise Agreement with JTH Tax, Inc. d/b/a Liberty Tax Service ("Liberty") for the territory known as CA375. As such, Liberty accepts and agrees to your voluntary election to non-renew your Franchise Agreement. Therefore, the Franchise Agreement for the above referenced territory is hereby non-renewed such that, effective immediately, you shall no longer retain any rights to the territory.

      **Please be reminded that you are bound by your post-termination duties, including but not limited to the covenant not to compete**. These duties also include returning all paper and electronic customer information to Liberty as well as transferring the Liberty phone number(s) to Liberty. Please deliver all electronic and paper files and customer information immediately. Please also immediately remit any and all amounts due and owing for this territory.

      Please contact your Operational Support Representative if you have any questions or concerns.

                                    **LIBERTY TAX SERVICE**

DocuSigned by:

E032BD2AD61A4C6...

CC: Shaun York                          Brent Turner
      Jay Canaday                      Chief Executive Officer



LEGAL TRANSACTIONS
757-301-8400
LIBERTY TAX SERVICE
1716 CORPORATE LANDING PKWY
VIRGINIA BEACH VA 23454

0.1 LBS    LTR

1 OF 1

**SHIP TO:**
MARIBEL GOROSAVE
(626) 482-9168
937 LEE AVE.
CALEXICO  CA 92231-2012

CA 922 1-01

UPS 2ND DAY AIR

2

TRACKING #: 1Z E26 5W3 02 9447 7571

BILLING: P/P

Reference # 1: 93
Reference # 2: elt

GS 21.5.22.    WNDNV95 12.0A 04/2019

**Ericka Tynan**

| | |
|---|---|
| **From:** | Thomas Bartolomeo |
| **Sent:** | Tuesday, July 09, 2019 9:14 AM |
| **To:** | Legal Transactions |
| **Cc:** | Patricia Old |
| **Subject:** | FW: FA Renewal |

Good morning Legal team,

Below is an email chain regarding the non-renewal of Entity 5205 Maribel Gorosave. In the email from Maribel on 6/25 she indicated she does not wish to renewal her expired FA. Is this enough to proceed with the non-renewal process and if so what will be needed from the operations side? Please let me know if any additional information is needed.

Thank you,

**Thomas Bartolomeo** | Area Developer Corporate
1716 Corporate Landing Pkwy | Virginia Beach, VA 23454
Office: 757-453-6175



   

---

**From:** Thomas Bartolomeo
**Sent:** Monday, July 8, 2019 10:33 AM
**To:** Maribel Gorosave <maribelgorosave@hotmail.com>
**Cc:** Patricia Old <patricia.old@libtax.com>
**Subject:** RE: FA Renewal

Good morning Maribel,

I hope you had a great weekend. Please give me a call at your earliest opportunity to discuss the non-renewal process. I can be reached anytime at 757-453-6175.

Best,

**Thomas Bartolomeo** | Area Developer Corporate
1716 Corporate Landing Pkwy | Virginia Beach, VA 23454
Office: 757-453-6175



   

**From:** Thomas Bartolomeo
**Sent:** Friday, June 28, 2019 1:49 PM
**To:** Maribel Gorosave <maribelgorosave@hotmail.com>
**Cc:** Patricia Old <patricia.old@libtax.com>
**Subject:** RE: FA Renewal

Good afternoon Maribel,

I wanted to follow up to discuss what the non-renewal process will be like. I gave you a call and caught your voicemail, please give me a call at your earliest opportunity.

Best,


**Thomas Bartolomeo** | Area Developer Corporate
1716 Corporate Landing Pkwy | Virginia Beach, VA 23454
Office: 757-453-6175



   


**From:** Thomas Bartolomeo
**Sent:** Tuesday, June 25, 2019 1:46 PM
**To:** Maribel Gorosave <maribelgorosave@hotmail.com>
**Cc:** Patricia Old <patricia.old@libtax.com>
**Subject:** RE: FA Renewal

Good morning Maribel,

I'm sorry to hear that you have decided not to renew your franchise agreement with Liberty Tax. I am happy to help as you transition out of the system. The first step will be to submit an evaluation to our owned and operated team. At your earliest opportunity, please respond with the land lord contact information as well as the most recent lease on the space. Once the owned and operated department completes the evaluation we can determine how to proceed with the files.

Please let me know if you have any questions as this process moves forward.

Best,


**Thomas Bartolomeo** | Area Developer Corporate
1716 Corporate Landing Pkwy | Virginia Beach, VA 23454
Office: 757-453-6175



   

**From:** Maribel Gorosave <maribelgorosave@hotmail.com>
**Sent:** Tuesday, June 25, 2019 1:28 PM
**To:** Thomas Bartolomeo <Thomas.Bartolomeo@libtax.com>
**Subject:** Re: FA Renewal

**EXTERNAL:** This email originated from outside of Liberty Tax. Do not click any links or open any attachments unless you trust the sender and know the content is safe.

Good Morning Mr. Bartolomeo,

I do not plan to renew the contract with Liberty Tax Service.  Please let me know what I should do with the files I currently have.  I will be out of town this week, but will return July 1st.

Thank you,
Maribel Gorosave

Liberty Tax Service
440 S. 4th Street
El Centro, CA 92243
760-352-7642

---

**From:** Thomas Bartolomeo <Thomas.Bartolomeo@libtax.com>
**Sent:** Friday, June 21, 2019 7:56 AM
**To:** maribelgorosave@hotmail.com
**Subject:** FA Renewal

Good morning Maribel,

I hope the week has treated you well. I wanted to reach out to confirm you received your Franchise Agreement renewal. Please take the time to review and sign the document. If you have any questions regarding the renewal please do not hesitate to reach out.

Best,

**Thomas Bartolomeo** | Area Developer Corporate
1716 Corporate Landing Pkwy | Virginia Beach, VA 23454
Office: 757-453-6175



   

This electronic communication and any files transmitted with it, or attached to it, are confidential and are intended solely for the use of the individual or entity to whom it is addressed and may contain information that is confidential, legally privileged, protected by privacy laws, or otherwise restricted from disclosure to anyone else. If you are not the intended recipient or the person responsible for delivering the e-mail to the intended recipient, be advised that you have received this e-mail in error, and that any use, dissemination, forwarding, printing, or copying of this e-mail is strictly prohibited. If you received this e-mail in error, please return the e-mail to the sender, delete it from your computer and destroy any printed copy of it. Although our company attempts to sweep e-mail and attachments for viruses, it does not guarantee that either are virus-free and accepts no liability for any damage sustained as a result of viruses.

**Patricia Old**

| | |
|---|---|
| **From:** | Elizabeth Cabrera |
| **Sent:** | Tuesday, July 9, 2019 9:44 AM |
| **To:** | Thomas Bartolomeo; Legal Transactions |
| **Cc:** | Patricia Old |
| **Subject:** | RE: FA Renewal |

*5205 - CA375*

Good morning,

This is sufficient from the Zee to proceed – we do need COO and RD approval as well.   Note that we show a past due amount of $4,131.69 for this zee, who is exiting system.

Thank you,
Lisa

---

**Lisa Cabrera**
Legal Department Manager | Senior Corporate Paralegal
**Liberty Tax Service** | www.libertytax.com
1716 Corporate Landing Pkwy. | Virginia Beach, VA 23454
Office: 757-301-8297



RD: ____
COO: ____

**From:** Thomas Bartolomeo
**Sent:** Tuesday, July 9, 2019 9:14 AM
**To:** Legal Transactions <LegalTransactions@libtax.com>
**Cc:** Patricia Old <patricia.old@libtax.com>
**Subject:** FW: FA Renewal

Good morning Legal team,

Below is an email chain regarding the non-renewal of Entity 5205 Maribel Gorosave. In the email from Maribel on 6/25 she indicated she does not wish to renewal her expired FA. Is this enough to proceed with the non-renewal process and if so what will be needed from the operations side? Please let me know if any additional information is needed.

Thank you,

**Thomas Bartolomeo** | Area Developer Corporate
1716 Corporate Landing Pkwy | Virginia Beach, VA 23454
Office: 757-453-6175



## Party Information

**\***     At least one is required.

**\*\***     To use this field, you must also enter a last name or entity name.

| Find Bankruptcy by SSN/EIN
Basic Party Search

**Party** ❓

Last Name or Entity Name: *     First Name: **     Middle Name: ** ❓

`Gorosave`     `Maribel`

Last Name or Entity Name *     First Name **     Middle Name **

☐ Exact Matches Only ❓

**Party Role**     ❓

**Four Digit SSN** **    `5661` ❓

**SSN or EIN** *     ❓

**No Results Found**

The search returned no results.

## Case Information

**Court Type**     `Bankruptcy` ❓

**PACER Service Center**

| | **Receipt** 07/11/2019 16:24:32 912609624 |
| User | legalcompliance |
| Client Code | |
| Description | Bankruptcy Party Search |
| | All Courts; Name Gorosave, Maribel; Jurisdiction BK; SSN4 5661; All Courts |
| Results | The search returned no results. |
| Billable Pages | 1 ($0.10) |

**Case**     Number: * ❓     Title: ❓

Number * ❓     Title ❓

Type: ❓

Type ❓

[ OK ]    [ Save Search ]

**Region**     ❓ Map

**Chapter** *     ❓

## Date Range

**Date Filed** *     [ ] [ ] to [ ] [ ]     Prior Month   Prior Six Months   Prior Year ❓

**Date Closed** *     [ ] [ ] to [ ] [ ]     Prior Month   Prior Six Months   Prior Year ❓

**Date Dismissed** *     [ ] [ ] to [ ] [ ]     Prior Month   Prior Six Months   Prior Year ❓

**Date Discharged** *     [ ] [ ] to [ ] [ ]     Prior Month   Prior Six Months   Prior Year ❓

**NOTE:**     Newly filed cases will typically appear on this system within 24 hours. Check the  Court Information  page for data that is currently available on the PCL. The most recent data is available directly from the court.

Search    Clear

☐ Make this my PCL home page.

**No Results Found**

The search returned no results.

| **PACER Service Center** | |
| --- | --- |
| | **Receipt** 07/11/2019 16:24:32 912609624 |
| **User** | legalcompliance |
| **Client Code** | |
| **Description** | Bankruptcy Party Search |
| | All Courts; Name Gorosave, Maribel; Jurisdiction BK; SSN4 5661; All Courts |
| **Results** | The search returned no results. |
| **Billable Pages** | 1 ($0.10) |

OK    Save Search

**Debt as of 7/10/2019**

**Entity**      5205

|  | Current | Past Due | Total |
|---|---|---|---|
| Notes | - | - | - |
| AR | - | 4,131.69 | 4,131.69 |
| *Total* | - | *4,131.69* | *4,131.69* |

## Contact Information

**Entity Name:** Maribel Gorosave
**Owner Name:** Maribel Gorosave
**Phone:** (626) 482-9168
**Email:** maribelgorosave@hotmail.com
**Address:** 937 Lee Ave Calexico, CA 92231

## Key Metrics

Hide

COS08 - Company Store Cleanup
COS09 - Current Year Company Store Impairment Data
PRF60 - Franchisee Performance Metrics
PRF61 - Franchisee Performance for Finance and Operations
PRF64 - Performance Information for Operations
ACC32 - Zee Debt Snapshot
RDR62 - Budget, P&L, & Action Plan Required Information
RDR64 - Payment Summary
Financial Products Enrollment Compliance- Corporate

### Operation Data

| | Current Calendar YTD | Prior Calendar YTD | Variance |
|---|---|---|---|
| # of Offices | 1 | 2 | -50.00% |
| Total Returns | 361 | 337 | 7.12% |
| Free Returns | 62 | 59 | 5.08% |
| Gross Fees | 123,979.78 | 113,765.00 | 8.98% |
| Net Fees | 81,947.04 | 84,526.00 | -3.05% |
| Average Net Fees | 278.73 | 307.37 | -9.32% |

### Compliance Data

| | |
|---|---|
| Budget Approved | |
| P&L Approved | |
| Action Plan Approved | |
| Last GRR Locked | 6/5/2019 |

### Financial Data

| | FY2020 | FY2019 | FY2018 |
|---|---|---|---|
| Operating Loan: | 0.00 | 0.00 | 0.00 |
| CIF Loan: | 0.00 | 5,950.00 | 5,200.00 |
| Total Debt: | 4,131.69 | 0.00 | 0.00 |

## Snapshot

### Communication

**Category**
-- select --

**Product**
-- select --

**Sub Product**
-- select --

**Status**
-- select --

**Follow up**

**Subject**

**Comment**

Add New

### Contact Log History

There is no contact log history found

### Issues

| ID | Status | Product | Department | Assigned | Issue Title | Owner | Mo |
|---|---|---|---|---|---|---|---|
| 2151421 | Waiting On Customer | Customer Opportunity | Operations (US) | liberty\ad8758 | Customers whose returns inadvertently included Form 8689 | LIBERTYTAX\ent5205 | 5/2 5:4 PM |
| 2136807 | Waiting On Customer | Document Request | Operations (US) | liberty\patricia.old | CA375 FA Renewal | LIBERTYTAX\ent5205 | 4/1 9:4 AM |
| 2128556 | Waiting On Customer | Customer Opportunity | Operations (US) | liberty\ad8758 | CAMPOS, CA | LIBERTYTAX\lts14926 | 4/4 11: AM |
| 2116150 | Waiting On Customer | Phoenix | Technical Support (US) | | Client: Arturo Barrios 8029 | LIBERTYTAX\lts14926 | 3/1 10: AM |
| 2116146 | Waiting On Customer | Phoenix | Technical Support (US) | | Client: Bertha Coronado 1148 | LIBERTYTAX\lts14926 | 3/1 10: AM |

## General Information

**Entity Name**
Maribel Gorosave

**Entity Type**
Franchisee

**Entity Status**
Contract Closed/Active

**Ownership Type**
Sole-proprietorship

**EIN**
26-1319294

**Termination Date**

**Broker**
None

**Corporate Entity**

### Contact Information

**Address**
937 Lee Ave

**Zip/Postal Code**
92231

**City**
Calexico

**State/Province**

**Phone**

**Fax**

California　　　　　　　　　　　　　　　　(626) 482-9168　　　　　　　(760) 352-7643

Cell/Text Phone　　　　　　　　　　　Email
(626) 482-9168　　　　　　　　　　　maribelgorosave@hotma

## Insurance Information

Participation　　　　　　　　Licensed Agent - Franchisee　　Licensed Agent - Employee　　3rd Party Agent - In Office
[Select]　▼　　　　　　　　☐　　　　　　　　　　　　☐　　　　　　　　　　　　☐

3rd Party Agent - Referral
☐

## Entity Office Count Goal

| Current | 2021 | 2022 | 2023 |
| --- | --- | --- | --- |
| 1 | 0 | 0 | 0 |

Last Modified
1/8/2019

| Schedule Opening: | 2021 | 2022 | 2023 |
| --- | --- | --- | --- |
| | 0 | 0 | 0 |

## Location Information

| Address | Zip/Postal Code | City |
| --- | --- | --- |
| 937 Lee Ave | 92231 | Calexico |

State/Province　　　　　　　　　　　　　Phone
California　　　　　　　　　　　▼　　　(626) 482-9168

## Billing Information

Name　　　　　　　　　Address　　　　　　　　　　　　　　Zip/Postal Code

City　　　　　　　　　State/Province
　　　　　　　　　　　California　　　　　　　　　▼

## Entity Owner(s)

### Primary Owner

| | First Name | Last Name | Date Of Birth | SSN |
| --- | --- | --- | --- | --- |
| Owner: | Maribel | Gorosave | 10/11/1979 | ###-##-5661 |
| Spouse: | | | | |

## Settings

Withholding Type　　　　　Support Level　　　　Receive Daily Metrics Email　　Top Gun A
Standard Fee Intercept ▼　Rank 2　　　　▼　　☑　　　　　　　　　　　　

Top Gun B　　　　　Elite 18　　　　　Millionaire　　　　　Large Entity Support
☐　　　　　　　　☐　　　　　　　　☐　　　　　　　　　☐

Fantastic 50　　　　ACA Certified　　　PHOENIX Remote Signing
☐　　　　　　　　☐　　　　　　　　☑

### Pricing Curve

| Start Date | Pricing Curve |
| --- | --- |
| 1/2 | 85% |
| 1/20 | 100% |

3/1          80%
4/8          100%

### Bank Account Information

Name on Account          Routing Number (RTN)          Account Number (DAN)
MARIBEL GOROSAVE         122000247                     6325946850

Account Type
Checking             ▾

### Wire Transfer Information

Wire transfers are offered at a rate of $50 per request; this fee will be billed to your AR. Do you accept this fee for future wire requests?
Accept Wire Fees: ☐

Bank Name                Routing Number (RTN)

### Entity Debt Tracking

### FAC Pre-Approval

Level              Amount              Start Date          End Date
2            ▾     25000               4/1/2014            1/31/2015

Note

---

### Legal

#### Legal Documents

📂 **5205**
   🗀 Onboarding Documents
   🗀 Entity Amendments & Guaranties
   🗀 Correspondence
   🗀 Promissory Notes
   🗀 Miscellaneous
   🗀 LTCA376(i)
   🗀 LTCA375
   🗀 STCA375(i)

| Name | Modified |
| --- | --- |
| 📄 5205 Completed MT Packet CA375 CA376.pdf | June 12th 2019, 11:10:20 am |

Bankruptcy Indicator
☐

#### Legal Notes

1/8/19 Terminating Siempre rights of CA375 and CA376 with one active office: 19230 via MT. TSM maribelgorosave@hotmail.com
09/12/16 Entity 5205 Amendment finalized removing Nora Garcia. Cgd;

---

**Entity Breakdown**

| Id | Name | DMA | Sales Rep | DM | RD | AD | Address | City | State | Internal Support | Open Date | Return Count | Status |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Region 101 (Thomas Bartolomeo) | | | | | Jay Canaday | | | | | | | | |
| CA375 | ElCentro | Yuma-El Centro, AZ-CA | CA-1 | Unassigned | Unassigned | Thomas Bartolomeo | | | | Patricia Old | | | Active/Contract Closed |
| 14926 | El Centro | | | | | | 440 SOUTH 4TH STREET | El Centro | CA | | 1/8/2009 | 361 | Active |
| 19715 | Siempre | | | | | | 350 Ross Ave Suite E | El Centro | CA | | 1/8/2015 | 0 | Inactive |

## General Information

### Territory Information

**Name**
ElCentroCA-1

**Status**
Active/Contract Closed

**Previous Status**
Terminated/For Sale

**Entity** 🔍
5205

**Area Developer** 🔍
8758

**Region**
101 (Thomas Bartolomeo)

**City**
El Centro

**State**
California

**DMA**
Yuma-El Centro, AZ-CA

**Type**
Standard Market

**AD FF Royalty %**
0.00%

**AD Royalty %**
0.00%

**Contract Effective**
4/30/2008

**Contract Expires**
4/30/2013

**FR Contract Effective**
5/1/2013

**FR Contract Expires**
5/1/2018

**Buy Back**

**Projected Open Date**
1/8/2009

**Commission Agree Exp.**

**Sale Price**
$0.00

**Sale Price Includes
Commission and Transfer
Fee**
☐

**For Sale By Owner**
☐

**Advertising**
☐

**AD Support Rep**
Patricia Old

**Guarantee**

**Guarantor**

**Sales Rep**
Unassigned

**District Manager**
Unassigned

**Last Locked GRR:**
05/2019

**Territory Transaction**
[Select]

### Brand Information

**Territory Brand Indicator**
Liberty Only

**SB Contract Effective**
11/13/2014

**SB Contract Expires**
11/13/2019

**SB FR Contract Effective**

**SB FR Contract Expires**

### Agreement Type

**Royalty Type**
Third Year+ -14% of Gross Receipts, subject to $11,000 minimum (FA 7-12,7-11,7-10,7-09,7-08,7-07,7-06,7-05,7-

**Advertising**
5% of all Gross Receipts

Market Maps

## Description

NORTH of and including I-8 from SR-111 to Forrester Rd.
EAST of and including Forrester Rd from I-8 to W Keystone Rd
SOUTH of and excluding W Keystone Rd continuing onto SOUTH of and excluding E Keystone Rd from Forrester Rd to SR-111.
WEST of and excluding SR-111 from E Keystone Rd to I-8.

### Territory Map



### City Map



## Competition Offices

### Competition Office List

| | Office Name | Address | City | State/Province | Competitor | Return Count |
|---|---|---|---|---|---|---|
| Select | H & R BLOCK | 3051 N IMPERIAL AVE | EL CENTRO CA | | H&R Block | 2229 |
| Select | JACKSON HEWITT TAX SERVICE | 3751 S DOGWOOD AVE | EL CENTRO CA | | Jackson Hewitt | 32 |
| Select | JACKSON HEWITT TAX SERVICE | 2150 N WATERMAN AVE | EL CENTRO CA | | Jackson Hewitt | 0 |

### Competition Office Detail

Select an office above, or Add a new Competition Office

## Legal

### Legal Documents

- 📂 5205
  - 📂 **LTCA375**
    - 📁 Amendments
    - 📁 Special Stips

| Name | Modified |
|---|---|
| 5205 LTS FA CA375 - 050113.pdf | June 20th 2019, 2:49:21 pm |
| 5205 Maribel Gorosave LTS Ex. K 051718.pdf | June 21st 2018, 9:06:29 am |

## Notes

### Territory Notes

1/8/19 Previously owned by entity 5205; Siempre rights terminated via MT. TSM
Royalty update 05.12.2009 Royalty update 05.11.2010

(ADT-SWST014)

Previously owned by Entity 5205 terminated on 01/08/2019.

Territory CA375 terminated on 01/08/2019.

(BRAND MIRROR-CA9DV)

---

**Sale Notes**

---

**FA Address**

---

**Entity Information**

Entity Name:  Maribel Gorosave
Entity Phone:  (626) 482-9168
Entity Cell Phone:  (626) 482-9168
Area Developer Name:  Thomas Bartolomeo

---

**Territory Breakdown**

| Id | Name | DMA | Sales Rep | DM | RDAD | Address | City | State | Internal Support | Open Date | Return Count | Status |
|----|------|-----|-----------|----|----|---------|------|-------|------------------|-----------|--------------|--------|
| **CA375** | ElCentro | CA-1 | Yuma-El Centro, AZ-CA | Unassigned | Unassigned | Thomas Bartolomeo | | | | Patricia Old | | | Active/Contract Closed |
| 14926 | El Centro | | | | | | 440 SOUTH 4TH STREET | El Centro | CA | | 1/8/2009 | 361 | Active |
| 19715 | Siempre | | | | | | 350 Ross Ave Suite E | El Centro | CA | | 1/8/2015 | 0 | Inactive |

## General Information

| Office Name | Reporting Status | Status | Processing Office | Entity |
|---|---|---|---|---|
| El Centro | Active | Active | 14926 | 5205 |
| | | Detail Status:None | | |

| Area Developer | Territory | Region | | Open Date |
|---|---|---|---|---|
| 8758 | CA375 | 101 (Thomas Bartolomeo) | | 1/8/2009 |

### IRS Electronic Filing

| Office EFIN | EFIN Tracking Number | Ownership Type | Vendor Control Number |
|---|---|---|---|
| 304583 | 20080610223412462772 | Individual | 97864D4D95 |

| First Name | Last Name | SSN | Date of Birth |
|---|---|---|---|
| Maribel | Gorosave | 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 | 10/11/1979 |

#### Uploaded Verification Documents

EFIN/FA Verified ☑

EFIN Application Summary

### Manager

| First Name | Last Name | SSN | Date of Birth |
|---|---|---|---|
| Maribel | Gorosave | 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 | 10/11/1979 |

Email
maribelgorosave@hotma

### Office Address

The information below will be published to your office page and online search directories (such as Google & Bing), once the information is approved. Click on the "Office Page/Online Listings Info" button on the top menu bar to view all the information that will be published.

Address
440 SOUTH 4TH STREE

Address 2

| Zip | City | State |
|---|---|---|
| 92243 | El Centro | California |

| Phone | Alt Phone | Fax | Hispanic Phone | Cell/Text Phone |
|---|---|---|---|---|
| (760) 352-7642 | (760) 352-7643 | (760) 352-7643 | | (626) 482-9168 |

| Local Smart Number | Use Local Smart Number |
|---|---|
| (760) 970-8569 | ☑ |

Email
maribelgorosave@hotma

Landmark

#### Office Page Description

Se Habla Espanol
Also available by Appointment

### Projections/Counts

| Zee Budgeted Returns | Returns | Actual Returns | Zee Budgeted Avg. Net Fee | Target Avg. Net Fee |
|---|---|---|---|---|
| 381 | | 361 | | $325.00 |

| Actual Avg. Net Fee | Sales Tax |
|---|---|
| $278.73 | |

## Location Information

### Regular mail

Contact Name                 Phone Number        Address

| Zip Code | City | State |
|----------|------|-------|
|  |  | [Select] |

**Packages**

| Contact Name | Phone Number | Address |
|--------------|--------------|---------|
| Maribel Gorosave | (760) 352-7642 | 440 SOUTH 4TH STREE |

| Zip Code | City | State |
|----------|------|-------|
| 92243 | El Centro | California |

**Overnight mail**

| Contact Name | Phone Number | Address |
|--------------|--------------|---------|
|  |  |  |

| Zip Code | City | State |
|----------|------|-------|
|  |  | [Select] |

**Entity Billing Address**

| Name | Address | Zip |
|------|---------|-----|
|  |  |  |

| City | State |
|------|-------|
|  | CA |

**Landlord Contact Information**

Check Payee
Desert Properties

Address 1
429 W. Main Street

Address 2

| Zip | City | State |
|-----|------|-------|
| 92243 | El Centro | California |

| Contact Name | Phone | Email |
|--------------|-------|-------|
|  | (760) 352-7791 |  |

This landlord authorizes ACH receipt of rents
☐

**Landlord Bank Account Information**

| Routing Number (RTN) | Account Number (DAN) | Account Type |
|----------------------|----------------------|--------------|
|  |  | [Select] |

Re-enter Routing Number    Re-enter Account Number

Name as it appears on account

**Rent / Lease Information**

**Lease Terms**

| Start Date | End Date | Monthly Rent | Monthly Cam | Rent Due Day |
|------------|----------|--------------|-------------|--------------|
| No lease terms have been added | | | | |

| Lease Start Date | Lease Expiration Date |
|------------------|------------------------|
| 5/1/2015 | 4/30/2017 |

**Uploaded Lease Document**

Landlord Information Verified
☐
Landlord Verification History

## Hours & Services

### Hours of Operation

| Day | Open Time | Close Time | By Appointment Only |
|-----|-----------|------------|---------------------|
| Monday | 9:00 AM - | 5:00 PM | ☐ |
| Tuesday | 9:00 AM - | 5:00 PM | ☐ |
| Wednesday | 9:00 AM - | 5:00 PM | ☐ |
| Thursday | 9:00 AM - | 5:00 PM | ☐ |
| Friday | - | | ☐ |
| Saturday | - | | ☑ |
| Sunday | - | | ☐ |

### Auxiliary Business Services

**Start Date** is when the auxiliary business will be posted on your office page and **End Date** (which may be left blank) is when the auxiliary business will be removed from your office page. Updates to post/remove auxiliary business from your office page occur frequently throughout the day.

**Notary** ☐

This service is not available in this office

Stip Execution Date:

**Passport & ID Photos** ☐

This service is not available in this office

Stip Execution Date:

**Printing & Copy Services** ☐

This service is not available in this office

Stip Execution Date:

**Bookkeeping** ☐

This service is not available in this office

Stip Execution Date:

**Payroll** ☐

This service is not available in this office

Stip Execution Date:

**Translation** ☐

This service is not available in this office

Stip Execution Date:

**Calling Card** ☐

This service is not available in this office

Stip Execution Date:

**Health Insurance** ☐

This service is not available in this office

Stip Execution Date:

**Juntos Podemos Share Money Card**  ☐          **Juntos Podemos Bill Payments**  ☐

    This service is not available in this office                  This service is not available in this office

Stip Execution Date: _____                              Stip Execution Date: _____


**Fax Services**  ☐                               **English as a Second Language Classes**  ☐

    This service is not available in this office                  This service is not available in this office

Stip Execution Date: _____                              Stip Execution Date: _____


**AILA – Immigration Referral Program**  ☐        **FREE ITIN Assistance**  ☐

    This service is not available in this office                  This service is not available in this office

Stip Execution Date: _____                              Stip Execution Date: _____


**Driver's License Assistance**  ☐               **Property and Casualty Insurance**  ☐

    This service is not available in this office                  This service is not available in this office

Stip Execution Date: _____                              Stip Execution Date: _____


### Settings

| Office Operation | Office Type | Software Type | RT Processor | Financial Product Partner |
|---|---|---|---|---|
| Year Round | Storefront | Libtax | JTH Financial | Meta Bank - Advance |

| Tax School Group | Hispanic Office | Office Branding | OCP Enabled | Permitted to Reprint Checks |
|---|---|---|---|---|
| Ymua-El Centro | Unspecified | Liberty Tax Office | ☑ | ☑ |

| Able to Print RTs | Able to Print Loans | High Fee Bank Rule | ACA Certified | Check Processing Fee |
|---|---|---|---|---|
| ☑ | ☑ | | ☐ | $0.00 |

| E-file Fee | Card Incentive | RAL Registered |
|---|---|---|
| $19.98 | Zee/Preparer | ☐ |

#### Cashbox Information

Cashbox Verification On _____          Cashbox Notification Email _____   Cashbox Low Balance Amt _____

| ☑ | Cashbox Receipt Printing On | Cashbox Low Balance Notification Opt-In | maribelgorosave@hotma | 50.00 |
| | ☑ | ☐ | | |

### Corporate Initiatives

| A+ Program | Insurance RTO Program | Acquisition | Conversion |
| ☐ | ☐ | ☐ | ☐ |

### Office Bank Account Information

| Routing Number (RTN) | Account Number (DAN) | Account Type | Ownership Type | Bank Account Owner |
| 122000247 | 6325946850 | Checking ▾ | Individual | MARIBEL GOROSAVE |

### Merchant Account Information

| Account Number | Registration Key |
| 90******** | 88************* |

### eSmart Tax Opt-In

Check the box below to receive eSmart Tax promotional material, intended primarily for your walk-out customers. Please ensure that your shipping address is correct.

eSmart Tax Opt-In
☑

### Send A Friend

SAF Amount
50 ▾

### Cash In A Flash

| CIF Amount | CIF Promotion Start | CIF Promotion End |
| $50.00 | 12/26/2018 | 2/26/2019 |

### Accepted Credit Cards

Please indicate which credit cards this office accepts by checking (or unchecking) the appropiate boxes below.

☑ Visa
☑ MC
☑ Amex
☑ Discover

☐ *Accept credit card payments for **Tax School** on Public Site
(*You must have a Merchant Account or MAAL setup within the admin system to make this election.)

### Bank Products

| Product | Start Date | End Date | Note |
| --- | --- | --- | --- |
| ☑ Advance + RT | 12/18/2018 | - 2/28/2019 | |
| ☑ Advance Efile | 12/18/2018 | - 2/28/2019 | |
| ☑ ERC | 9/1/2018 | - 10/22/2019 | |
| ☑ Included State Check | 9/1/2018 | - 10/22/2019 | |
| ☑ Paper ERC | 9/1/2018 | - 10/22/2019 | |
| ☑ State Check | 9/1/2018 | - 10/22/2019 | |

### Daily Metric Report Subscription

Check the box(es) below to indicate which office-level Daily Metric Report(s) should be emailed to this office. Un-check the box(es) to stop sending the corresponding Daily Metric Report(s) to this office. **Note:** Entity-level Daily Metric Reports will continue to be emailed to the entity email address regardless of whether or not you elect to have office-level reports sent to your office(s).

☑ Send office-level Operational Reports to this office
☑ Send office-level Financial Reports to this office

Daily Metric Report(s) are delivered via email to the Office Manager email address, which can be viewed or edited from the General Information Tab.

### Electronic Signature

Select checkbox to indicate electronic signature status

○ No eSignature Allowed
○ Mandatory eSignature on All Bank Products; no other esignatures allowed
◉ Mandatory eSignature on All Bank Products; Optional eSignature on non-bank product returns

**Discount Limits**

The maximum discount amount allowed in Tax Software. Please specify both the dollar and percentage amounts.

Discount Amount         Discount Percentage
$50.00                  35%

**Tax Preparation**

| State & Sales Tax |

Default State           State Sales Tax Rate %    State Sales Tax Applies To:
California        [⌄]                             ☐ Prep  ☐ EF

**Drake Account**

2018 Account Number     2018 Password             2018 Serial Number

---

**Social Media**
*Please note, this screen is currently being used for configuring the Liberty Touch project. For more information, please visit the "Liberty Touch" site on the Marketing Home Page.

**Links**

Facebook Url                          Twitter Url
https://www.facebook.com

Pinterest Url                         Google My Business

Yelp Url                              LinkedIn Url

Yahoo Url                             Instagram Url

---

**Notes**

Inactivated on Jan 8 2019 12:01PM.Previously belonged to Territory CA375.

---

**EFIN**

**Office Address**

Address                               City
440 SOUTH 4TH STREE                   El Centro

State                                 Zip
CA                                    92243

**IRS Electronic Filing**

| Office EFIN | EFIN Tracking Number | Ownership Type | Vendor Control Number |
|---|---|---|---|
| 304583 | 20080610223412462772 | Individual ⌄ | 97864D4D95 |

| First Name | Last Name | SSN | Date of Birth |
|---|---|---|---|
| Maribel | Gorosave | 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 | 10/11/1979 |

## Uploaded Verification Documents

EFIN/FA Verified　　　　　　　　　　　　　　EFIN Application Summary

☑

### EFIN History Verification History

| Field Name | New Value | Old Value | Date Changed | UserName |
|---|---|---|---|---|
| Verified | True | False | 01/08/19 13:35 | LIBERTY\Kristi.Klindienst |
| Verified | False | | 01/08/19 12:25 | LIBERTY\patricia.old |
| Verified | | True | 01/08/19 12:01 | LIBERTYTAX\ent5205 |

### Document Upload History

| Action | Document | Date Changed | UserName |
|---|---|---|---|
| Upload | EFIN (Entity:5205) | 01/08/19 13:34 | LIBERTY\patricia.old |
| Delete | BANK (Entity:1000) | 01/08/19 12:22 | LIBERTYTAX\ent5205 |
| Delete | EFIN (Entity:1000) | 01/08/19 12:22 | LIBERTYTAX\ent5205 |
| Delete | BANK (Entity:5205) | 01/08/19 12:01 | LIBERTYTAX\ent5205 |
| Delete | EFIN (Entity:5205) | 01/08/19 12:01 | LIBERTYTAX\ent5205 |

## Office Bank Account Information

Routing Number (RTN)　　　　　　　　　　　　Account Number (DAN)
122000247　　　　　　　　　　　　　　　　　　6325946850

Bank Account Owner
MARIBEL GOROSAVE

---

### Entity Breakdown

| Id | Name | DMA | Sales Rep DM | RD | AD | Address | City | State | Internal Support | Open Date | Return Count | Status |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Region 101 (Thomas Bartolomeo) | | | | Jay Canaday | | | | | | | | |
| CA375 | ElCentro | Yuma-El Centro, AZ-CA | CA-1 Unassigned Unassigned | | Thomas Bartolomeo | | | | Patricia Old | | | Active/Contract Closed |
| 14926 | El Centro | | | | | 440 SOUTH 4TH STREET | El Centro | CA | | 1/8/2009 | 361 | Active |
| 19715 | Siempre | | | | | 350 Ross Ave Suite E | El Centro | CA | | 1/8/2015 | 0 | Inactive |

# EXHIBIT

# F1

Entity 5205

## ASSIGNMENT AND AMENDMENT TO FRANCHISE AGREEMENT

This ASSIGNMENT AND AMENDMENT to the Franchise Agreement is made on the Effective Date listed below by and between Maribel Gorosave, ("Amended Franchisee"), Nora Garcia ("Former Guarantor") (Former Guarantor and Amended Franchisee are referred to as "Former Franchisee" when referred to collectively herein) and JTH Tax, Inc. d/b/a Liberty Tax Service ("Franchisor").

Whereas Former Franchisee has a license to operate certain Liberty Tax Service franchises referred to as CA375 and CA376 pursuant to written franchise agreements entered into May 1, 2013 and December 19, 2013, respectively, for the franchise territories set forth in the Schedule "A" of the franchise agreements (collectively the "Franchise Agreement", "Franchised Business"); and

Whereas Former Franchisee desires, and Franchisor agrees, to amend the Franchise Agreement to remove Former Guarantor as a guarantor thereon.

Now, therefore, in consideration of the mutual covenants and agreement herein, the parties hereto agree as follows:

1. Amended Franchisee shall remain as a guarantor of the Franchise Agreement and shall be responsible for all obligations pursuant to the Franchise Agreement, including, but not limited to, the payments of any and all promissory notes or other amounts owed to Franchisor in relation to the Franchise Agreement, whether accrued prior to or after this agreement.

2. Former Guarantor is hereby removed as a guarantor of the Franchise Agreement; however, agrees to remain bound by the post-termination covenants contained therein.

3. Amended Franchisee agrees, in consideration of Franchisor's consent, to enter into a separate Guaranty Agreement whereby all accounts and notes receivable balances owed by Former Franchisee shall be guaranteed.

4. Former Franchisee, Amended Franchisee and guarantors hereby further agree on behalf of themselves and all their employees, agents, successors, assigns and affiliates, to fully and finally release and forever discharge Franchisor and its past and present employees, directors, officers, agents, area developers, assigns and affiliates, from any and all claims, actions, causes of action, demands, damages and costs, which could be asserted against such persons and entities or any of them up through and including the date of this Assignment and Amendment.

5. This Assignment and Amendment may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, but such counterparts shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page to this Agreement by facsimile or in electronic (e.g. "pdf") format shall be effective as delivery of a manually executed counterpart of this Agreement. The words "execution," "signed," "signature," and words of similar import in the Agreement shall be deemed to include electronic or digital signatures or the keeping of records in electronic form, each of which shall be of the same effect, validity and enforceability as manually executed signatures or a paper-based record keeping system, as the case may be, to the extent and as provided for under applicable law, including the Electronic Signatures in Global and National Commerce Act of 2000 (15 USC § 7001 et seq.) or any other similar state or federal laws.

Entity 5205

Except as modified above, the terms of the Franchise Agreement remain in full force and effect.

**Accepted and Agreed to:**

**FORMER FRANCHISEE:**
**Nora Garcia & Maribel Gorosave**

By: _____
        Nora Garcia

By: _____
        Maribel Gorosave

**AMENDED FRANCHISEE:**
**Maribel Gorosave**

By: _____
        Maribel Gorosave

**JTH TAX, INC., d/b/a**
**LIBERTY TAX SERVICE**

By: _____

Print:    John Hewitt

Title:    CEO

By: _____

Print:    Kathy Donovan

Title:    VP, CFO

Effective Date:    9/12/2016

# EXHIBIT

# F2

## ACCOUNTS AND NOTES RECEIVABLE GUARANTY AGREEMENT

THIS ACCOUNTS AND NOTES RECEIVABLE GUARANTY AGREEMENT is made on the Effective Date listed below by and between Maribel Gorosave ("Guarantor") and JTH TAX, Inc. d/b/a Liberty Tax Service ("JTH").

WHEREAS, Nora Garcia and Maribel Gorosave ("Former Franchisee") own or owned certain JTH franchise territories under the entity known as 5205 as an informal partnership and now Former Franchisee is desirous of effectuating a change of the name and ownership type via separate Amendment to the Franchise Agreements toMaribel Gorosave, sole proprietor and whereby Nora Garcia will be removed as a guarantor thereon; and

WHEREAS, through Former Franchisee's acquisition, ownership and operation of the JTH franchise territories, Former Franchisee has accrued certain amounts owing to JTH and Guarantor may accrue further certain amounts owing to JTH (hereinafter collectively "Accounts and Notes Receivable Balance"); and

WHEREAS, JTH desires and Guarantor has agreed that any obligations or amounts due or owing, whether prior to or after the date of this Agreement as related to the operation of any JTH franchise territories currently owned or to be acquired in the future shall be guaranteed by Guarantor and as such considered due and owing by Guarantor.

NOW, THEREFORE, in consideration and as a condition to JTH's consent to the Amendment to the Franchise Agreements, whether said debts accrue prior to this Agreement or after this Agreement, the Guarantor hereby unconditionally, absolutely and irrevocably guarantees the Accounts and Notes Receivable Balances, past and future, and hereby agrees as follows:

**1.     Assent.**  The Guarantor acknowledges that Guarantor has full knowledge of the principal amount, interest charges and other related fees as well as the additional terms and conditions as set out in all promissory notes and the Accounts and Notes Receivable Balance with JTH, as well as the potential to accrue additional Accounts and Notes Receivable Balances owed to JTH as related to the operation or acquisition of JTH franchise(s). Guarantor hereby unconditionally, absolutely and irrevocably guarantees the performance, as primary obligor and not merely surety, under the terms of the promissory notes and the Accounts and Notes Receivable Balances, current and future.

**2.     Obligation.**  Upon default, Guarantor hereby agrees to assume all obligations and responsibilities for repayment to JTH under this Agreement and any and all accounts and notes receivable balances owed to JTH.  JTH shall not be obliged to seek recourse prior to enforcing the rights under this Guaranty.  The Guarantor agrees to remain fully bound until all monies due to JTH pursuant to the Accounts and Notes Receivable Balance have been paid in full and waives all rights of subrogation and set-off. The Guarantor further waives all defenses based on suretyship.

**3.     Automatic Payment Transfer Program.**     Upon default, pursuant to JTH's Automatic Payment Transfer program, all of the revenue that Guarantor is to receive, under any of Guarantor's agreements with JTH or, if applicable, SiempreTax+ LLC (such as an area developer or franchise agreement), from any and all sources of revenue shall initially be paid directly to JTH, rather than to Guarantor.  JTH will deduct from this revenue money that Guarantor owes to JTH and deduct and hold monies to apply to upcoming amounts due to JTH by Guarantor, and remit any remaining balance to Guarantor.  All such payments shall be applied first to past-due interest outstanding and then to principal.

**4.     Waiver.**  Guarantor hereby unconditionally and irrevocably waives any right to revoke this Agreement and acknowledges that this Agreement is continuing in nature and applies to all presently existing and future obligations.  Guarantor further unconditionally and irrevocably waives promptness, diligence, notice of acceptance, presentment, demand for performance, notice of non-performance, default, acceleration, protest or dishonor and any other notice with respect to any of the obligations pursuant to this Agreement.

**5.     Notice.**  The Guarantor waives notice of default and agrees that its Guaranty shall become absolute without necessity for the giving of such notice.

**6.     Performance.**  The Guaranty herein and any payments herein specified shall continue until full, complete and faithful performance of the terms of all promissory notes and Accounts and Notes Recievable Balances owed to JTH are fully satisfied and completed.

**7.     Default fees.**  In the event of default by the Guarantor, all reasonable legal fees, collection and enforcement charges to the extent permissible by law, in addition to other amounts due, shall be payable by the Guarantor.

**8.     Liability.**  No relaxation, indulgence, waiver, release or concession extended by JTH and no delay or omission in the enforcement of payment or exercising of any of JTH's rights shall affect the liability of the Guarantor under this guaranty.

**9.     Successors and Assigns.** This guaranty shall be binding upon and accrue to the benefit of the parties, their successors, legal representatives and assigns.

**10.     Governing Law and Severability.**  This guaranty shall be construed, interpreted and governed in accordance with the laws of the State of Virginia and should any provision of this guaranty be judged by an appropriate court of law as invalid, it shall not affect any of the remaining provisions whatsoever.

**11.     Release.**  By executing this Agreement, Guarantor, and Guarantor's officers, individually and on behalf of Guarantor's heirs, legal representatives, successors and assigns, and each assignee of this agreement by accepting assignment of the same, hereby forever releases and discharges JTH, its past and present employees, area developers, agents, officers, directors, JTH subsidiary and affiliated corporations and franchisees, their respective past and present employees, agents, officers, directors, from any and all claims which could be

2

asserted by Guarantor against any such persons and entities through the date of this Agreement, except obligations set forth or re-affirmed herein.

**12.     Jurisdiction.**  Guarantor consents to venue and personal jurisdiction in the state and federal court of the city or county of JTH's National Office, presently Virginia Beach state courts and the United States District Court in Norfolk, Virginia.  In any suit brought against JTH, including JTH's present and former employees and agents, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, the parties agree that venue shall be proper only in the federal court located nearest JTH's National Office (presently the U.S. District in Norfolk, Virginia), or if neither federal subject matter or diversity jurisdiction exists, in the city or county state court located where JTH's National Office is (presently the City of Virginia Beach, Virginia).

**13.     Waiver of Jury Trial.**  In any trial between the parties hereto, including present and former employees and agents of JTH, the parties agree to waive the right to a jury trial and instead have such action tried by a judge.

**14.     Representations and Warranties.**  Guarantor represents and warrants that there are no conditions precedent to the effectiveness of this Agreement that have not been satisfied or waived and that Guarantor has, independently and without reliance, made its own decision to enter into this Agreement

**15.     Taxes.**  Each party agrees to be responsible for any tax consequences affecting said party as a result of this Agreement.

**16.     Entire Agreement.**  This Agreement and the promissory notes, other loan documents and any separate agreements with respect to fees payable to JTH constitutes the entire agreement among the parties with respect to the subject matter hereof and supersede all previous agreements and understandings, oral or written, with respect thereto. This Agreement shall not be modified except in writing signed by the parties.

**17.     Personal and Entity Guaranty.**  The signature of an individual or individuals on behalf of an entity constitutes the entity's agreement to such terms. In addition, the signatures of all individuals below in any capacity, excluding individuals signing as representatives of JTH, also constitute their personal joint and several agreement to perform all the obligations in and relating to this Agreement. All signators below waive any right to require that JTH proceed against the other signators.

**18.     Counterparts and Electronic Signature.**  This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, but such counterparts shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page to this Agreement by facsimile or in electronic (e.g. "pdf") format shall be effective as delivery of a manually executed counterpart of this Agreement. The words "execution," "signed," "signature," and words of similar import in the Agreement shall be deemed to include electronic or digital signatures or the keeping of records in electronic form, each of which shall be of the same effect, validity and

5205

enforceability as manually executed signatures or a paper-based record keeping system, as the case may be, to the extent and as provided for under applicable law, including the Electronic Signatures in Global and National Commerce Act of 2000 (15 USC § 7001 et seq.) or any other similar state or federal laws.

**GUARANTOR: Maribel Gorosave**


9F75AE094AD3443

**Maribel Gorosave**

Home Address:

937 LEE AVE, CALEXICO, CA 92231

937 LEE AVE, CALEXICO, CA 92231

**JTH TAX, INC. d/b/a
LIBERTY TAX SERVICE**

By: 
935C505731B4405

Print Name: John Hewitt

Title: CEO

By: 
935C505731B4405

Print Name: Kathy Donovan

Title: VP, CFO

Effective Date: 9/12/2016

4

# EXHIBIT

# F3

DocuSign Envelope ID: 2DFCE9BE-4032-4CAB-AE70-73B5E293C48E

## Request to Remove Guarantor(s) from an Entity:
This section is to be filled out by the entity owners. Once completed, please forward to your AD.

Entity Number: 5205

Issue Number: 1657920

Entity Name: Nora Garcia & Maribel Gorosave_

Member: Maribel Gorosave_          Percentage: 99_

Member: Nora Garcia_          Percentage: 1_

Member: _          Percentage: _

New Entity Name: Maribel Gorosave _

Member: Maribel Gorosave _          Percentage: 100%

Member: _          Percentage: %_

Member: _          Percentage: %_

Reason for Change: Removing Nora Garcia from Entity_

Remaining Member(s): Please attach your plan to get current on all past due debt. Attach a Cashflow & ZPR24 – Franchisee Performance Metrics.
Note: If debt to revenue ratio is greater than 50%, a payment will be required to bring debt below 50%.

Remaining Member(s) accepts all responsibility of existing debt and gives JTH Tax, Inc. d/b/a Liberty Tax Service to run a credit check.

_Maribel Gorosave_ 7/13/2016
Sign/Date                          Sign/Date

_____          _____
Sign/Date                          Sign/Date

_____          _____
Sign/Date                          Sign/Date

Departing Member(s) relinquishes rights to entity.

_Nora Garcia_ 7/14/16
Sign/Date                          Sign/Date

Sign/Date _____        Sign/Date _____

Sign/Date _____        Sign/Date _____

**Area Developer:** Reviewed plan and cash flow with franchisee.

Approved by: _____              Date: _____
              Area Developer

---

## AD Support Review

### Compliance Items

|                        | Y/N |                      | Y/N |
|------------------------|-----|----------------------|-----|
| Budget                 | Y   | GRR                  | Y   |
| Profit and Loss Statement | Y | Internal Audit      | N   |
| Action Plan            | Y   | Franchise Renewal    | Y   |
| Tax School             | Y   | Customer Issues      | N   |
| ACA Certification      | Y   |                      |     |
| Accounting             |     |                      |     |

Total Debt : $0              Accounts Receivable: $0.0      Promissory Note: ₀ O    Debt
Ratio: %_

---

Notes : _

Approved by: _____              Date: _____
              Regional Director

Approved by: _____              Date: 8|8|16
              Chief Accounting Officer

Approved by: _____              Date: _____
              VP Operations or AVP Operations

Approved by: _____              Date: _____
              Chief Executive Officer



Report Name: **PRF60 - Franchisee Performance Metrics**
Data Source: LTS Datamart
Data Selection: Performance, Budget, and Financial Data
Date Viewed: 08/08/16  1:21 pm

**LIBERTY TAX SERVICE**

| | | | |
|---|---|---|---|
| Franchisee: Nora Garcia & Maribel Gorosave | | Territories Owned: | 2 |
| Entity: 5205 | | RTO/TBYB Territories: | 0 |
| Entity Type: Tenants In Common | | Unopened Territories: | 0 |
| Entity Age: 8 | | DMA: | Yuma-El Centro, AZ-CA |

### Performance & Compliance:

| | | Financial: | |
|---|---|---|---|
| Prior Fiscal Year Returns: | 701 | Current AR: | $0.00 |
| Prior Fiscal Year Free Returns: | 110 | Notes Payable: | $0.00 |
| Total Gross Fees (last 12 months): | $200,846.00 | Accrued Interest: | $0.00 |
| Current Year Fiscal Year Net Revenue: | $3,381.00 | Current Due to LTS: | $0.00 |
| Entity Brand Retention: | 52.91% | Amount of TLC Loan: | $0.00 |

### Fiscal 2016 Profit & Loss:

| | | Fiscal 2017 Budget: | |
|---|---|---|---|
| # of Offices: | 3 | # of Offices: | 3 |
| Total Returns: | 721 | Total Returns: | 1,266 |
| Free Returns: | 141 | Free Returns: | 300 |
| Gross Fees: | $201,438.00 | # of Returns May-Dec: | 14 |
| Net Fees: | $146,861.00 | Net Fees: | $252,356.00 |
| Average Net Fees: | $253.00 | Average Net Fees: | $261.24 |
| Payroll %: | 18.25% | Net Income: | $56,970.78 |
| Guerilla Marketing Wages: | $7,900.00 | Operations Approved: | Y |
| Guerilla Marketing Supplies: | $459.60 | | |
| Zee Paid Advertising: | $131.12 | | |
| Net Income: | $18,956.55 | | |
| Operations Approved: | Y | | |

### Financial Metrics:

| | Fiscal '17 | Fiscal '16 | Fiscal '15 | Fiscal '14 |
|---|---|---|---|---|
| Net Revenue * | $149,400.00 | $150,261.00 | $129,075.90 | $119,873.00 |
| Operating Loan: | $0.00 | $23,844.63 | $28,547.00 | $25,000.00 |
| Cash-In-A-Flash Loan: | $0.00 | $30,250.00 | $24,000.00 | $16,000.00 |
| Bank Product Revenue: | $607.05 | $87,775.85 | $73,691.80 | $63,119.33 |
| Rebate: | $0.00 | $107.00 | N/A | N/A |
| Fees to Zees: | $870.05 | $7,775.80 | $213.05 | $7,830.88 |
| Fees Intercepted: | $-263.00 | $80,107.05 | $73,478.75 | $55,288.45 |
| Fees Released: | $0.00 | $4,132.00 | $0.00 | $0.00 |
| Net Intercepted : | $-263.00 | $75,975.05 | $73,478.75 | $55,288.45 |
| Beginning Debt: | $16,384.87 | $61,307.03 | $46,480.06 | $17,630.92 |
| Ending Debt: | $0.00 | $16,384.87 | $61,307.03 | $46,480.06 |
| Net Increase/Decrease: | $-16,384.87 | $-44,922.16 | $14,826.97 | $28,849.14 |
| Debt to Net Revenue Ratio: | 0% | 11% | 47% | 39% |
| Number of Active Offices: | 3 | 3 | 3 | 2 |
| Total Returns: | 12 | 701 | 788 | 761 |
| Total Free Returns: | 2 | 110 | 154 | 151 |

### Operations Compliance:

---

**\* Current Fiscal Year number represents the last 12 months GRRs. The other periods represent the actual Revenue for the Fiscal Period.**
***Any changes needed for this report must be approved by John Hewitt!!

| | | | |
|---|---|---|---|
| Oldest GRR Completed: | 07/31/16 | Tax School on the Web: | Y |
| Send A Friend Payments: | $8,070.00 | Tax School Inquiries (CFY): | 67 |
| Cash In A Flash Payments (CFY): | $0.00 | Tax School Students (CFY): | 1 |
| Conference Call Attendance: | 28% | Tax School Books Ordered: | 0 |
| Seminars (CFY): | 11 | Bronze Level Preparers: | 5 |
| IOT Training (CFY): | 0 | Silver Level Preparers: | 4 |
| AOT Training (CFY): | 0 | Gold Level Preparers: | 1 |
| Update Training (CFY): | 2 | Diamond Level Preparers: | 0 |
| % of Customers Called: | 0% | Platinum Level Preparers: | 0 |
| | | Rank Percentile: | 15 |

---

**\* Current Fiscal Year number represents the last 12 months GRRs. The other periods represent the actual Revenue for the Fiscal Period.**
\*\*\*Any changes needed for this report must be approved by John Hewitt!!

Franchisee: Nora Garcia & Maribel Gorosave
   Entity:  5205

| NOTE TYPE | NOTE BALANCE @ 05/01/15 | PRINICPAL PAYMENTS / CREDITS | DISBURSEMENTS | TRANSFERS | NOTE BALANCE @ 04/30/16 | CURRENT INTEREST RECEIVABLE | INTEREST PAYMENTS |
|---|---|---|---|---|---|---|---|
| Operating | $0.00 | $38,451.63 | $38,451.63 | $0.00 | $0.00 | $0.00 | $723.19 |
| A/R & Royalty | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Franchise | $29,539.30 | $13,539.30 | $0.00 | $0.00 | $16,000.00 | $0.00 | $3,535.40 |
| NOTE TYPE TOTALS: | $29,539.30 | $51,990.93 | $38,451.63 | $0.00 | $16,000.00 | $0.00 | $4,258.59 |

| | A/R BALANCE @ 05/01/15 | PAYMENTS | CHARGES | TRANSFERS | A/R BALANCE @ 04/30/16 | | FINANCE CHARGES |
|---|---|---|---|---|---|---|---|
| A/R | $31,101.02 | $69,506.14 | $38,405.12 | $0.00 | $0.00 | | $1,939.80 |
| ACCRUED INTEREST: | $666.71 | | | | $384.87 | | |
| TOTAL LTS DEBT: | $61,307.03 | $121,497.07 | $76,856.75 | $0.00 | $16,384.87 | $0.00 | $6,198.39 |

Past Due Amount @ 04/30/16:  $0.00

Report Description:  Contains Various Performance, Budget and Financial Data for the Selected Franchisee
   Data Selection:  Performance, Budget and Financial Data
      Sort Criteria:  None
   Report Filename:  Performance/ PRF60 - Franchisee Performance Metrics
   Report Version:  45.06.16

* Current Fiscal Year number represents the last 12 months GRRs. The other periods represent the actual Revenue for the Fiscal Period.
***Any changes needed for this report must be approved by John Hewitt!!

## Incident Details

**Contact Details**

Office/Entity ID: 5205

First/Last Name: Maribel                    Gorosave

Callback: ☐

Language Preference: English ⌄

**Issue Type**

Type: Franchisee Action Item ⌄

Country: US ⌄

Category: Season Readiness ⌄

Product: Compliance ⌄

Sub Product: EFIN and Bank Account Verification ⌄

Summary: EFIN Verification - offices 14926, 19230, and 19715

## Comments

Link to EFIN Verification documents on Compliance Home Page - https://www.libertytax.net/Compliance/
Documents/Forms/AllItems.aspx?RootFolder=%2fCompliance%2fDocuments%2fEFIN%20Documents&
FolderCTID=0x012000CED576DE6E740F4EAA04F39A1A474D0B&View=%7b60DD6B79%2d1C14%2d4615%
2d8451%2dBC445C480010%7d Link to IRS e-Services - http://www.irs.gov/Tax-Professionals/e-services—-
Online-Tools-for-Tax-Professionals Link to Admin System on ZeeNet - https://app3.libertytax.net/
AdminSystem2008/Default.aspx

Link to KB article 2094: Uploading Bank and EFIN documentation to Admin - https://www.libertytax.net/
Support%20Central/Knowledge%20Base/Document%20Library/How%20do%20I%20upload%EFIN%
20Verification%20Documents.mht

Kristi Klindienst writes...                                                @ 5/13/2016 4:01 PM

Good afternoon! We still need to complete the EFIN verification process for offices 14926, 19230, and 19715.

Your offices are in jeopardy of being shut off from e-filing capabilities.

Until the EFIN verification process is complete, you will not be able to submit an FAC for off-season financing,
Cash in a Flash financing, and Send a Friend financing.

In order to do this, please provide the following as soon as possible:

• EFIN Application Summaries showing both entity owners as Principals and Responsible Officials (Nora will need
to be added to your current EFIN applications); also make sure the legal name on the EFIN applications
matches your entity name of "Nora Garcia & Maribel Gorosave" – once updated, please upload the documents
into the admin system on your offices' General Information tabs

• Bank statement or letter from your bank (showing the account number and both entity owners' names as
signers) for the account that was entered into the admin system – upload the document into the admin system
on your offices' General Information tabs

The EFIN verification process is a Liberty Tax Service compliance item that needs your immediate attention.

Thank you!

**EFIN Verification Team**

Kristi Klindienst writes...                                                    @ 6/16/2016 1:52 PM
Your response to this issue is still needed.

Please note:
Your offices are in jeopardy of being shut off from e-filing capabilities.

Until the EFIN verification process is complete, you will not be able to submit an FAC for off-season financing, Cash in a Flash financing, and Send a Friend financing.

Jessica Jacobsen writes...                                                     @ 6/22/2016 3:24 PM
Hello,

Please see the attached Request to Remove Guarantor(s) from an Entity form attached.

Once completed and signed, please attach to the issue for approvals.

Thank you,
Jessica

ent 5205 (Nora Garcia & Maribel Gorosave) writes...                            @ 7/14/2016 5:51 PM
I've attached the signed Request to remove guarantor from entity 5205.

Jessica Jacobsen writes...                                                     @ 7/18/2016 10:38 AM
Geoff,

Please see the attached request, review, and sign on the Area Developer line.

Once complete, please send back to me for approvals.

Thank you

Geoff Knapp (3) secretly writes...                                             @ 7/24/2016 1:32 PM
Oscar,

I need your guidance on this.I just took over this area and I see Nora being removed from Entity 5205. This entity does not do very well in term of returns or revenue. They owe us 16K and I am concerned without Nora's expertise they may not fare as well. Can you give me additional color around this? Her other entity 2561 is considerably stronger.

Thanks,

Oscar Aujero secretly writes...                                               @ 8/2/2016 10:34 AM
RD approves- through recent AD buyback, which Nora was a part of, all debt for this entity has been cleared.

Patricia Old secretly writes...                                               @ 8/4/2016 9:05 AM
Working thru email/DocuSign.

**Miscellaneous**

Attachments | Related Issues | Notifications | Incident History | Office History

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF VIRGINIA
## Norfolk Division

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JTH TAX, LLC d/b/a LIBERTY TAX SERVICE, :
    1716 Corporate Landing Parkway :
    Virginia Beach, Virginia 23454; and :

SiempreTax+ LLC d/b/a SiempreTax+ :
    2387 Liberty Way, Virginia Beach, VA, :
    23456 :

                Plaintiffs, :

    v. :    Case No:

    :

Maribel Gorosave, :
    Serve: 937 Lee Ave, Calexico, CA 92231 :    **VERIFICATION**

    :

And :

    :

Nora Garcia, :
    Serve: 1943 Annandale Way, Pomona, CA :
91767 :

And :

    :

Maribel Gorosave d/b/a Brightworks Business :
Services :
    Serve: 440 South 4th Street, El Centro, CA :

    :

                Defendants.

—

**STATE OF TEXAS**

**CITY OF PLANO**

    GARY CHELLIAH, verify upon penalty of perjury that the following is true and correct:

    I am a regional director  for JTH TAX LLC d/b/a LIBERTY TAX SERVICES ("Liberty"),

I have read the foregoing verified Complaint and know the contents thereof and state the allegations are true. I base this verification on my knowledge, except as to matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true. The grounds of my knowledge, information, and belief are derived from my position as regional director at Liberty, my personal involvement in the events underlying this litigation, and general investigation of the facts and circumstances described in the Verified Complaint, including, without limitation, my review of Liberty's records and conversations with Liberty's employees.

GARY CHELLIAH

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that I electronically filed the foregoing using the CM/ECF system, which will send notification of such filing to all attorneys of record or unrepresented parties using the CM/ECF system. I have also served via USPS Certified Mail, Return Receipt Requested, to the following:

Maribel Gorosave
937 Lee Ave
Calexico, CA 92231

Nora Garcia
1943 Annandale Way
Pomona, CA 91767

Maribel Gorosave d/b/a Brightworks Business Services
440 S 4th Street
El Centro, CA 92243


This the 15th day of November, 2021.

                Gordon Rees Scully Mansukhani, LLP

By:      */s/ Allison J. Becker*
           Allison J. Becker